9

Westlaw.

Not Reported in F.Supp.2d                                                                                                Page 1
Not Reported in F.Supp.2d, 1999 WL 317103 (E.D.Pa.), Fed. Sec. L. Rep. P 90,480
**(Cite as: 1999 WL 317103 (E.D.Pa.))**

▷

**Motions, Pleadings and Filings**

United States District Court, E.D. Pennsylvania.
Raymond MARRA, Michael Goldstein, Gary Gartenberg, Robert Woloshen, and
Deeanndevnie Turek, on behalf of themselves and all others similarly situated,
Plaintiffs,
v.
TEL-SAVE HOLDINGS, INC., et al., Defendants.
Nos. MASTER FILE 98-3145, CIV. A. 98-3274, CIV. A. 98-3284, CIV. A. 98-3391,
CIV. A. 98-3440, CIV. A. 98-3483, CIV. A. 98-3538, CIV. A. 98-3557, CIV. A. 98-
3562, CIV. A. 98-3597, CIV. A. 98-3800, CIV. A. 98-3895, CIV. A. 98-3913, CIV.
A. 98-4223.

May 18, 1999.

*MEMORANDUM*

BUCKWALTER.

\*1 Presently before this Court is Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint ("Compl."). For the reasons discussed below, the motion is GRANTED IN PART and DENIED IN PART. The claims against the individual defendants are dismissed, and the claims against Tel-Save, the defendant corporation, survive. Plaintiffs will also be permitted to amend their complaint in accordance with this memorandum.

I. *Background*

The facts relevant to this motion are taken from the complaint. Plaintiffs filed this consolidated shareholder action, asserting various securities fraud claims against (1) Tel-Save Holdings, Inc. ("Tel-Save"); (2) Daniel Borislow, Chairman of the Board of Directors and Chief Executive Officer of Tel-Save; (3) George P. Farley, Director, Chief Financial Officer, and Treasurer of Tel-Save; (4) Harold First, Director and member of Tel-Save's audit committee; (4) Gary W. McCulla, Director of Sales and Marketing and President of Tel-Save; (5) Emanuel J. DeMaio, Chief Operations Officer of Tel-Save; and (6) Kevin R. Kelly, Tel-Save's Controller. The plaintiffs consist of members of a putative class who purchased Tel-Save common stock and/or related call options, and/or sold related put options in Tel-Save common stock during the class period between August 14, 1997 through May 22, 1998.

Tel-Save is a Delaware corporation with its principal executive offices in New Hope, Pennsylvania. It provides long distance telephone services purchased from third-party carriers throughout the United States both to residential and to small and medium-sized commercial customers. Aside from the costs associated with purchasing the long distance services, Tel-Save's primary business costs relate to the marketing of its services and the solicitation of new customers.

Recognizing that the expenses incurred in marketing its telephone services far exceeded its initial revenues, Tel-Save began to outsource a majority of its direct telemarketing services to companies referred to as "partitions." A partition is an independent long distance provider and marketing company that contracts with Tel-Save to purchase and provide long distance services to customers. Partitions generally receive the difference between the amount received from customers and the amount charged by Tel-Save. Tel-Save has stated publicly that it has a policy of promoting increased marketing activities of certain of its partitions by advancing loans to them.

Plaintiffs contend that, as early as August 14, 1997 and continuing throughout the class period, Defendants embarked on a scheme to artificially inflate the price of Tel-Save common stock by concealing and failing to record properly on its statements millions of dollars in marketing costs and other expenses, by disguising the expenses as loans to partitions. As a result, according to Plaintiffs, Defendants misrepresented their marketing expenses, income, results of operations, and overall financial condition.

\*2 Specifically, Plaintiffs focus on alleged misrepresentations and omissions made by Defendants related to the loans they advanced to two particular

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                                       Page 2
Not Reported in F.Supp.2d, 1999 WL 317103 (E.D.Pa.), Fed. Sec. L. Rep. P 90,480
**(Cite as: 1999 WL 317103 (E.D.Pa.))**

partitions, American Business Alliance ("ABA") and Group Long Distance ("GLD"). Plaintiffs contend that Tel-Save falsely proclaimed that loans made to these entities were adequately collateralized by their assets. Plaintiffs allege, however, that both ABA and GLD were insolvent, that the loans were not fully collectible, and that as a result, Tel-Save was required under the Generally Accepted Accounting Principles ("GAAP") to provide for reserves, including a complete write-off (if appropriate) for the probable losses resulting from such advances and a deduction of these amounts from Tel-Save's reported income. Plaintiffs further maintain that ABA and GLD used the proceeds of the loans to pay Tel-Save's marketing expenses, which otherwise should have been reported as an expense on Tel-Save's own financial statements. Thus, as a result of Tel-Save's accounting practices, Plaintiffs claim that Tel-Save overstated its income, causing an overpricing of its stock during the class period.

In further support of their claims for securities fraud, Plaintiffs contend that Defendants utilized improper methods of accounting to forgive ABA's and GLD's indebtedness to Tel-Save. As a result, Plaintiffs allege that Tel-Save's financial statements and earning reports for the quarterly periods ending June 30, 1997, September 30, 1997, March 31, 1998, and for the calendar year ending December 31, 1997 were false and misleading. Initially, as to Tel-Save's dealings with ABA, Plaintiffs allege that Tel-Save failed to record accurately the loan forgiveness between the two in December of 1996. Specifically, Plaintiffs claim that Tel-Save misled the investing public by recording the transaction as an acquisition of ABA's assets when, in actuality, Tel-Save forgave approximately $11 million of ABA's indebtedness. Plaintiffs further maintain that Tel-Save acquired ABA with no reasonable expectation of recovering the assets purchased because ABA's total liabilities exceeded its assets by $12 million. By accounting for the acquisition in this manner, Plaintiffs claim that Tel-Save amortized its marketing expenses through the advances made to ABA, rather than immediately expensing such costs as they were incurred.

The focus of Plaintiffs' complaint, however, is on Tel-Save's relationship with its primary partition, GLD. Plaintiffs once again allege that, as the uncollectible receivables from GLD accumulated, Defendants improperly eliminated the loan advances from Tel-Save's books without recognizing a loss from forgiveness of indebtedness. Specifically, Plaintiffs contend that Defendants financed GLD's purchase of all of the assets of two unrelated partitions, Great Lakes Telecommunications, Inc. ("Great Lakes") and Eastern Telecommunications Inc. ("ETI"), both of which possessed conditional warrants to purchase, at significantly below-market prices, Tel-Save common stock. The warrants were allegedly worthless to these unrelated partitions as they were conditioned upon the partitions achieving presumptively unattainable levels of sales of Tel-Save services and required Tel-Save's consent prior to their exercise. At some time later, GLD either sold the warrants directly to Tel-Save at a substantial premium or exercised the warrants themselves, thereafter selling the underlying Tel-Save common stock and giving the proceeds to Tel-Save. As a result, Plaintiffs maintain that GLD was able to retire approximately $20 million of debt owed to Tel-Save without expending any of its own money. Thus, Plaintiffs contend that, through the artifice of acquisitions, Tel-Save was able to convert GLD's uncollectible receivables into cash, ultimately resulting in Tel-Save overstating its income in 1997.

*3 Plaintiffs allege that on May 22, 1998 the improper nature of the relationship between Tel-Save and its partitions was revealed when an on-line financial publication for investors, *TheStreet.com,* posted a response letter from Defendant Borislow to two minority shareholders of GLD. Previously, on May 7, 1998, the two minority shareholders had written a letter to Defendant Borislow demanding full disclosure of Tel-Save's relationship with GLD, and its use of the warrants held by Great Lakes and ETI to pay off debts owed to it by GLD.

Plaintiffs claim that this disclosure did not immediately affect the price of Tel-Save common stock. However, Plaintiffs contend that, following the release of this letter, the market recognized that Tel-Save's financial statements were not fairly presented and as a result, the price of Tel-Save common stock dropped from its class period high of $30.000 per share to a low of $4.875 per share on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 317103 (E.D.Pa.), Fed. Sec. L. Rep. P 90,480
(Cite as: 1999 WL 317103 (E.D.Pa.))

Page 3

October 7, 1998.

Based on these allegations, Plaintiffs assert that each defendant knowingly and recklessly violated § 10(b) of the Securities Exchange Act of 1934 and Rule 10-b5. Plaintiffs further assert that the individual defendants are liable under § 20(a) of the Securities Exchange Act as control persons by virtue of their high-level positions, their ownership and contractual rights, and their knowledge of Tel-Save's financial condition and operations. Defendants have moved to dismiss for failing to plead fraud with particularity pursuant to Fed.R.Civ.P. 9(b) and under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), codified in relevant part at 15 U.S.C. § 78u-4, and for failing to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

II. *Legal Standard*

A securities fraud claim is subject to heightened pleading requirements under Fed.R.Civ.P. 9(b) and the PSLRA. Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Because § 10(b) and Rule 10b-5 are anti-fraud provisions, plaintiffs must plead them with the particularity required by Rule 9(b). *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1417 (3d Cir.1997).

Moreover, the PSLRA places additional burdens on plaintiffs attempting to plead fraud in securities cases. Under 15 U.S.C. § 78u-4(b)(1), plaintiffs alleging that a defendant made a misleading statement must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." In addition, the plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2). A complaint that fails to comply with any of these requirements must be dismissed. *See id.* § 78u-49(b)(3)(A).

*4 Additionally, on a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiffs' complaint, construe the complaint in the light most favorable to the plaintiffs, and determine whether, "under any reasonable reading of the pleadings, the plaintiff[s] may be entitled to relief." *Colburn v. Upper Darby Township,* 838 F.2d 663, 665-66 (3d Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989) (citations omitted). The court, however, need not accept as true legal conclusions or unwarranted factual inferences. *See Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A complaint is properly dismissed only if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Id.* at 45.

III. *Discussion*

A. *Group Pleading Doctrine*

Under Rule 10b-5, plaintiffs must first establish that the defendants made a materially false or misleading statement, or that the defendants omitted to state a fact such that other statements of fact actually made were rendered materially misleading. *See Oran v. Stafford,* 34 F.Supp.2d 906, 909 (D.N.J.1999) (citing *In re Phillips Petroleum Sec. Litig.,* 881 F.2d 1236, 1243 (3d Cir.1989)). Plaintiffs allege that Tel-Save and/or the individual defendants as a group violated the securities law by making materially false or misleading statements and by failing to disclose material information. To attribute the alleged misleading statements and omissions to the individual defendants, Plaintiffs allege the following:

> It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers and/or directors of Tel-Save, by virtue of his high-level position with the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, performance and financial condition, as alleged herein. The Individual

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d  Page 4
Not Reported in F.Supp.2d, 1999 WL 317103 (E.D.Pa.), Fed. Sec. L. Rep. P 90,480
**(Cite as: 1999 WL 317103 (E.D.Pa.))**

Defendants were involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein, were aware or recklessly disregarded that the false and misleading statements were being issued regarding the Company and approved or ratified these statements, in violation of federal securities laws.

Compl. ¶ 35. By making these allegations, Plaintiffs rely on the group pleading doctrine, which they contend is appropriate under the PSLRA. *See* Pls.' Mem. at 36. Defendants argue, however, that Plaintiffs' claims against the individual defendants must be dismissed because group pleading is prohibited under the PSLRA. *See* Defs.' Mem. at 22.

*5 Under the doctrine of group pleading, the identification of the individual sources of statements is unnecessary when the fraud allegations arise from the misstatements or omissions in group-published documents, such as annual reports, prospectuses, registration statements, press releases or other "group-published information" that presumably constitute the collective actions of those individuals involved in the day-to-day affairs of the corporation. *See In re Aetna Inc. Sec. Litig., 34 F.Supp.2d 935, 949 (E.D.Pa.1999)*. In the typical scenario, the group pleading doctrine is used, as Plaintiffs have done here, to attribute group-published information to senior executives of a corporate defendant. *See id.*

The viability of the group pleading doctrine is unclear since the enactment of the PSLRA. *See id.* While the Third Circuit has not yet addressed this issue, this Court declines to accept Plaintiffs' position that the heightened pleading standards imposed by the PSLRA left the group pleading doctrine intact. Rather, the Court concludes that the presumption inherent in group pleading is inconsistent with the PSLRA's purpose. *See, e.g., Coates v. Heartland Wireless Communications, Inc., 26 F.Supp.2d 910, 915-16 (N.D.Tex.1998)* (holding that the PSLRA codified a ban against group pleading); *Allison v. Brooktree Corp., 999 F.Supp. 1342, 1350 (S.D.Cal.1998)* (same). The continued vitality of the judicially created group pleading doctrine is suspect since the PSLRA specifically requires that the untrue statements or omissions be set forth with particularity as to "the defendant" and that scienter be pled with regard to "each act or omission" sufficient to give "rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b). As stated by the court in *Allison:*

> [t]o permit a judicial presumption as to particularity simply cannot be reconciled with the statutory mandate that plaintiffs must plead specific facts as to each act or omission by the defendant. The group published doctrine permits an inference of wrongdoing not based on defendant's conduct, but based solely on defendant's status as an officer or director of a corporation.

999 F.Supp. at 1350.

Moreover, because the PSLRA allows a plaintiff to assert upon information and belief that a statement or omission is misleading, provided that the complaint states with particularity all facts on which this belief is formed, *see* 15 U.S.C. § 78u-4(b)(1), the plaintiff need not rely on group pleading, *see Coates, 26 F.Supp.2d at 916*. An "information and belief" pleading can be supported by facts such as an individual defendant's position with the company or the corporate policy for issuing press releases. Thus, in light of a plaintiff's ability to plead by information and belief and "the PSLRA's policy of protecting reputations," a group pleading presumption is unnecessary. *See id.* Accordingly, the Court concludes that the group pleading presumption does not survive the PSLRA's enactment.

*6 In any event, it is proper for the individual defendants to be dismissed as Plaintiffs have failed to plead with particularity the allegations against each of the individual defendants. While the six individual defendants are mentioned in the complaint by identifying their affiliation with Tel-Save, Plaintiffs fail to identify which defendant was responsible for making the challenged statements or omissions. Plaintiffs simply assert conclusory allegations that the individual defendants "had access to the adverse undisclosed information ... from internal corporate documents" and were "involved in the drafting, producing, reviewing, and/or disseminating" the false and misleading statements. Compl. ¶¶ 33, 35. The only mention of the individual defendants' involvement with the communication of the allegedly fraudulent statements are three averments

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                         Page 5
Not Reported in F.Supp.2d, 1999 WL 317103 (E.D.Pa.), Fed. Sec. L. Rep. P 90,480
(Cite as: 1999 WL 317103 (E.D.Pa.))

that the individual defendants signed various annual reports. Asserting such facts alone will not prevent dismissal. *See, e.g., Coates,* 26 F.Supp.2d at 916. Plaintiffs must properly plead wrongdoing as to each individual defendant and cannot merely rely on the individuals' positions or committee memberships within the Tel-Save organization.

Accordingly, the six individual defendants are dismissed without prejudice and Plaintiffs are granted leave to amend the complaint, provided such a complaint cures the pleading deficiencies addressed above.

B. *Section 10(b)*

The elements of a claim brought under § 10(b) of the Securities Exchange Act and Rule 10b-5 are: (1) that a defendant made misstatements or omissions of material fact; (2) with scienter; (3) in connection with a purchase or sale of securities; (4) upon which the plaintiff relied; and (5) plaintiff's reliance was the proximate cause of his/her injury. *See Kline v. First W. Gov't Sec., Inc.,* 24 F.3d 480, 487 (3d Cir.1994).

1. *The Alleged False or Misleading Statements and Omissions*

The primary misstatements and omissions alleged in the complaint stem from Tel-Save's press releases and documents filed with the SEC. They concern Tel-Save's December 1996 acquisition of ABA's assets, and its consent to GLD's acquisition of Great Lakes in January of 1997, Adventures in Telecom in July 1996, and ETI in August of 1997, in conjunction with Tel-Save's practice of extending loans to its partitions.

Defendants argue that all of the alleged misrepresentations or omissions concerning these four transactions, together with Tel-Save's loan policy, were disclosed to the market through various public statements before the start of the class period. *See* Defs.' Mem. at 23-24. Consequently, Defendants argue that Plaintiffs' claims should be dismissed because there is no duty to disclose information already disclosed to the market. *See id.*

However, whether information that Tel-Save is alleged to have withheld or misrepresented to the market has entered the market through other channels is an issue that cannot be decided at this stage of the proceedings. *See, e.g., Fecht v. Price Co.,* 70 F.3d 1078, 1081 (9th Cir.1995) (holding that whether adverse facts were adequately disclosed is a mixed question to be decided by a trier of fact). Furthermore, only if the adequacy of the disclosure is "so obvious that reasonable minds [could] not differ" are these issues appropriately resolved as a matter of law. *Id.* Thus, dismissal is not warranted on this basis.

*7 Defendants next contend that Plaintiffs have essentially alleged non-actionable corporate mismanagement with respect to the allegations of advancing loans to insolvent partitions and the corresponding failure to set adequate reserves. *See* Defs.' Mem. at 26. This contention is without merit. While the federal securities laws do not regulate internal corporate mismanagement, a claim that defendants failed to disclose material facts is actionable. *See In re Home Health Corp. of Am., Inc.,* No. CIV. A. 98-834, 1999 WL 79057, at *13 (E.D.Pa. Jan.29, 1999). As discussed above, Plaintiffs have stated claims that Defendants misrepresented or omitted information pertaining to existing material events. As such, Plaintiffs' claims will not be dismissed as the Court concludes that they allege more than mere corporate mismanagement.

In addition to alleging a violation of § 10(b) with respect to the misrepresentations and omissions contained in Tel-Save's press releases, Plaintiffs also allege that Defendants transgressed Generally Accepted Accounting Principles ("GAAP") in preparing its financial statements and earning reports for the quarterly periods beginning with June 30, 1997 and ending with March 31, 1998. Specifically, Plaintiffs allege that Defendants artificially inflated and supported Tel-Save's stock price by materially misleading the public with respect to its practice of extending loans to partitions so that the expenses would not appear on Tel-Save's financial statements. In particular, Plaintiffs contend that, because Tel-Save knew that advances made to ABA and GLD were uncollectible, Tel-Save was required to provide reserves and to deduct the amount of the reserves from income. Plaintiffs also allege that Tel-Save was required to treat GLD as a "related party" under FASB No. 57.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 317103 (E.D.Pa.), Fed. Sec. L. Rep. P 90,480
(Cite as: 1999 WL 317103 (E.D.Pa.))

Page 6

Defendants have moved to dismiss Plaintiffs' GAAP allegations for failing to plead with specificity. See Defs.' Mem. at 27. However, the Court concludes otherwise. While "it is a factual question whether [a company's] accounting practices are consistent with GAAP," In re Burlington Coat Factory, 114 F.3d at 1421, there is still a threshold question as to whether the allegations of accounting violations meet the level of particularity required by Rule 9(b). Thus, if the elements of a securities fraud claim are adequately pled, allegations that defendants reported false profits in violation of GAAP can state a claim under Rule 10b-5. See In re Aetna Inc., 34 F.Supp.2d at 956. As the Third Circuit has explained, "where plaintiffs allege that defendants have distorted certain data disclosed to the public by using unreasonable accounting practices, we have required plaintiffs to state what the unreasonable practices were and how they distorted the disclosed data." In re Burlington Coat Factory, 114 F.3d at 1417-18). Moreover, while it is not a violation of the securities laws simply to fail to provide adequate loan loss reserves, see Shapiro v. UJB Fin. Corp., 964 F.2d 272, 283 (3d Cir.1992), here Plaintiffs have not merely alleged that the reserves were inadequate. Rather, Plaintiffs have alleged that Tel-Save failed to provide adequate reserves in order to bolster its earnings. See Compl. ¶¶ 13-14; see also In re Aetna Inc., 34 F.Supp.2d at 957 (finding that allegations of setting inadequate reserves to bolster earnings constitutes a violation of GAAP). As such, Plaintiffs have set forth specific facts concerning the inadequacy of Tel-Save's loan loss reserves allegedly either known or recklessly disregarded by Defendants at the time that Tel-Save issued its earnings reports and financial statements. Finally, as for the allegation that Tel-Save failed to identify GLD as a "related party," the Court also concludes that Plaintiffs' allegations are adequate to state a claim of violating GAAP against Tel-Save.

*8 Accordingly, Plaintiffs have adequately pled the first element of the 10b-5 claim.

2. *Scienter*

Under Rule 10b-5, the plaintiffs must further establish that the defendants acted with scienter and that the plaintiffs' reliance on defendants' misstatement or omission caused an injury to the plaintiffs, which Defendants argue Plaintiffs have inadequately pled. See Defs.' Mem. at 12. Under the PSLRA, the plaintiffs' complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). While courts have disagreed about how the PSLRA affects the pleading requirements for scienter that were in effect before its enactment, Congress has recently clarified the courts' confusion by confirming that the PSLRA had codified the Second Circuit's pleading requirements. See In re Home Health Corp. of America., Inc., 1999 WL 79057, at *14 (citing the Securities Litigation Uniform Standards Act of 1998 and its legislative history).

Under the requirement, which the Third Circuit had also adopted prior to the enactment of the PSLRA, plaintiffs must "allege specific facts that give rise to a 'strong inference' that defendants possessed the requisite intent." In re Burlington Coat Factory, 114 F.3d at 1418. This standard could be satisfied either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud; or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id. Thus, allegations that defendants had both motive and opportunity to commit fraud are sufficient to plead scienter under § 10(b). See In re Home Health Corp. of Am., Inc., 1999 WL 79057, at *14.

Plaintiffs argue that they have adequately pled scienter because they have alleged that Defendants had the opportunity to make false and misleading statements concerning Tel-Save to the public. Plaintiffs also allege that Defendants were motivated to inflate artificially the price of Tel-Save's stock so that they could profit from insider trading on the inflated prices, and so that Tel-Save's planned mergers and acquisitions could be completed using Tel-Save's stock rather than cash. Additionally, Plaintiffs claim to have pled strong circumstantial evidence of conscious misbehavior or recklessness by alleging that Defendants knew that each of their public statements was false or misleading.

As the individual defendants are dismissed from this action, the Court need only determine whether Plaintiffs have sufficiently pled scienter as to Tel-Save, the corporate

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                                   Page 7
Not Reported in F.Supp.2d, 1999 WL 317103 (E.D.Pa.), Fed. Sec. L. Rep. P 90,480
**(Cite as: 1999 WL 317103 (E.D.Pa.))**

defendant. Turning first to Tel-Save's motive and opportunity to commit fraud, Plaintiffs allege that Tel-Save was motivated to keep Tel-Save's stock price artificially high to facilitate a series of corporate transactions and debt offerings. The transactions consisted of two debt offerings during the class period, a stock-based merger, and Tel-Save's acquisition of a company.

*9 As an initial matter, Plaintiffs' allegations that Tel-Save concealed the overstatements of its stock price to complete two public offerings are insufficient to establish scienter because they do not permit an inference of fraud. *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 814 (2d Cir.1996).* In *San Leandro,* the court rejected the allegation that a company's desire to maximize the marketability or minimize the interest rate of a debt offering was sufficient because "[i]f scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." 75 F.3d at 814; *accord Melder v. Morris, 27 F.3d 1097, 1102 (5th Cir.1994)* (holding that inflating the price of stock in order to "successfully bring to fruition the [public] offerings" is insufficient to allow for a proper inference of scienter).

With respect to Plaintiffs' allegations that Tel-Save wanted to facilitate a merger with and acquire other companies using Tel-Save common stock to fund the transactions, the Court concludes that Plaintiffs have successfully pled facts establishing a strong inference of scienter as required under the PSLRA. First, Plaintiffs allege that in November of 1997, Tel-Save utilized 339,982 shares of its artificially inflated common stock along with a cash payment of $7.5 million to acquire Compco, Inc., a provider of communications software. Because Plaintiffs have identified an acquisition that took place during the class period and was funded with a combination of Tel-Save's stock and cash, a strong inference of fraudulent intent is possible. *But see In re Home Health Corp. of America, Inc., 1999 WL 79057, at *15* (concluding that allegations of unsubstantiated intentions to expand business through unspecified acquisitions, even when combined with a policy of funding such acquisitions with both stock and cash, were insufficient to establish scienter); *see also Coates,* 26 F.Supp.2d 919 (suggesting that if the plaintiffs had alleged any facts that defendants were acquiring other companies or planning such acquisitions, the pleadings would have satisfied the PSLRA).

Second, Plaintiffs allege that Tel-Save purposefully inflated its stock price to complete a merger. Specifically, Plaintiffs allege that in July of 1997, Tel-Save announced that it had entered into a merger agreement with Shared Technologies Fairchild, Inc. ("STF"), pursuant to which STF shareholders would receive shares of Tel-Save common stock in exchange for their STF common stock. Under the agreement, the exchange rate was tied to Tel-Save's common stock price at the time the merger was to be consummated in December of 1997. While it is unclear from the papers whether Tel-Save consummated the proposed merger, fraudulent intent can be inferred from the fact that Tel-Save was motivated to inflate the price of its stock to enter into the stock-based merger agreement.

*10 Accordingly, Plaintiffs' allegations, taken together as a whole, create a strong inference that Tel-Save possessed a mental state embracing an intent to deceive, manipulate, or defraud at the time of the alleged misrepresentations and omissions. As the facts show both a motive and an opportunity to commit fraud, the Court concludes that Plaintiffs have adequately pled the scienter requirement. As such, it is unnecessary for the Court to determine whether Plaintiffs have identified circumstances indicating conscious misbehavior or recklessness by Tel-Save.

Furthermore, as the remaining elements of the fraud claim have been adequately pled, the Court concludes that a dismissal of the § 10(b) and Rule 10b-5 claim is not warranted.

C. *Control Person Liability under § 20(a)*

Section 20(a) of the Securities Exchange Act imposes joint and several liability on any person who controls a person liable under any provision of the Act. *See* 15 U.S.C. § 78t(a). Plaintiffs allege that the individual defendants "acted as controlling persons of Tel-Save" under § 20(a). Compl. ¶ 157. Section 20(a) requires proof that "one person

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                                          Page 8
Not Reported in F.Supp.2d, 1999 WL 317103 (E.D.Pa.), Fed. Sec. L. Rep. P 90,480
**(Cite as: 1999 WL 317103 (E.D.Pa.))**

controlled another person, but also that the 'controlled person' is liable under the Act." *In re Aetna Inc., 34 F.Supp.2d at 956*.

Defendants have moved for dismissal of this claim on the grounds that there cannot be liability under § 20(a) against the individual defendants where Plaintiffs have failed to allege a primary violation under § 10(b) against Tel-Save, the "controlled person." *See* Defs.' Mem. at 28. As explained above, Defendants' argument fails because Plaintiffs have sufficiently stated a § 10(b) claim against Tel-Save. The Court, however, dismisses Plaintiffs' § 20(a) claim on the independent ground of failing to plead adequately that the six individual defendants controlled Tel-Save within the meaning of § 20(a).

IV. *Conclusion*

For the foregoing reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART. Plaintiffs' claim brought under § 10(b) of the Securities Exchange Act and Rule 10b-5 against the corporate defendant, Tel-Save, survives this motion. An appropriate order follows.

*ORDER*

AND NOW this 18th day of May, 1999, upon consideration of Plaintiffs' Motion to Dismiss the Consolidated Amended Class Action Complaint (Docket No. 12), Defendants' response (Docket No. 16), and Plaintiffs' reply thereto (Docket No. 17), it is hereby ORDERED that Defendants' motion is GRANTED IN PART and DENIED IN PART, in accordance with the accompanying memorandum, as set forth below:

1. Plaintiffs' first claim for relief brought under § 10(b) of the Securities Exchange Act and Rule 10b-5 is DISMISSED without prejudice as against the individual defendants Borislow, Farley, First, McCulla, DeMaio, and Kelly;

2. Plaintiffs' second claim for relief brought under § 20(a) of the Securities Exchange Act is DISMISSED without prejudice;

*11 3. Defendants' motion to dismiss is DENIED in all other respects;

4. Plaintiffs shall have 30 days from the date of entry of this order to file an amended complaint, should they wish to proceed in that manner in accordance with the accompanying memorandum.

Not Reported in F.Supp.2d, 1999 WL 317103 (E.D.Pa.), Fed. Sec. L. Rep. P 90,480

**Motions, Pleadings and Filings (Back to top)**

• 2:98cv03145 (Docket) (Jun. 18, 1998)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**10**

Westlaw.

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1980 WL 1057 (D.Del.), Energy Mgt. P 26,251
**(Cite as: 1980 WL 1057 (D.Del.))**

H

United States District Court,
D. Delaware.
National Distillers and Chemical Corporation, et al.
v.
Department of Energy, et al.
**Dkt. No. Civil 79-399**

October 23, 1980

Before Latchum, Judge.

**\*1** Plaintiffs in this action have filed a Motion for Reargument or Amendment of, and Relief from, the September 30, 1980 Order Granting Defendants' Motion to Dismiss pursuant to Local Rule 3.3 and Rules 59(e) and 60(b), F.R.Civ.P. Having carefully and fully considered the submissions of the plaintiffs, and defendants, in opposition thereto, the Court will deny plaintiffs' motion in all respects.

Plaintiffs primarily argue that by rejecting the allegations in their complaint that the Notice of Probable Violation ("NOPV") properly should be construed as a final, binding formal interpretation, the Court improperly declined to accept as true the factual averments of the complaint, treated defendants' motion to dismiss as a request for summary judgment without notification to plaintiffs, and decided disputed factual matters without affording plaintiffs the benefit of discovery. Specifically, plaintiffs argue that the Court improperly declined to accept as true their contention that the General Counsel's Office *sub silentio* adopted the legal conclusions contained in the NOPV by deferring to the ongoing enforcement proceeding or otherwise delegated its authority to issue the interpretation to the Economic Regulatory Administration ("ERA") by refusing to issue the requested interpretation. Plaintiffs seize upon the Court's statement in its opinion that this allegation "is not supported by the record," to substantiate their contention that the Court improperly treated the motion to dismiss as one for summary judgment and resolved disputed questions of fact.

Plaintiffs' contentions are completely without merit. Although in ruling on defendants' motion to dismiss, the Court was obligated to accept as true the factual allegations contained in the complaint, it was not bound to accept either conclusions of law, or unwarranted factual inferences contradicted by written documents incorporated and referred to in the complaint. See *Mitchell v. Archibald & Kendall, Inc.,* 573 F.2d 429, 432 (C.A.7, 1978); *Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (C.A.5, 1974); *Olpin v. Ideal National Insurance Co.,* 419 F.2d 1250, 1255 (C.A.10, 1969), cert. denied, 397 U.S. 1074 (1970); *K-Mart Corp. v. Midcon Realty Group of Conn.,* 489 F.Supp. 813, 814 (D.Conn.1980); *Exxon Corp. v. FTC,* 411 F.Supp. 1362, 1368 n. 17 (D.Del.1976); 5 Wright & Miller, Federal Practice and Procedure, § 1363 at 658-660. See also *Shell Oil Co. v. Train,* 585 F.2d 408, 414 (C.A.9, 1978). Thus even accepting as true plaintiffs' allegation that the NOPV "in fact complied with the definition and requirements of an interpretation by the General Counsel," (Docket Item ["D.I."] 1, P 28), this Court was not obligated to accept plaintiffs' further allegation that the NOPV therefore constituted "the final agency resolution of the purely legal issues raised in [plaintiffs'] Request," (*id.*), since this represents not a fact but a barefaced conclusion of law not binding on the Court. Although the Court's September 30, 1980 Opinion will not be restated here, the Court expressly held in this regard that the NOPV could not be ?? a final formal interpretation, ?? if the NOPV addressed the very same issues contained in plaintiffs' Request for Interpretation, because an NOPV, as a matter of law, "contains only preliminary conclusions of law which cannot be enforced and which are amenable to alteration or rescission at any time during three stages of administrative review." Slip op. at 26-27.

**\*2** Plaintiffs' further allegation that the actions of the General Counsel of the Department of Energy ("DOE") in dismissing the Request for Interpretation constituted a tacit adoption of the preliminary legal findings contained in the NOPV or a delegation of this authority to issue a formal interpretation to the ERA similarly represents another brazen conclusion of law not binding on the Court, and not a mere averment of fact. Moreover, even if this claim does not represent a conclusion of law, it is at best an unwarranted factual inference which is expressly contradicted by the written document incorporated in plaintiffs' complaint. Plaintiffs' complaint repeatedly refers to the June 15, 1979 letter from the General Counsel's Office to plaintiffs in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00272-GMS    Document 44-8    Filed 02/10/2006    Page 12 of 13

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1980 WL 1057 (D.Del.), Energy Mgt. P 26,251
(Cite as: 1980 WL 1057 (D.Del.))

Page 2

which the General Counsel's Office stated that it would not act on the Request for Interpretation because of the ongoing enforcement action and that, accordingly, it was dismissing the Request. (D.I. 1, P 28, 37, 74.) This letter, by virtue of its incorporation into plaintiffs' complaint, was properly considered by the Court along with the other allegations of the complaint in ruling upon defendants' motion to dismiss. [FN1] As noted in the Court's opinion, the June 15, 1979 letter states in pertinent part:

> FN1 While plaintiffs did not attach the June 15, 1979 letter to their complaint, they did, however, introduce the document in its entirety as an exhibit to their Motion to Postpone Application of Penalties and Sanctions and for a Preliminary Injunction. (D.I., ex. 8.) Defendants also attached the letter as an appendix to their motion to dismiss. (D.I. 7, ex. B.) Because the pertinent document was repeatedly referred to in plaintiffs' complaint, formed the basis for many of the purported issues in this case, and was conceded to be authentic by both parties, the defendants properly introduced the letter in its motion to dismiss and the Court properly considered the letter in ruling on the motion. *See* Interstate Natural Gas Co. v. Southern Calif. Gas Co., 209 F.2d 380, 384 (C.A.9. 1953); Bechtel Corp. v. Local 215, Laborers' Int. U. of N.A., 405 F.Supp. 370, 374 n.1 (M.D.Pa.1975), *aff'd in part on other grounds*, 544 F.2d 1207 (C.A.3. 1976); Dehaan v. Brandeis University, 150 F.Supp. 626, 627 (D.Mass.1957).

At the time of your request [for Interpretation] the Economic Regulatory Administration (ERA) was conducting a factfinding investigation of National Distillers and the way in which its activities relate to the specific issue raised in your request. The ERA recently concluded its investigation and on May 30, 1979, issued to National Distillers a Notice of Probable Violation (NOPV), Case No. 720V01245, in which specific legal conclusions are drawn from the application of the pertinent DOE regulations to the same issue raised in your request based upon the facts determined during the course of the ERA investigation of National Distillers.

*3 Inasmuch as the interpretations process is not intended to serve as an alternative forum for review or "appeal" of an NOPV, the contentions contained in your Request for Interpretation are properly raised in a response to the NOPV. Under DOE procedures, should a Proposed Remedial Order be issued, aggrieved parties may file a Notice of Objection with the Office of Hearings and Appeals (OHA). Thereafter, should any Remedial Order be issued by OHA, the firm may file an administrative appeal with the Federal Energy Regulatory Commission. 10 CFR Part 205, Subpart O.

In view of the fact that the issues which you have raised in your request are best resolved in connection with the administrative procedures designed specifically for consideration of an NOPV, it would not be appropriate for the Office of General Counsel concurrently to address these issues in the context of an interpretation request. Accordingly, your Request for Interpretation is dismissed. This letter does not constitute an interpretation as contemplated by Subpart F of 10 CFR Part 205.

D.I. 4, ex. 8.

The June 15, 1979 letter, therefore, directly contradicts plaintiffs' conclusory allegations that the General Counsel's Office, by dismissing plaintiffs' request, directly or indirectly adopted as a final interpretation the tentative legal conclusions contained in the NOPV. The Court was thus not bound to accept as true "factual claims at variance with the express terms" fo the June 15, 1979 letter, see Olpin v. Ideal National Insurance Company, supra, 419 F.2d at 1255, and accordingly could disregard these "conclusory allegations and unwarranted deductions of fact," see Associated Builders, Inc. v. Alabama Power Company, supra, 505 F.2d at 100. See also Jenkins v. S & A Chaissan & Sons, Inc., 449 F.Supp. 216, 227 (S.D.N.Y. 1978) (bald statement of fact in complaint need not be blindly accepted in view of more specific allegations contradicting statement); 5 Wright & Miller, Federal Practice and Procedure, P 1327 at 492-93 and cases cited therein (when disparity exists between a written exhibit incorporated in a complaint and allegations in the complaint, the written exhibit will control.) Considering solely the allegations of the complaint, including the June 15, 1979 letter incorporated therein, as the "record," the Court properly determined, as a matter of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1980 WL 1057 (D.Del.), Energy Mgt. P 26,251  
**(Cite as: 1980 WL 1057 (D.Del.))**

Page 3

law, that the NOPV was not reviewable final agency action.

Plaintiffs also contend that had they been afforded the opportunity for discovery, they could have established the factual inferences and conclusions of law asserted in the complaint. In support of this argument, they allege that internal documents recently disclosed by the DOE pursuant to a Freedom of Information Act request demonstrate that "there was a close liaison between ERA enforcement personnel and the Office of General Counsel" (D.I. 39, p.5), and that the discussion of legal issues in the NOPV was formulated "after consulation with and clearance by the General Counsel." (*Id.* at 7.) Under the Court's September 30, 1980 Opinion, these allegations, even if true, would not present grounds for the relief requested here. The Court expressly held that "where an investigation giving rise to an enforcement proceeding, or the enforcement proceeding itself is underway, the DOE has discretion to dismiss requests for interpretation bearing on the exact same legal issues which are the focus of the pending investigation or enforcement proceeding." Slip op. at 33. Because the General Counsel was not obligated to issue an interpretation as a matter of law, and the facts as alleged in the complaint and the June 15, 1979 letter incorporated therein clearly establish that the General Counsel expressly declined to issue an interpretation, the only issue before the Court was whether the NOPV was reviewable as final agency action. The Court held, for the reasons set forth in great detail in its opinion, that it was not. Discovery calculated to show that the General Counsel consulted the ERA on, or played a part in, the formulation of the preliminary legal issues contained in the NOPV would not alter the legal determination previously entered in this case or change the result.

*4 Plaintiffs' Motion for Reargument, or Amendment of, and Relief from, the September 30, 1980 Order Granting Defendants' Motion to Dismiss will be denied.

### Order

For the reasons set forth in the Court's Memorandum Opinion entered in this case on this date, it is

ORDERED that the Plaintiffs' Motion for Reargument, Or Amendment of, and Relief from, the September 30, 1980 Order granting Defendants' Motion to Dismiss the Complaint is hereby denied.

Not Reported in F.Supp., 1980 WL 1057 (D.Del.), Energy Mgt. P 26,251

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.