# TABS 4-5
# to Compendium

# TAB 4
# to Compendium

LEXSEE 2006 U.S. DIST. LEXIS 2345

In re MERCK CO., INC., SECURITIES, DERIVATIVE & "ERISA" LITIGATION

Civil Action No. 05-1151 (SRC), 05-2367 (SRC)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

2006 U.S. Dist. LEXIS 2345

January 20, 2006, Decided
January 20, 2006, Filed

**NOTICE:** [*1] NOT FOR PUBLICATION

**COUNSEL:** For JEROME HABER, STEVEN LEVAN, MARC NATHANSON, RICHARD REYNOLDS, Plaintiffs: DAVID A.P. BROWER, MARK LEVINE, COUNSEL NOT ADMITTED TO USDC-NJ BAR, STULL, STULL & BRODY, ESQS., NEW YORK, NY; PETER S. PEARLMAN, COHN, LIFLAND, PEARLMAN, HERRMANN & KNOPF, LLP, SADDLE BROOK, NJ; PAUL B. BRICKFIELD, BRICKFIELD AND DONAHUE, RIVER EDGE, NJ.

For MERCK & CO, INC., ALISE S. REICIN, ANNE M. TATLOCK, BERNARD J. KELLEY, CAROLINE DORSA, CELIA COLBERT, DAVID W. ANSTICE, HEIDI G. MILLER, JOHNNETTA B. COLE, JUDY C. LEWENT, KENNETH C. FRAZIER, LAWRENCE A. BOSSIDY, LINDA M. DISTLERATH, LLOYD C. ELAM, PER G.H. LOFBERG, PER WOLD-OLSEN, PETER S. KIM, RAYMOND V. GILMARTIN, RICHARD C. HENRIQUES, RICHARD T. CLARK, SAMUEL O. THIER, THOMAS E. SHENK, WILLIAM B. HARRISON, WILLIAM G. BOWEN, WILLIAM N. KELLEY, Defendants: ROBERT H. BARON, COUNSEL NOT ADMITTED TO USDC-NJ BAR, CRAVATH SWAINE & MOORE, LLP, NEW YORK, NY; ROBERTA KOSS, WILLIAM R. STEIN, COUNSEL NOT ADMITTED TO USDC- NJ BAR, HUGHES HUBBARD & REED, LLP, WASHINGTON, DC.

For ACE AMERICAN INSURANCE COMPANY, Defendant: WILLIAM D. WILSON, MOUND, COTTON & WOLLAN, NEWARK, NJ.

For ACE BERMUDA INSURANCE LTD., Defendant: DAREN [*2] S. MCNALLY, CONNELL FOLEY, LLP, ROSELAND, NJ.

For AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, NORTH ROCK INSURANCE CO. LTD., Defendants: PAUL C. VITRANO, ROSS, DIXON, & BELL, LLP, WASHINGTON, DC.

For ARCH REINSURANCE LTD., Defendant: BRETT L. MESSINGER, DUANE MORRIS, LLP, PHILADELPHIA, PA.

For AXIS REINSURANCE CO., AXIS SPECIALTY LTD., Defendants: JONATHAN S. REED, TRAUB, EGLIN, LIEBERMAN & STRAUS, LLP, EDISON, NJ.

For EDWARD SCOLNICK, Defendant: MARTIN L. PERSCHETZ, SUNG-HEE SUH, WILLIAM HAYWARD GUSSMAN, JR., COUNSEL NOT ADMITTED TO USDC-NJ BAR, SCHULTE, ROTH & ZABEL, LLP, NEW YORK, NY; LAWRENCE M. ROLNICK, SHEILA A. SADIGHI, LOWESTEIN SANDLER, PC, ROSELAND, NJ; SALLY ANNE MULLIGAN, LOWENSTEIN SANDLER, ROSELAND, NJ.

For FEDERAL INSURANCE CO., Defendant: STEVEN F. GOOBY, DLA PIPER RUDNICK GRAY CARY US LLP, EDISON, NJ.

For HOUSTON CASUALTY CO., Defendant: ANTHONY J. LAPORTA, WHITE & WILLIAMS, LLP, PARAMUS, NJ.

For MAX RE LTD., XL INSURANCE SWITZERLAND, Defendants: NATALIE GARCIA, LANDMAN, CORSI, BALLAINE & FORD, PC, NEWARK, NJ.

For SR INTERNATIONAL BUSINESS INSURANCE CO. LTD., Defendant: JOANNA L. CROSBY,

TRESSLER, SODERSTROM, MALONEY [*3] & PRIESS, ESQS., NEWARK, NJ.

For STEADFAST INSURANCE CO., ZURICH AMERICAN INSURANCE CO., Defendants: STEFANO V. CALOGERO, CUYLER BURK LLP, PARSIPPANY, NJ.

For TWIN CITY FIRE INSURANCE CO., Defendant: JOHN B. MULLAHY, TIMOTHY E. MCCARTHY, KAUFMAN BORGEEST & RYAN LLP, PARSIPPANY, NJ.

For XL INSURANCE (BERMUDA), Defendant: MARC B. ZINGARINI, WEBER, GALLAGHER, SIMPSON, STAPLETON & FIRES, LLP, CHERRY HILL, NJ; MICHAEL S. SAVETT, WEBER, GALLAGHER, SIMPSON, STAPLETON, FIRES & NEWBY, LLP, CHERRY HILL, NJ.

**JUDGES:** HONORABLE TONIANNE J. BONGIOVANNI, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** TONIANNE J. BONGIOVANNI

**OPINION:**

### LETTER OPINION AND ORDER

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon formal motion by Plaintiffs for the securities litigation (hereinafter Plaintiffs) seeking: (1) to strike 139 of 172 exhibits attached to the Declaration of Robert H. Baron in Support of Defendants' Motion to Dismiss the Corrected Consolidated and Fourth Amended Class Action Complaint (hereinafter "the Baron Declaration"), as well as the Memorandum of Law in Support of Defendants' Motion to Dismiss; or in the alternative (2) to have Defendants' Motion to Dismiss [*4] converted to a Motion for Summary Judgment pursuant to *FED. R. CIV. P. 12(b)* [Docket Entry # 35 for Civil Action No. 05-2367]. Defendants' object to Plaintiffs' Motion. For the foregoing reasons, Plaintiffs' Motion shall be DENIED.

*Plaintiffs' Motion in Summary*

Plaintiffs place at issue 139 of the 172 exhibits Defendants attached to the Baron Declaration in support of their Motion to Dismiss. n1 Plaintiffs argue that the 139 exhibits in question are extraneous and go beyond the contents of the complaint, in contradiction to *FED. R. CIV. P. 12(b)* and subsequent judicial holdings. Because these exhibits are neither explicitly referenced or quoted in Plaintiffs' Complaint, nor otherwise fall into any exception to *Rule 12(b)* and its progeny, Plaintiffs argue that the 139 exhibits should be stricken.

> n1 Plaintiffs' originating Motion had placed at issue 152 exhibits. Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion withdrew their objection to Exhibits 14, 15, 16, 17, 18, 19, 54, 55 and 56 (previously filed securities complaints against Merck). Additionally, Plaintiffs indicated that they would not object to the submission of Exhibits 23, 24, 25 and 33 (tort complaints filed against Merck) if Plaintiffs were permitted to submit Merck's answers to those complaints, which the Court shall so order. As such, the aforementioned exhibits are no longer at issue.

[*5]

Additionally, Plaintiffs argue that because Defendants' Memorandum of Law in support of their Motion to Dismiss is so laden with references to the 139 exhibits in question, that the Memorandum of Law should be stricken as well, and Defendants instructed to redraft their Memorandum of Law removing all references to the 139 exhibits.

Alternatively, should the Court not strike the 139 exhibits, this Court should convert Defendants' Motion to Dismiss to a Motion for Summary Judgment as so instructed under *FED. R. CIV. P. 12(b)*, and permit Plaintiffs to proceed with discovery so that they may properly respond to the convert Motion for Summary Judgment.

*Defendants' Opposition in Summary*

Defendants' object to Plaintiffs' Motion to Strike or alternatively, to convert Defendants' Motion to Dismiss to a Motion for Summary Judgment. Defendants' argue that Plaintiffs' Motion to Strike was simply a diversionary tactic to obfuscate Defendants' contestation that Plaintiffs' Complaint is barred by the applicable statute of limitations, which is Defendants' basis for their Motion to Dismiss.

Defendants' substantively argue three separate bases [*6] to justify the submission of the 139 exhibits in question. First, Defendants argue that the exhibits are subject to mandatory judicial notice as public documents not being offered for the truth of their contents pursuant to *F.R.E. 201(d)*. Second, Defendants argue that the exhibits may be considered by the Court because they are either explicitly quoted or referenced in the Complaint, or because the allegations in the Complaint are based upon the challenged exhibits. Defendants' third and final argument is that the exhibits in question are integral to

Plaintiffs' Complaint as Plaintiffs' invoke the "fraud on the market doctrine" which allows a court to consider what was publicly available to the market at the time of the allegedly fraudulent conduct.

## The Law

### The 12(b)(6) Standard

In deciding a motion to dismiss under *FED. R. CIV. P. 12(b)(6)* all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See *Warth v. Seldin, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)*; *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998)*; [*7] *Robb v. Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984)*. In evaluating a *Rule 12(b)(6)* motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. See *Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)*. If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. *Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)*; *Zynn v. O'Donnell, 688 F.2d 940, 941 (3d Cir. 1982)*.

### The Four Corners Doctrine

*FED.R.CIV.P. 12(b)* specifically circumscribes material that a court may consider in a motion to dismiss by stating, in pertinent part: "If, on a motion asserting the defense number (6) to dismiss, . . . matters outside the pleading are [*8] presented and not excluded by the court, the motion shall be treated as one for summary judgment . . ." As such, a court generally may not "consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)*. There are two exceptions to the general rule, however. Documents which are integral to the complaint and documents of which a court may take judicial notice.

### Documents Integral to the Complaint

The first exception to the four corners doctrine allows a court to consider documents that can be considered "integral" to the referencing complaint. Id. Integral documents are defined as documents which create the rights or duties that are the basis for the Complaint. *Id. at 1196*. A typical example is a civil action alleging contractual breach where the actual contract has not been annexed to the complaint. In such cases, the contract would be considered integral and a defendant filing a motion to dismiss under *Rule 12(b)(6)* would be permitted to attach the contract as an exhibit, which would then be considered for its truth by the court. See *Burlington Coat at 1426* (finding that where a complaint [*9] relied on certain data in support of claims alleged, but did not attach the source of the data, a court could consider that source if provided by defendants in a motion to dismiss).

### Judicial Notice of Public Records

The second exception to the four corners doctrine allows a court to "take judicial notice of public records." See *Oran v. Stafford, 226 F.3d 275, 289 (3d Cir. 2000)*, see also *In re ATI Tech., Inc. Sec. Litig., 216 F. Supp. 2d 418, 430 (E.D.Pa. 2002)*. Federal Rule of Evidence 201, et seq. is the cornerstone of judicial notice, and it states, in relevant part:

> Judicial Notice of Adjudicative Facts - F.R.E. 201(b) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Should a document be judicially noticed, said document "may only be considered for the limited purpose of showing that a particular statement [*10] was made by a particular person" and not "for the truth of the matters purportedly contained within those documents." *Oran at 289* (quoting *Kramer v. Time Warner, 937 F.2d 767, 774 (2d Cir. 1991)*). If a court were to consider and judicially notice documents for their truth it would be, in essence, authorizing a trial by public documents, impermissibly expanding the scope of a *Rule 12(b)(6)* motion. *In Re Viropharma, Inc., 2003 U.S. Dist. LEXIS 5623, 2003 WL 1824914 (E.D.Pa. 2003)*.

Courts have held "public records" to include criminal case dispositions, letter decisions of government agencies, published reports of administrative bodies, or any "concededly authentic document upon which the complaint is based . . ." *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993)*. Additionally, courts have found public disclosure documents required by law to be filed with the SEC are capable of judicial notice (*Kramer v. Time Warner, 937 F.2d 767, 774 (2d Cir. 1991)*), as well as opening and closing stock prices (*Ieradi v. Mylan Lab., Inc., 230 F.3d 594, 600 n.3 (3d Cir. 2000)*).

[*11] *Analysis*

Case 1:05-cv-00272-GMS    Document 46-5    Filed 04/11/2006    Page 6 of 18

Page 4
2006 U.S. Dist. LEXIS 2345, *

This Court shall adopt the categorization of exhibits as illustrated in Plaintiffs' Declaration of Bruce D. Berstein, Exhibit 1.

### *FDA Material (Exhibits 2, 7, 8, 10, 27, 28, 52, 53)*

Plaintiffs' seek to strike all annexed exhibits related to FDA materials by Defendants in their Motion to Dismiss. Plaintiffs argue that the FDA material offered by Defendants should be stricken because they include: (1) transcripts of an FDA Advisory Committee Meeting which have not been identified as authentic; (2) extraneous FDA documents which are not official actions or decisions of the agency; (3) material submitted to the FDA by Defendants themselves; (4) scientists' opinions; and (5) documents offered for their truth.

Defendants counter that none of the FDA exhibits are being offered for their truth, but rather, as a demonstration that such statements were made by certain people. Additionally, Defendants argue that Exhibit 2 ("FDA Advisory Committee Briefing Document" dated February 8, 2001) is specifically referenced in Plaintiffs' Complaint, allowing for its consideration for not only its existence, but also for its truth.

The Court recognizes that there is a distinction [*12] between official releases by an administrative body and supporting documents which are submitted by other sources and merely considered by an agency in its decision-making process. Merely because the agency in question makes available those supporting documents that they then become "records and letters of official actions or decisions of government agencies and administrative bodies." See *Arizmendi v. Lawson*, 914 F.Supp. 1157, 1160 (E.D.Pa. 1996).

There are, however, fact specific exceptions ambuscading about in case law. See *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (court refusing to judicially notice an interparty written communication because it may be subject to disclosure under FOIA, indicating a different result has a FOIA request been made and granted); see also *Mullen v. Topper's Salon and Health Spa, Inc.*, 99 F.Supp.2d 553 (E.D.Pa. 2000) (an EEOC charge of discrimination by Plaintiff found to be an administrative filing was to be considered part of the public record) citing *Fosburg v. Lehigh University*, 1999 U.S. Dist. LEXIS 2833, 1999 WL 124458 at 2 (E.D.Pa. 1999); [*13] *In re Guidant Corp. Sec. Litig.*, 2004 U.S. Dist. LEXIS 22809, 2004 WL 2538374 at *9, n.20 (S.D.Ind. 2004) (medical device reports filed with the FDA considered on a motion to dismiss); *In re Viropharma, Inc.*, 2003 U.S. Dist. LEXIS 5623, 2003 WL 1824914 at *1 (E.D.Pa. 2003) (rejecting statements made by Viropharma to the FDA for their truth).

Additionally, it is undeniable that all of Defendants' FDA exhibits are readily viewable by the public when the appropriate web address is entered. The FDA commonly offers submissions it receives from outside sources, and offers them publicly which alleviates a need for a FOIA request.

A final consideration for the court is the Defendants plain assertion that none of the FDA exhibits they have exhibited are being offered for their truth, thereby limiting the impact the documents in question can make in the District Court's deliberation regarding Defendants' Motion to Dismiss. Because the exhibits will not be considered for their truth, and because supporting documentation to administrative agencies have been judicially noticed, this Court shall take judicial notice of all FDA exhibits propounded by Defendants, except for Exhibit 2, which shall be substantively adopted. [*14]

### *Charts "Purporting" to Set Forth Insider Trading of Defendant Merck's Stock (Exhibits 35 though 51)*

Plaintiffs next object to the charts by Defendants setting forth the insider trading transactions in Merck stock. Plaintiffs allege that these exhibits cannot fall under the SEC filing exception to a motion to dismiss because they are not SEC filings and because a third-party created them.

Defendants disagree and argue that the charts are summaries of information taken directly from the publicly available SEC Forms 4 and 5 for each listed individual. Defendants further argue that because the charts in question fall within the SEC filing exception, and because Plaintiffs utilize similar charts to summarize other Defendant Merck transactions in their Complaint, that the charts should be incorporated and should be considered for their truth. Lastly, Defendants argue that no third-party was employed by Defendants to create the charts, but rather, the name cited at the bottom of each chart is an online service used to obtain SEC Forms 4 and 5 for each charted individual.

*Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) states in plain terms that a court may [*15] take judicial notice of SEC filings. It is also without dispute that SEC Forms 4 and 5 are in fact SEC filings as contemplated by Oran. What remains at issue is whether the District Court can consider informational charts as "sources whose accuracy cannot reasonably be questioned" (F.R.E. 201(b)(2)) for purposes of judicial notice or, as Defendants would prefer the Court find, whether the information is "integral to" Plaintiffs' Complaint (*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1510 (3d Cir. 1997)), allowing for the charts substantive consideration by the District Court.

It is clear that Plaintiffs rely on a similar charting process to demonstrate Defendants' transactions in Merck stock in Plaintiffs' Complaint (See Complaint, P394(a)-(p)). Plaintiffs' also dedicate a five paragraph section of their Complaint on SEC filings to support a claim of scienter by Defendants regarding insider trading by Merck employees (Complaint, PP394-99). The fact that the SEC forms submitted by Defendants in their Motion to Dismiss are in chart summary form does not dissuade as they were not crafted by a third-party and as Plaintiffs [*16] will be permitted to challenge their veracity if they so choose.

As such, Defendants' charts may be substantively considered in support of their Motion to Dismiss as integral to Plaintiffs' theory of reliance as they purport comparable evidence previously offered by Plaintiffs in support of their civil action. *In re Sec. Litig. BMC Software, Inc.*, 183 F.Supp.2d 860, 884 (S.D.Tex. 2001) (allowing incorporation by reference of SEC Forms 4 and 5 though not explicitly mentioned in complaint because they are integral to plaintiff's allegations); *Allison v. Brooktree Corp.*, 999 F.Supp. 1342, 1352, n.3 (S.D.Cal. 1998) (taking judicial notice of SEC Forms 4 and 5 on a motion to dismiss).

***Scientific and Medical Literature, New Articles, Analyst Reports and Composite Charts (Exhibits 4, 9, 29-32, 57-72, 74-87, 90-99, 101-109, 111-113, 115-121, 123-140 and 142-172)***

Plaintiffs next contend that the 32 science/medical submissions, 40 news stories and 39 analyst reports should be stricken because these documents are not referenced in the Complaint, nor are they the types of documents considered to be public records.

Defendants argue that this Court may indeed [*17] take judicial notice of Exhibits 4, 9, 29-31, 60-72 and 74-87 specifically because they are available on Westlaw and Lexis, making them self-authenticating, and because they demonstrate inquiry notice by Plaintiffs in support of Defendants' contention in their Motion to Dismiss that the Plaintiffs' claims are time barred as being brought outside the applicable statute of limitations. Defendants also allege that the public information about Merck and VIOXX is integral to Plaintiffs' Complaint because Plaintiff invokes the "Fraud on the Market Doctrine" which allows courts to consider what was publicly available to the market at the time of the allegedly fraudulent conduct.

Law in the Third Circuit has recently crystalized which permits judicial notice of the newspaper articles submitted by Defendants, and by implication the science and medical literature and analyst reports as well. Specifically, in *Benak v. Alliance Capital Mgmt. L.P.*, 349 F.Supp.2d 882, 889 n.8 (D.N.J. 2004), the District Court had held that it would consider newspaper articles "notwithstanding their absence from the Complaint . . .[for purposes of inquiry notice]." The District Court dismissed [*18] the plaintiffs' complaint on defendants' motion to dismiss. The plaintiffs appealed. The decision of the Third Circuit ends the debate:

> "We review the District Court's decision to take judicial notice of certain facts for abuse of discretion. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1323. We see no basis to upset the District Court's decision to take judicial notice of newspaper articles supplied by appellees. The inquiry notice analysis is an objective one. Whether appellants read the articles or were aware of them is immaterial. They serve only to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true. *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 289 F.Supp.2d 416, 425 n.15 (S.D.N.Y. 2003) ('The Court may take judicial notice of newspaper articles for the fact of their publication without transforming the motion into one for summary judgment.'). There publication is 'not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned.' Fed. R. Evid. 201(b)(2); see *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) [*19] ('We take judicial notice that the market was aware of the information contained in news articles submitted by the defendants.')."

See *Benak v. Alliance Capital Mgmt. L.P.*, 2006 U.S. App. LEXIS 819, slip op., n.15 (3d Cir. 2006).

In light of the Third Circuit's recent determination, this Court shall take judicial notice of the 40 new stories submitted by Defendants in their Motion to Dismiss, and by implication shall also judicially notice the 32 science and medical submissions, the 39 analyst reports and the composite charts in question. This Court will not admit the exhibits for their truth, but rather, for the limited purpose of proving their existence with regards to Defendants' assertions of inquiry notice for the purpose of their statute of limitations' defense, and in defense of Plaintiffs' Fraud on the Market assertions as conveyed in their (Plaintiffs) Complaint.

*Conclusion*

For the foregoing reasons, Plaintiffs' Motion to Strike Defendants' Exhibits to their Motion to Dismiss or alternatively, to convert Defendants' Motion to Dismiss to a Motion for Summary Judgment shall be denied. Defendants' Exhibits 2 and 35 though 51 shall be substantively considered [*20] as integral to Plaintiffs' Complaint and Defendants' Exhibits 4, 7 through 10, 27 through 32, 52 through 53, 57 through 72, 74 though 87, 90 through 99, 101 through 109, 111 through 113, 115 through 121, 123 through 140 and 142 through 172 shall be judicially noticed. n2

n2 As a necessary result of this Court's determination, Defendant Scolnick's Memorandum of Law in support of his Motion to Dismiss, as well as the Certification of Lawrence M. Rolnick and Baron's Exhibit 51 shall not be stricken.

20 JAN 06

**HONORABLE TONIANNE J. BONGIOVANNI**

**UNITED STATES MAGISTRATE JUDGE**

# TAB 5
# to Compendium

LEXSEE 2005 U.S. DIST. LEXIS 22752

**DAVID MONTALVO, on behalf of Himself and All Others Similarly Situated, Plaintiffs, vs. TRIPOS, INC., JOHN P. MCALISTER, B. JAMES RUBIN, and ERNST & YOUNG, L.L.P., Defendants.**

Case No. 4:03CV995SNL

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION**

*2005 U.S. Dist. LEXIS 22752*

**September 30, 2005, Decided**

**PRIOR HISTORY:** *Montalvo v. Tripos, Inc., 2005 U.S. Dist. LEXIS 22753 (E.D. Mo., Sept. 30, 2005)*

**COUNSEL:** [*1] For David Montalvo, individuallyy and on behalf of all others similarly situated, Plaintiff: Caroline Marshall, Kirk Chapman, MILBERG AND WEISS, New York, NY; David A. Rosenfeld, Samuel H. Rudman, LERACH AND COUGHLIN, LLP, Melville, NY; Don R. Lolli, DYSART AND TAYLOR, Kansas City, MO; J. Allen Carney, Marcus N. Bozeman, Tiffany Wyatt, CAULEY AND BOWMAN, Little Rock, AR; Marc A. Topaz, SCHIFFRIN AND BARROWAY, LLP, Radnor, PA; Martin W. Blanchard, SAUERWEIN AND BLANCHARD, P.C., Clayton, MO.

For Deborah Schneider, Consolidated Filer Plaintiff: Don R. Lolli, DYSART AND TAYLOR, Kansas City, MO.

For Roman Korbiak, Consolidated Filer Plaintiff: Don R. Lolli, DYSART AND TAYLOR, Kansas City, MO; Caroline Marshall, Kirk Chapman, MILBERG AND WEISS, New York, NY.

For Kenneth L. Riney, individually and on behalf of all others similarly situated, Consolidated Filer Plaintiff: Don R. Lolli, DYSART AND TAYLOR, Kansas City, MO; Joseph R. Seidman, Jr., Mel E. Lifshitz, BERNSTEIN AND LIEBHARD, New York, NY.

For W. Kent Kruske, individually and on behalf of all others similarly situated, Consolidated Filer Plaintiff: Don R. Lolli, DYSART AND TAYLOR, Kansas City, MO; Karen Hanson Riebel, [*2] Richard A. Lockridge, LOCKRIDGE AND GRINDAL, Minneapolis, MN; Samuel H. Rudman, LERACH AND COUGHLIN, LLP, Melville, NY.

For Tripos, Inc., John P. McAlister, B. James Rubin, Defendants: Cheryl W. Foung, Diane M. Walters, Lloyd Winawer, Steven M. Schatz., WILSON AND SONSINI, Palo Alto, CA; Gerard T. Carmody, Kelley Field Farrell, CARMODY MacDONALD P.C., St. Louis, MO.

For Ernst & Young, LLP, Defendant: Michele L. Odorizzi, MAYER, BROWN, ROWE & MAW LLP, Chicago, IL; Charles A. Weiss, BRYAN CAVE LLP, St. Louis, MO.

**JUDGES:** Stephen N. Limbaugh, SENIOR UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Stephen N. Limbaugh

**OPINION:**

MEMORANDUM

Lead Plaintiffs have filed this second amended complaint on behalf of purchasers of Tripos common stock between February 9, 2000 and July 2, 2002, inclusive. They assert violations of *Section 10-b* of the Securities Exchange Act of 1934 and *Rule 10b-5* thereunder (Count I - all defendants) and *Section 20(a)* of the Securities Exchange Act of 1934 (Count II - individual defendants only). This matter is before the Court on defendants Tripos, McAlister, and Rubin's motion to dismiss (# 56), filed August 4, 2004. Over an extended period of time, the parties have [*3] filed lengthy and extensive responsive pleadings and the matter is now ripe for disposition.

Defendants seek to dismiss this second amended complaint for failure to state a claim under *Rule 12(b)(6) Fed.R.Civ.P.*, in connection with the "heightened pleading requirements" of the Private Securities Litigation Reform Act of 1995 (PSLRA), *15 U.S.C. § 78u-4*, and for failure to state a claim for "control person liability"

Case 1:05-cv-00272-GMS    Document 46-5    Filed 04/11/2006    Page 11 of 18

Page 2
2005 U.S. Dist. LEXIS 22752, *

under *Section 20(a)* of the Securities Exchange Act of 1934, *15 U.S.C. § 78t(a)*. They aver, among a myriad of other things, that plaintiffs have continued to fail to 1) state with any particularity that any defendant acted with the required state of mind (scienter); 2) state with any particularity why any challenged statement was false or misleading when made; 3) state with any particularity all necessary facts forming the basis for the allegations regarding a "conspiracy" to commit deliberate accounting fraud; and 4) state with any particularity the acts committed by the individual defendants in connection with the alleged accounting fraud.

The second amended complaint generally consists [*4] of two (2) primary claims: Firstly, that the defendants made or participated in making false and/or misleading statements leading to a "scheme to defraud" or course of conduct designed to operate as a fraud or deceit upon plaintiffs as investors between February 2000 and July 2002. They contend that defendants knew of certain events, including but not limited to, a lost software contract and improper accounting methods, which when eventually disclosed, caused a significant drop in the stock value. Lead Plaintiffs allege that despite knowledge of the negative events and accounting irregularities, defendants continued throughout 2001 to forecast extremely positive revenues for defendant Tripos in order to encourage the "investors class" to purchase the Company's securities; and that the "investors class" relied on these false forecasts in making such purchases. Secondly, that defendant Ernst & Young, as outside auditor and accountant for Tripos, while performing audits:

> "falsely represented that it performed these audits in accordance with Generally Accepted Auditing Standards (GAAS) and issued materially false and misleading unqualified audit opinions as to those financial statements [*5] during the Class Period, claiming that the financial statements were prepared and presented in accordance with Generally Accepted Accounting Principles (GAAP). Additionally, E&Y consented to the use of its unqualified opinion letters for Tripos' financial statements contained in the Company's respective Form 1-Ks for fiscal 1999, 2000, and 2001.. E&Y also prepared and assisted Tripos in issuing the Company's materially false and misleading Form 10-Qs during the Class Period."

Second Amended Complaint (# 31), filed May 5, 2004; pg. 6, P18.

In passing on a motion to dismiss, a court must view the facts alleged in the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes, 416 U.S. 232, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974); Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99(1957); Toombs v. Bell, 798 F.2d 297, 298 (8th Cir. 1986)*. The court must accept the allegations in the complaint as true and draw reasonable inferences in favor of the nonmoving party, dismissing the complaint only if "it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, supra, 355 U.S. at 45-46;* [*6] *see also, Moses.com Securities v. Comprehensive Software Systems, Inc., 406 F.3d. 1052, 1062 (8th Cir. 2005)*. "Although the pleading standard is liberal, the plaintiff must allege facts -- not mere legal conclusions -- that, if true, would support the existence of the claimed torts. *Moses.com, at 1062 citing Schaller Tel.Co. v. Golden Sky Sys., 298 F.3d. 736, 740 (8th Cir. 2002)*. In viewing the complaint in the light most favorable to the plaintiff, the court should not dismiss it merely because the court doubts that the plaintiff will be able to prove all of the necessary allegations. *Bennett v. Berg, 685 F.2d. 1053, 1058 (8th Cir. 1982)*. Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982)*.

**Federal Securities Law - *Section 10(b)* and *Rule 10b-5***

Plaintiffs allege violations of *Section 10(b)* of the Securities Exchange Act of 1934 and *Rule 10b-5*. *Section 10(b)* and *Rule 10b-5* prohibit fraudulent [*7] conduct in the sale and purchase of securities. *Section 10(b)* forbids (1) the "use or employment . . . of any . . . deceptive device," (2) "in connection with the purchase or sale of any security," and (3) "in contravention of" Securities and Exchange Commission "rules and regulations". *Dura Pharmaceuticals v. Broudo, U.S. , 161 L. Ed. 2d 577, 125 S.Ct. 1627, 1630-31 (2005) citing 15 U.S.C. § 78j(b); see, Ferris, Baker Watts, Inc. v. Ernst & Young, L.L.P., 395 F.3d. 851, 853-54 (8th Cir. 2005); In re: K-Tel International. Inc. Securities Litigation, 300 F.3d. 881, 888 (8th Cir. 2002); In re: Navarre Corp. Securities Litigation, 299 F.3d. 735, 741 (8th Cir. 2002)*. *Rule 10b-5* forbids, among other things, the making of any "untrue statement of material fact" or the omission of any material fact "necessary in order to make the statements made . . . not misleading." *Dura Pharmaceuticals, 125 S.Ct. at 1631 citing 17 C.F.R. § 240.10b-5 (2004)*.

Private securities fraud actions brought under *Section 10(b)* and *Rule 10b-5* require the pleading [*8] and showing of these elements: 1) a material misrepresentation or omission; 2) scienter (a wrongful state of mind);

Case 1:05-cv-00272-GMS   Document 46-5   Filed 04/11/2006   Page 12 of 18

Page 3
2005 U.S. Dist. LEXIS 22752, *

3) a connection with the purchase or sale of a security; 4) reliance or "transaction causation"; 5) economic loss; and 6) "loss causation" or a causal connection between the material misrepresentation and the loss. *Dura Pharmaceuticals, 125 S.Ct. at 1631*; *see Ferris, Baker Watts, at 854*; *K-tel, at 888*; *Navarre, at 741*. Since *Section 10(b)* and *Rule 10b-5* actions are grounded in fraud, the more stringent pleading standards of *Rule 9(b) Fed.R.Civ.P.* are applicable. *Carlon v. Thaman (In re NationsMart Corp. Sec. Litig.), 130 F.3d. 309, 320 (8th Cir. 1997)*; *In re: BankAmerica Corp. Securities Litigation, 78 F.Supp.2d. 976, 987 (E.D.Mo. 1999)*; *Jakobe v. Rawlings Sporting Goods Co., 943 F.Supp. 1143, 1152 (E.D.Mo. 1996)*.

Pursuant to *Rule 9(b) Fed.R.Civ.P.*, all allegations of fraud must be stated with particularity. To meet the requirements of *Rule 9(b)*, a pleading must include "such matters as the time, place, and contents [*9] of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Bennett v. Berg, 685 F.2d. 1053, 1062 (8th Cir. 1982)*; *see also, Wiley v. Mitchell, et. al. 106 Fed.Appx. 517, 521-22 (8th Cir. 2004)*(unpublished). Compliance with the particularity requirements of *Rule 9* requires plaintiffs to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *In re BankAmerica Corp. Securities Litigation, 78 F.Supp.2d. 976, 987 (E.D.Mo. 1999)*(citation omitted). "Conclusionary allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Commercial Prop. Inv., Inc. v. Quality Inn Int'l, Inc., 61 F.3d. 639, 644 (8th Cir. 1995)*.

The Private Securities Litigation Reform Act (PSLRA), *15 U.S.C. § 78u-4*, embodies the pleading requirements of *Rule 9 Fed.R.Civ.P. Ferris. Baker Watts, at 854*; *K-tel, at 889*; *see Navarre, at 742* [*10] (given that the PSLRA embodies the pleading requirements of *Rule 9*, plaintiffs do not need to meet the requirements of both, and the PSLRA supercedes; i.e. under *Rule 9* state of mind can be averred generally; however, under the PSLRA, both falsity and scienter must be pleaded with particularity). Complaints brought under *Section 10(b)* and *Rule10b-5* are governed by special heightened pleading standards adopted by Congress in the PSLRA. These heightened pleading standards are unique to securities actions and were adopted by Congress in an attempt to curb abuses of securities fraud litigation. *Kushner v. Beverly Enterprises, 317 F.3d. 820, 826 (8th Cir. 2003) citing Navarre, at 741*; *see Chambers v. AMDOCS Ltd. (In re AMDOCS Ltd. Secs. Litig.),390 F.3d 542, 547 (8th Cir. 2004) citing Navarre, at 741*.

The PSLRA requires plaintiffs "to specify each misleading statement or omission and specify why the statement or omission was misleading." *Kushner, at 826*; *Navarre, at 741-42*; *15 U.S.C. § 78u-4(b)(1)*. The complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Kushner, at 826*; *Navarre, at 741-42*; [*11] *15 U.S.C. § 78u-4(b)(2)*; *see Ferris. Baker Watts, at 854*; *K-tel, at 889*. The Act requires that the allegations collectively establish a strong inference of the required state of mind. *Kushner, at 826*. Any complaint failing to meet these pleading requirements must be dismissed. *Kushner, at 826*; *In re: BankAmerica Corp. Securities Litigation, at 988*; *15 U.S.C. § 78u-4(b)(3)(A)*. Finally, the Reform Act requires the courts to disregard "catch-all" or "blanket" assertions that do not live up to the particularity requirements. *Ferris, Baker Watts, at 853*; *AMDOCS, at 547*; *K-tel, at 889*; *Kushner, at 824*; *Florida State Bd. of Admin. v. Green Tree, 270 F.3d. 645, 660 (8th Cir. 2001)*.

The Eighth Circuit has established a three-prong formula for assessing the adequacy of scienter allegations. After reviewing the tests promulgated by the other circuits to meet the Reform Act's "strong inference of scienter" standard, the appellate court fashioned its own criteria for indicia of fraud:

> "Therefore, we can say three things about motive and opportunity allegations. First, motive and opportunity [*12] are generally relevant to a fraud case, and a showing of unusual or heightened motive will often form an important part of a complaint that meets the Reform Act standard. Second, in some cases the same circumstantial allegations that establish motive and opportunity also give additional reason to believe the defendant's misrepresentation was knowing or reckless. For instance, in insider trading cases, the timing of trades shows motive and opportunity, but it may also provide additional circumstantial evidence that the defendant knew of an advantage. Such allegations may meet the Reform Act standard, but if so it is because they give rise to a strong inference of scienter, not merely because they establish motive and opportunity. Third, when the complaint does not show motive and opportunity of any sort - either the unusual, heightened motive highlighted in the Second Circuit cases, or even an everyday motive such as keeping one's job - then other allegations tending to show

Case 1:05-cv-00272-GMS   Document 46-5   Filed 04/11/2006   Page 13 of 18

Page 4
2005 U.S. Dist. LEXIS 22752, *

> scienter would have to be particularly strong in order to meet the Reform Act standard."

*Florida State Bd. of Admin. v. Green Tree, at 660.*

Mere negligence does not violate federal securities law; however, [*13] severe recklessness may. *Ferris, Baker Watts, at 854* (citations omitted).

> "Specifically, scienter may be demonstrated by severe recklessness involving 'highly unreasonable omissions or misrepresentations' amounting to 'an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.' Recklessness, then, may be shown where unreasonable statements are made and the danger of misleading investors is so obvious that the defendant must have been aware of it."

*Kushner, at 828 citing K & S P'ship v. Cont'l Bank, N.A., 952 F.2d 971, 978 (8th Cir. 1991); see also, Ferris, Watts Baker, at 854.* "This level of recklessness requires that defendants make statements that they know, or have access to information suggesting, are materially inaccurate." *Ferris, Baker Watts, at 854 citing Navarre, at 746.*

The second amended complaint sets forth numerous public statements made by the defendants during the class period that the plaintiffs investors believe give rise to a strong inference of scienter [*14] because the defendants knew facts or had access to information that suggested that their public statements were not accurate and/or deliberately engaged in making false and misleading statements in order to defraud the investors as to the true financial condition of defendant Tripos. Examples of some of these allegedly inaccurate statements are as follows:

> 1) By late 2001 defendants were aware that Tripos had serious problems with its consulting line of business, including but not limited to, problems with multi-million dollar consulting contracts with Bristol Myers Squibb and Merck; and had missed a milestone in its consulting contract with Bayer AG resulting in the loss of a $ 1 million - $ 1.5 million payment; however, Tripos, beginning on January 9, 2002 began issuing a series of press releases claiming that 2002 would be a bigger financially successful year than 2001 with a projected growth rate (including the consulting services business) of at least 25%.

> 2) Tripos reiterated its "aggressive growth expectations" in its February 6, 2002 press release. In response to its January 2002 and February 2002 press releases, Tripos stock closed at all-time highs.

> 3) Again, [*15] in March 2002, Tripos released a press release reaffirming its highly profitable sales and revenues expectations for 2002, stating them to be in the $ 60-65 million dollar range, and fully diluted earnings per share in a range from $ .64 to $ .70.

> 3) Finally, on April 24, 2002, Tripos issued a press release announcing the results for its first quarter of 2002: a 28% increase in revenues and a 23% increase in operating income. It further reiterated its firm belief in achieving its financial projections for 2002.

> 4) These press releases were issued proclaiming huge increases in revenue and operating income despite the alleged knowledge by the defendants that accounting regularities had fraudulently inflated revenues on financial statements from 1998-2002, including but not limited to: 1999 10-K, 1999 Annual Report, the first quarter 2000 10-Q, the second quarter 2000 10-Q, the third quarter 2000 10-Q, the 2000 10-K, the 2000 Annual Report, the first quarter 2001 10-Q, the second quarter 2001 10-Q, the third quarter 2001 10-Q, and the 2001 10-K.

> 5) Although losses had been sustained in connection with the Bayer AG and Bristol Myers Squibb consulting contracts, the defendants [*16] violated the GAAP by failing to record same.

> 6) On July 1, 2002, Tripos issued a press release revising downward its 2002 financial projections due in part to the severe

Case 1:05-cv-00272-GMS    Document 46-5    Filed 04/11/2006    Page 14 of 18

Page 5
2005 U.S. Dist. LEXIS 22752, *

on-going problems in it consulting services business, including the missed milestone with the Bayer AG contract.

7) On July 24, 2002 Tripos issued another press release which continued to "mischaracterize" the reasons for its financial shortfall. It blamed the Bayer AG consulting contract event, even though problems had existed since late 2001.

8) On February 12, 2004, Tripos announced the postponement of the release of its 2003 fourth quarter and year-end financial results due to its decision to "revise" its revenue recognition practice with respect to certain software licenses. The "revision" would require Tripos to restate its financial results for several prior years.

9) On March 31, 2004, Tripos announced that it had been improperly accelerating revenue and improperly accounting for its costs of sales on its time-based software arrangements since 1998 due to the "complexity of the accounting methods"; however, the basic software recognition policy that Tripos violated was stated in the original [*17] SOP 97-2 and in Tripos' own filings with the SEC.

Defendants counter that plaintiffs have failed to set forth the "particularities" as to why the statements are false or misleading. After careful review of the amended complaint, the Court finds that the plaintiffs have provided particulars about who made subject statements, when the statements were made, and demonstrated why the statements were allegedly false or misleading at the time they were made. While the defendants have spent considerable time and effort explaining how and why the statements are proper, none of these arguments undermine the plaintiffs' allegations at the pleading stage. The facts pleaded with particularity sufficiently create a strong inference of scienter, thus meeting the Reform Act standard. *See, Green Tree Financial, at 667.*

Defendants further have contended that the statements contained in the subject press-releases are "forward-looking" in substance and intent and thus are protected by the PSLRA's "safe harbor" provision of the PSLRA. *15 U.S.C. § 78u-5(c)(1) and (2).* The safe harbor provision protects forward-looking statements if they are identified and accompanied [*18] by risk disclosures, if they are immaterial, or if plaintiffs fail to prove that the person or persons making the subject statement(s) made them with actual knowledge that the statement was false or misleading. *In re: Retek, Inc. Secs.,* 2005 U.S. Dist. LEXIS 35734, 2005 WL 1430296 (D.Minn. March 7, 2005); *In re Pemstar, Inc.,* 2003 U.S. Dist. LEXIS 14452, 2003 WL 21975563 (D.Minn. Aug. 15, 2003). The safe harbor provision "does not insulate statements that misrepresent historical/hard or current facts." In re: Pemstar, Inc. Sec. Lit., *supra.* (citations omitted).

Defendants contend that the alleged false or misleading statements are nearly all "forward-looking" in that they simply are statements of future financial projections for 2002. Plaintiffs counter (with specific examples) that the subject statements were materially false and/or misleading when made because they omit adverse information concerning the problems that the defendants were then currently experiencing; i.e., had already missed a major milestone on the Bayer AG consulting contract and widespread customer dissatisfaction with the consulting divisions Metalayer system had already been expressed. Such [*19] problems were known and not insignificant when the statements were made; therefore, it was not that the statements were necessarily false but that defendants were in possession of material facts which they had a duty to disclose so as not to make such statements misleading. Furthermore, the Court concurs that any "cautionary language" was too generalized and "boilerplate" to make such language meaningful to the ordinary investor. The Court concludes that the safe harbor provision of the PSLRA is inapplicable.

Defendants further contend that the plaintiffs' allegations of GAAP violations are not sufficient to plead the requisite scienter for the *Section 10(b)* and *Rule 10b-5.* The plaintiffs have alleged that the defendants were aware of the GAAP violations when made and were intentionally made to meet analysts' profitable expectations for the company. They assert that the restatements clearly show that the defendants failed to follow GAAP while accounting for Tripos' revenues derived from its "bundled software services" during the Class Period. It further contends that the accounting principles ignored are not "complex" as argued by the defendants, but rather are clear and specific [*20] as regards the recognition of revenue from the sale of software products and licences. Furthermore, plaintiffs argue that scienter is shown by the GAAP violations coupled with the restatements because the defendants blamed the need for restating Tripos' financial statements on "clarifying guidance" instead of the fact that they misapplied GAAP "that existed at the time the financial statements were prepared". Plaintiffs' assert that

> "In sum, the GAAP principles violated here were not complex or changing, but

were long-standing and basic accounting principles. The Tripos defendants were charged with the responsibility of providing accurate statements of the Company's revenue and the individual defendants were sufficiently savvy to understand these principles and certainly had access to and information from others in the Company who did understand these principles well."

Plaintiffs' Joint Memorandum of Law (# 64), pg. 44. Finally, plaintiffs contend that they have pled with sufficient particularity the GAAP violations at issue. They are:

1) Deferred the recording of estimated losses in excess of $ 829,000 on various contracts, including, primarily, the software [*21] consulting agreements with Bayer AG and Bristol Meyers Squibb (BMS), when GAAP required the immediate booking of the entire loss. Complaint P89. In addition, the Company failed to take a charge for the losses related to these two contracts in its interim financial statements. Complaint PP92, 96, 98.

2) Materially inflated revenues by $ 15.8 million for fiscal years 1998-2002, as well as net income and earnings per share by improperly accelerating revenues on time-based software arrangements by immediately recognizing the software portion of the arrangement rather than recognizing it ratably over the entire contract period as required by GAAP. Complaint PP86, 100-107.

3) Failed to identify and describe important judgments associated with its revenue recognition policy related to software licenses, in violation of specific GAAP provisions. Complaint PP86, 108-109.

4) Failed to disclose serious problems with its software consulting business and the dissatisfaction of some of its major customers, including that it had missed a major milestone with a significant customer and that customer's refusal to pay, in violation of GAAP provisions. Complaint PP4, 5, 50, 53, 57-65, 86-90, 98, [*22] 108-09.

5) Defendants improperly accounted for cost of sales, specifically royalty expense that was directly attributable to time-based software license arrangements in violation of GAAP. Complaint PP110-13.

6) Failed to design and implement an internal control system over the Company's contract estimation process sufficient to monitor contract compliance in order to recognize cost overruns on a timely basis. The fact that Tripos had to record two separate charges to income for contract losses incurred during the Class Period indicates an inadequate accounting and internal control system. Complaint PP119-20.

Plaintiffs' Memorandum in Opposition (# 64), pgs. 47-48.

Essentially, the plaintiffs argue that the accounting principles and standards that existed at the time of the original positive financial statements were clear and precise. They allege that the pervasiveness and indifference to the GAAP requirements resulting in such egregious violations, coupled with the fact that the restatements admit to these violations, evidences that Tripos intentionally misstated its revenues for its software licensing contracts throughout the Class Period. Defendants spend considerable [*23] time, not addressing the pleading standards but rather defending themselves against the allegations.

"Allegations of GAAP violations are insufficient, standing alone, to raise an inference of scienter. Only where these allegations are coupled with evidence of corresponding fraudulent intent might they be sufficient." *Ferris, Baker Watts, Inc. v. Ernst & Young, L.L.P.*, 395 F.3d 851, 854 (8th Cir. 2005), aff'g 293 F.Supp.2d 1003 (D.Minn. 2003) quoting *In re Navarre*, at 745 (citations omitted); see also, *Kushner*, at 827, 831; *K-tel*, at 886, 894-95. This rule was established because the GAAP "are far from being a canonical set of rules that will ensure identical accounting treatment of identical transactions. [GAAP], rather, tolerate a range of 'reasonable' treatments, leaving the choice among alternatives to management." *K-tel*, at 890 quoting *Thor Power Tool Co. v. C.I.R.*, 439 U.S. 522, 544, 58 L. Ed. 2d 785, 99 S. Ct. 773 (1979); *In re Stellent, Inc. Securities Litigation*, 326 F.Supp.2d 970, 982 (D.Minn. 2004); *Ferris, Baker Watts*, 293 F.Supp.2d at 1008.

Case 1:05-cv-00272-GMS    Document 46-5    Filed 04/11/2006    Page 16 of 18

Page 7
2005 U.S. Dist. LEXIS 22752, *

Here, the plaintiffs have alleged not only [*24] egregious GAAP violations, but also "evidence of corresponding fraudulent intent". They have set out with particularity the material misstatements in the public statements which omitted, among other things, the on-going problems with the software consulting business, and have set forth the GAAP violations which defendants do not deny as evidenced by their restatements. Essentially, the amended complaint alleges that defendants knew that certain company assets were impaired and that losses were certain, but that recognizing those losses (during the Class Period) would have lowered the company's stock price and threatened its ability to market and sell its products. The amended complaint further alleges that defendants delayed recognition of these losses in violation of GAAP, and delayed disclosure of these violations while publicly touting strong future profits and continued excellent business prospects with current customers. It is alleged that the "strategic non-disclosures" kept Tripos stock artificially high, attracting more investors, until the restatements were issued, causing a drastic stock price fall. The plaintiffs have identified specific documents and statements within those [*25] documents attributable to the defendants that allegedly artificially inflated Tripos' earnings and net tangible assets by deliberately hiding specific losses that were also identified.

The allegations as a whole, taken as true, provide strong indicia of intentional wrongdoing on the part of the defendants. Evidence relevant to scienter includes:

> "insider trading in conjunction with false or misleading statements; **a divergence between internal reports and public statements; disclosure of inconsistent information shortly after the making of a fraudulent statement or omission;** bribery by top company officials; evidence of an ancillary lawsuit, charging fraud, which was quickly settled; **disregard of current financial information acquired prior to the statement at issue; accounting shenanigans;** and evidence of actions taken solely out of self-interest." (emphasis added)

*In re Acceptance Insurance Cos. Securities Litigation, 352 F.Supp.2d. 940, 958 quoting In re Navarre Corp., at 747* (internal citation omitted). Plaintiffs have coupled there GAAP allegations with the "corresponding fraudulent intent" required under the Reform Act.

Defendants [*26] assert that the plaintiffs have failed to adequately plead loss causation because the 2004 restatements were not announced until after the end of the Class Period, and moreover, little if any significant decline in the stock price occurred following these restatements. Thus, plaintiffs have failed to allege, and cannot allege, that their losses were causally related to the accounting allegations. Plaintiffs counter that the fact that the defendants waited until 2004 to announce its restatements due to GAAP violations should not insulate them from liability for issuing false statements during the Class Period. Plaintiffs contend that as of July 1, 2002 plaintiffs learned for the first time that the Company had missed a major milestone and that continued projected high earnings and revenue of past financial reports and statements had no basis in fact. This is when and why the stock price immediately dropped 61%. Plaintiffs further contend that "The February 12, 2004 restatement merely confirmed what the market had already incorporated when the stock price dropped 61% -- that the Company's financial statements were false and could not be relied upon." Lead Plaintiffs' Joint Response (# [*27] 82), pg.5. Plaintiffs further contend that their complaint is unlike the complaint considered by the Court in the recent case of Dura Pharmaceuticals, *supra.* because in the instant case the plaintiffs have not just generally pled that they had paid artificially inflated stock prices and suffered damages but, instead, have specifically set forth allegations of a causal connection between the stock price drop and the fraud committed; i.e., Tripos could not achieve its earnings targets because those targets were based on false financial statements.

A private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss. *Dura Pharmaceuticals, 125 S.Ct. at 1629; 15 U.S.C. § 78u-4(b)(4)*. In Dura Pharmaceuticals, *supra.,* the United States Supreme Court considered what a plaintiff must allege and ultimately prove when establishing the element of "loss causation". Firstly, the Court considered the fact that "normally, in cases such as this one (i.e. fraud-on-the-market cases), an inflated purchase price will not itself constitute or proximately cause the relevant economic [*28] loss. The Court reasoned:

> "For one thing, as a matter of pure logic, at the moment the transaction takes place, the plaintiff has suffered no loss; the inflated purchase payment is offset by ownership of a share that *at that instant* possesses equivalent value. Moreover, the logical link between the inflated share purchase price and any later economic loss is not invariably strong. Shares are normally purchased with an eye toward a later sale. But if, say, the purchaser sells

Case 1:05-cv-00272-GMS    Document 46-5    Filed 04/11/2006    Page 17 of 18

Page 8
2005 U.S. Dist. LEXIS 22752, *

the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss. If, the purchaser sells later after the truth makes its way into the market place, an initially inflated purchase price *might* mean a later loss. But that is far from inevitably so. When the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price. (The same is true in respect to a claim that [*29] a share's higher price is lower that it would otherwise have been - - a claim we do not consider here.) Other things being equal, the longer the time between purchase and sale, the more likely that this is so; i.e., the more likely that other factors caused the loss."

*Id., 125 S.Ct. at 1631-32*. The Court went on to recognize that a higher purchase price "will *sometimes* play a role in bringing about a future loss"; and thus, an inflated purchase price suggests that "the misrepresentation "touches upon" a later economic loss. *Id., 125 S.Ct. at 1632*. However, the law requires that such a misrepresentation **cause** a loss, not just merely **"touch upon"** a loss. *Id., 125 S.Ct. at 1632*.

The Supreme Court continued to reason that the PSLRA requires specificity in securities fraud complaints because securities statutes "seek to maintain public confidence in the marketplace" and do by providing for private securities fraud actions; however, "the statutes make these latter actions available, not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentation [*30] actually cause." *Id., 125 S.Ct. at 1633*.

Given what a private securities fraud action must prove as to "loss causation", the Supreme Court held that simply alleging the existence of an "artificially inflated purchase price" is not itself a relevant economic loss. That alleging nothing more than the plaintiffs paying "artificially inflated prices" for certain securities, and that as a result plaintiffs suffered "damages" is not sufficient to adequately plead loss causation. *Id., 125 S.Ct. at 1634*. A complaint that alleges only this fails to provide a defendant with notice, as required of *Rule 8 Fed.R.Civ.P.*, of what the relevant economic loss might be or of what the causal connection might be between the loss and the alleged misrepresentation. *Id., 125 S.Ct. at 1634*. Such lack of notice and causal connection is exactly the kind of harm the securities statutes were designed to eliminate. *Id., 125 S.Ct. at 1634*.

Upon review of the plaintiffs' second consolidated amended complaint and given the Supreme Court's recognition that "ordinary pleading rules are not meant to impose a great [*31] burden upon a plaintiff", the Court finds that the plaintiffs have sufficiently alleged a causal connection between the purported fraud and the inflated stock price. *Dura Pharmaceuticals, 125 S.Ct. at 1634* (citation omitted).

Plaintiffs also assert claims against the individual defendants McAlister (Tripos' Chief Executive Officer, President, and a director) and Rubin (Tripos' Chief Financial Officer and Senior Vice-President as of October 2001) under *20(a) of the Exchange Act*. *Section 20(a)* of the Exchange Act imposes liability on "every person who, directly or indirectly, controls any person liable" under the Exchange Act; and such liability should be imposed "unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." A "control person" relationship exists whenever "(i) the alleged control person actually exercised control over the general operations of the primary violator and (ii) the alleged control person possessed-- but did not necessarily exercise-- the power to determine the specific acts or omissions upon which the underlying violation is predicated." *Farley v. Henson, 11 F.3d. 827, 835 (8th Cir. 1993)*; [*32] *see, Metge v. Baehler, 762 F.2d. 621, 624 (8th Cir. 1985)*; *Stephenson v. Deutsche Bank AG, 282 F.Supp.2d. 1032, 1059 (D.Minn. 2003)*; *Piper Jaffray Cos., 38 F. Supp. 2d 771, 782 (D. Minn. 1999)*. The control-person statute is "remedial and is to be construed liberally. It has been interpreted as requiring only some indirect means of discipline or influence short of actual direction to hold a 'controlling person' liable." *Farley, at 836 quoting Myzel v. Fields, 386 F.2d. 718, 738 (8th Cir. 1967)*; *Stephenson, at 1059* (*quoting* both Farley and Myzel, *supra.*); *see also, Martin v. Shearson Lehman Hutton, 986 F.2d. 242, 244 (8th Cir. 1993)*(statute reaches persons who have only some indirect means of discipline or influence less than actual direction). *Section 20(a)* can impose liability upon "corporate officers and directors, even in those cases in which they did not directly participate in the bad acts." *In re Acceptance Insurance Companies Sec. Litig., 352 F.Supp.2d. 940, 957 (D.Neb. 2004), aff'd* [*33] *423 F.3d 899, 2005 U.S. App. LEXIS 18571, 2005 WL 2060912 (8th Cir. 2005) citing Metge v. Baehler, at 631*. Finally, *Section 20(a)* is not subject to the heightened pleading standards of either the Reform Act or *Rule 9(b) Fed.R.Civ.P. Stephenson, at*

*1060* citing *In re Initial Pub. Offering Sec.Litig., 241 F.Supp.2d. 281, 397 n.185 (S.D.N.Y. 2003)*. Given the above-referenced legal principles, and in light of the Court's determination that the plaintiffs have sufficiently pled claims against these defendants for violations of *Section 10(b)* and *Rule 10b-5*, the Court will not dismiss the plaintiffs' claims against the individual defendants based on liability under *Section 20(a)*.

The parties have spent considerable time and effort arguing the "merits" of the second amended consolidated complaint; however, the bottom line is that the plaintiffs have pleaded that during the Class Period, the defendants had in their possession (or could have easily obtained) facts which rendered their financial results materially false when first stated to the investing public, and given these facts, intentionally delayed recognition of these "facts" in violation [*34] of GAAP, then intentionally delayed recognition of the GAAP violations in order to induce plaintiffs to continue investing in a "profitable" enterprise. Without a doubt the "merits" of the allegations as presented can be argued fervently; however such a debate involves questions of fact "that cannot render the complaint[s] inadequate, lest the heightened pleading requirements of the Reform Act replace the function of a trial." *Green Tree, at 666*. The plaintiffs have satisfied the Reform Act standard and the defendants' motion to dismiss will be denied.

Dated this 30th day of September, 2005.

Stephen N. Limbaugh

SENIOR UNITED STATES DISTRICT JUDGE

**ORDER**

In accordance with the memorandum filed herein this date,

**IT IS HEREBY ORDERED** that defendants Tripos, McAlister, and Rubin's motion to dismiss (# 56) be and is **DENIED.**

Dated this 30th day of September, 2005.

Stephen N. Limbaugh

SENIOR UNITED STATES DISTRICT JUDGE