# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE MBNA CORP.<br>SECURITIES LITIGATION | Case No. 05-00272-GMS<br>CONSOLIDATED |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF
## THEIR MOTION TO DISMISS

Richard H. Morse (No. 531)
rmorse@ycst.com
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

*Attorneys for Defendants*

Of Counsel:

Richard J. Urowsky
Richard C. Pepperman, II
Ryan C. Williams
Christopher F. Nelson
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

May 26, 2006

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT...................................................................................................................2

I.      Plaintiffs Do Not Seriously Dispute That Two Alleged Misstatements
        Are Protected by the PSLRA Safe Harbors and the Bespeaks Caution
        Doctrine.............................................................................................................2

II.     The Amended Complaint Does Not Contain Sufficiently Particularized
        Allegations to Give Rise to a Strong Inference of Scienter.....................................5

III.    Plaintiffs Have Not Stated a Fraud Claim Based on MBNA's
        Valuation of Its Interest-Only Strip Receivable at the End of the
        Fourth Quarter of 2004. ......................................................................................13

IV.     All Claims Against Defendants John Cochran, Richard Struthers and
        Charles Krulak Should Be Dismissed....................................................................16

V.      Plaintiffs' Section 20(a) Claim Should Be Dismissed...........................................19

CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Page(s)*

*Adkins* v. *Rumsfeld.* 389 F. Supp. 2d 579 (D. Del. 2005) ..................................................18

*Denny* v. *Barber*, 576 F.2d 465 (2d Cir. 1978)...................................................................16

*GSC Partners CDO Fund* v. *Washington*, 368 F.3d 228 (3d Cir. 2004) ........................3, 4

*Harris* v. *Ivax Corp.*, 182 F.3d 799 (11th Cir. 1999).........................................................3

*In re Advanta Corp. Sec. Litig.,* 180 F.3d 525 (3d Cir. 1999) ..........................................10

*In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137 (3d Cir. 2004)....................................6, 7, 8

*In re Astropower Inc. Sec. Litig.*, No. Civ.A. 03-260,
    2006 WL 288120 (D. Del. Feb. 7, 2006) ....................................................................4

*In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549 (S.D.N.Y. 2004) ...............12

*In re Cigna Corp. Sec. Litig.*, No. Civ.A. 02-8088,
    2005 WL 3536212 (E.D. Pa. Dec. 23, 2005)...........................................................4, 5

*In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546 (D. Del. 2002)...............1, 18, 19, 20

*In re eSpeed, Inc. Sec. Litig.*, No. 05 Civ. 2091, 2006 WL 880045,
    (S.D.N.Y. Apr. 3, 2006)............................................................................................10

*In re Hypercom Corp. Sec. Litig.*, No. CV-05-0455,
    2006 WL 726791 (D. Ariz. Jan. 25, 2006) ................................................................8

*In re Interpublic Sec. Litig.*, No. 02 Civ. 6527,
    2003 WL 21250682 (S.D.N.Y. May 29, 2003) ........................................................11

*In re IT Group Inc.*, No. 04-1268,
    2005 WL 3050611 (D. Del. Nov. 15, 2005) .......................................................13, 14

*In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358 (E.D.N.Y. 2003)...................11, 12

*In re Merck & Co., Inc. Sec. Derivative & "ERISA" Litig.*,
    No. 05-1151, 2006 U.S. Dist. LEXIS 2345 (D.N.J. Jan 20, 2006).......................9, 10

*In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152
    (N.D. Ill. 2004)....................................................................................................14, 15

*In re PEC Solutions, Inc. Sec. Litig.*, No. 03-CV-331,
   2004 WL 1854202 (E.D. Va. May 25, 2004) ..............................................................11

*In re Rent-Way Sec. Litig.*, 209 F. Supp. 2d 493 (W.D. Pa. 2002) ...................................17

*In re SmarTalk Teleservices, Inc. Sec. Litig.*,
   124 F. Supp. 2d 527 (S.D. Ohio 2000) .....................................................................19

*In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006) ............... *passim*

*In re Trump Casino Sec. Litig*, 7 F.3d 357 (3d Cir. 1993)..................................................4

*In re Viropharma, Inc. Sec. Litig.*, No. Civ.A. 02-1627,
   2003 WL 1824914 (E.D. Pa. Apr. 7, 2003) ............................................................4, 5

*In re Westinghouse Sec. Litig.,* 90 F.3d 696 (3d Cir. 1996)..............................................19

*Kreindler* v. *Chem. Waste Mgmt., Inc.*, 877 F. Supp. 1140 (N.D. Ill. 1995)...............1, 15

*MBIA Ins. Corp.* v. *Royal Indem. Co.*, 221 F.R.D. 419 (D. Del. 2004)............................8

*Montalvo* v. *Tripos, Inc.*, No. 03-995,
   2005 U.S. Dist. LEXIS 22752 (E.D. Mo. Sept. 30, 2005)...........................................4

*N.A.M.I.* v. *Essex County Bd. of Freeholders*, 91 F. Supp. 2d 781
   (D.N.J. 2000) ............................................................................................................13

*Oran* v. *Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) ....................................................9, 10

*Stavros* v. *Exelon Corp.*, 266 F. Supp. 2d 833 (N.D. Ill. 2003).....................................7, 8

## STATUTES, RULES AND LEGISLATIVE HISTORY

Fed. R. Civ. P. 9(b) .......................................................................................................15

15 U.S.C. § 78u-4(b)(2) ...................................................................................................8

15 U.S.C. § 78u-5(c)(1)(A)...............................................................................................3

15 U.S.C. § 78u-5(i)(1)(A) ...............................................................................................4

H.R. Conf. Rep. 104-369 .................................................................................................3

## PRELIMINARY STATEMENT

Plaintiffs' response to defendants' motion makes clear—even clearer than did their consolidated amended complaint—that this case has been cobbled together from a series of unrelated, unremarkable facts. It is, in short, a classic example of pleading fraud-by-hindsight. Rather than confront the merits of many of defendants' arguments, plaintiffs contend that, for one reason or another, they are "off limits" to the Court on this motion to dismiss. In every case, plaintiffs are incorrect.

It is not true, for example, that the Court is limited to a hand-picked, two-year trading history when considering whether defendants' transactions in MBNA stock during the Class Period were sufficiently unusual in scope or timing to give rise to a strong inference of scienter. Neither is it correct that the Court cannot consider a transcript of the April 21, 2005 analyst call in deciding whether plaintiffs have stated a claim against defendants John Cochran, Richard Struthers and Charles Krulak for alleged misstatements or omissions supposedly made during the call. In deciding this motion, the Court is not required to ignore publicly available SEC filings that disclose the individual defendants' trading histories or the transcript of a conference call that is one of the centerpieces of plaintiffs' complaint.

Elsewhere, plaintiffs either concede or offer no real opposition to defendants' arguments. On several occasions, they ignore important cases cited by defendants, such as *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546 (D. Del. 2002), and *Kreindler* v. *Chem. Waste Mgmt., Inc.*, 877 F. Supp. 1140 (N.D. Ill. 1995), both of which are directly on point. Plaintiffs also do not dispute that MBNA's statements about its expected restructuring charge in the first quarter of 2005 are protected by the PSLRA safe harbors

and the bespeaks caution doctrine. They therefore cannot predicate a fraud claim on those statements. Although plaintiffs contend that MBNA's statements about its expected earnings growth in fiscal year ("FY") 2005 are not similarly protected, they do not dispute that those forward-looking statements were accompanied by meaningful cautionary language, which brings them within the first PSLRA safe harbor.

Plaintiffs thus are left with one claim: that defendants made misleading statements about the true value of MBNA's interest-only strip receivable at the end of FY 2004. That claim also fails as a matter of law. First, plaintiffs have not adequately alleged that defendants' sales of MBNA stock during the Class Period were sufficiently unusual in scope or timing to give rise to a strong inference of scienter. In fact, defendants demonstrated otherwise in their opening brief. (Defs.' Opening Br. at 15-23.) Second, in an effort to establish scienter by recklessness, plaintiffs continue to rely on the defunct "group pleading" doctrine, which this Court has rejected. And third, plaintiffs fail to acknowledge that MBNA wrote down its interest-only strip receivable by more than $95 million at the end of FY 2004. At bottom, they simply contend that MBNA, with the benefit of hindsight, should have written down the value of the strip more. Courts have consistently rejected such claims.

## ARGUMENT

I.    **Plaintiffs Do Not Seriously Dispute That Two Alleged Misstatements Are Protected by the PSLRA Safe Harbors and the Bespeaks Caution Doctrine.**

A.    Plaintiffs allege that "defendants deceived the market by reporting . . . that the true size of a restructuring charge was unexpected." (Am. Compl. ¶ 2.) In their motion to dismiss, defendants argued that any statements associated with the projected

restructuring charge were forward-looking in nature and therefore protected by the PSLRA safe harbors and the bespeaks caution doctrine. (Defs.' Opening Br. at 29-31.) Plaintiffs do not argue otherwise in their opposition brief. This Court thus should hold that those statements cannot be a basis for plaintiffs' claim under Section 10(b).

        B.      Similarly, plaintiffs do not seriously dispute that MBNA's statements about its expected earnings growth in FY 2005 are forward-looking under the PSLRA. Rather, they argue that defendants did not believe the statements, or were aware of facts that would have "seriously undermine[d]" them, at the time the statements were made. (Pls.' Br. at 36-37 & n.27.) Those arguments are insufficient to salvage plaintiffs' claim.

        Under the first PSLRA safe harbor, allegations of actual knowledge of the falsity of a forward-looking statement are irrelevant when the statement is accompanied by meaningful cautionary language. 15 U.S.C. § 78u-5(c)(1)(A); *see also Harris* v. *Ivax Corp.*, 182 F.3d 799, 803 (11th Cir. 1999) ("If a statement is accompanied by 'meaningful cautionary language,' the defendants' state of mind is irrelevant."); *see also* H.R. Conf. Rep. 104-369, at 44 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 743 ("The first prong of the safe harbor requires courts to examine only the cautionary statement accompanying the forward-looking statement. Courts should not examine the state of mind of the person making the statement."). MBNA's statements about its FY 2005 expected earnings were accompanied by meaningful cautionary language. (Defs.' Opening Br. at 31-32.) Plaintiffs do not contend otherwise in their answering brief. Accordingly, the first PSLRA safe harbor applies, making irrelevant defendants' alleged state of mind. *See GSC Partners CDO Fund* v. *Washington*, 368 F.3d 228, 242-43 (3d

- 3 -

Cir. 2004) (forward-looking statements accompanied by meaningful cautionary language are protected by PSLRA's first safe harbor).[1]

The cases cited by plaintiffs (Pls.' Br. at 36-37 & n.25) do not change this result. In *Montalvo* v. *Tripos, Inc.*, No. 03-995, 2005 U.S. Dist. LEXIS 22752, at *18-19 (E.D. Mo. Sept. 30, 2005), the court refused to apply the first PSLRA safe harbor because the allegedly misleading statement was not accompanied by meaningful cautionary language. Here, plaintiffs do not dispute that MBNA's statements about expected earnings were accompanied by meaningful cautionary language. In *In re Viropharma, Inc. Sec. Litig.*, No. Civ.A. 02-1627, 2003 WL 1824914, at *7 (E.D. Pa. Apr. 7, 2003), the court held that alleged misstatements were not protected by either PSLRA safe harbor because the statements were not forward-looking. Rather, the statements "convey[ed] to the market the current status of clinical trials and the NDA for Pleconaril," a drug under development by defendant. *Id.* Because "[t]he truth or falsity of . . . [the] statements was determinable at the time they were made," the court held that the PSLRA safe harbors did not apply. *Id.* The statement at issue in this case, a *projection* of MBNA's FY 2005 estimated earnings per share, is plainly forward-looking. 15 U.S.C. § 78u-5(i)(1)(A); *In re Cigna Corp. Sec. Litig.*, No. 02-8088, 2005 WL 3536212, at *3 (E.D. Pa. Dec. 23, 2005) ("A statement is forward-looking if it is a statement containing a projection of . . .

---

[1] The same is true under the bespeaks caution doctrine. A defendant's state of mind is irrelevant if an alleged misstatement is accompanied by meaningful cautionary language, which negates the materiality of the statement as a matter of law. *In re Trump Casino Sec. Litig.*, 7 F.3d 357, 364 (3d Cir. 1993) ("[C]autionary language, if sufficient, renders the alleged omissions or misrepresentations immaterial as a matter of law."). If immaterial, a statement cannot form the basis of a Section 10(b) claim, regardless of a defendant's state of mind. *In re Astropower Inc. Sec. Litig.*, No. Civ.A. 03-260, 2006 WL 288120, at *2 (D. Del. Feb. 7, 2006).

earnings . . . per share."). Indeed, the *Viropharma* court explicitly acknowledged that "[f]orward looking statements include . . . 'a statement concerning a projection of revenues' or other financial items." 2003 WL 1824914, at *7.

## II.    The Amended Complaint Does Not Contain Sufficiently Particularized Allegations to Give Rise to a Strong Inference of Scienter.

To state a Section 10(b) claim, plaintiffs must plead facts sufficient to give rise to a strong inference of fraudulent intent by alleging either (i) conscious misbehavior or recklessness or (ii) motive and opportunity to commit fraud. *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006). Plaintiffs have not done so here.

A.    The complaint does not contain sufficiently particularized allegations of conscious misbehavior or recklessness to give rise to a strong inference of scienter. (Defs.' Opening Br. at 23-28.) Plaintiffs argue that the Third Circuit's *Suprema* decision holds that "defendants' positions on the company's audit committee would be sufficient to show *scienter* under § 10(b)." (Pls.' Br. at 20-21.) The Third Circuit did not so hold; in fact, *Suprema* actually supports dismissal of this case.

In *Suprema*, plaintiffs brought Section 10(b) claims against the company's outside directors on the grounds that (i) revenue was wrongfully recognized; (ii) the outside directors had access to Suprema's business records; and (iii) the outside directors "were charged, as members of the audit committee, with reviewing and monitoring the company's financial reporting, external audits, internal control functions, and compliance with applicable rules and regulations." 438 F.3d at 281. In upholding the dismissal of these claims, the Third Circuit stated:

> Recklessness is pled against the Outside Directors as a group, based on
> their position, without any attempt to link specific individuals to specific

- 5 -

> instances of reckless conduct. We have held that such "catch-all" or
> "blanket" assertions do not satisfy the particularity requirements of
> Rule 9(b) and the PSLRA, and must be disregarded.

*Id.* at 281-82.

Plaintiffs in this case rely almost exclusively on similar "catch-all" or "blanket" assertions. For example, they assert:

- "Because of their board membership and/or executive and managerial position with MBNA, the defendants had access to the adverse non-public information about MBNA's business prospects and financial condition." (Am. Compl. ¶ 91.)

- "[E]ach defendant held a position with MBNA wherein they would have been included on the 'huge distribution list' that received a copy of 'the Package' . . . [and] [b]y virtue of their receipt of this information . . . all defendants directly participated in and knew of the fraudulent scheme alleged herein." (*Id.* ¶ 92.)

These are exactly the sort of assertions that the Third Circuit rejected in *Suprema* as insufficient to allege recklessness under Section 10(b).

Plaintiffs suggest that the Third Circuit would have upheld the claims against the outside directors if plaintiffs there had alleged that the directors had access to and the ability to review the company's financial records. (Pls.' Br. at 21.) Again, plaintiffs' interpretation of *Suprema* is incorrect. The Third Circuit has held that access to information is not enough to plead scienter with respect to individual defendants. *In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 151 (3d Cir. 2004). Nothing in *Suprema* suggests that the Third Circuit intended to overrule that decision by adopting a contrary rule.

In addition, plaintiffs argue that "the law presumes" scienter whenever misrepresentation claims are brought against defendants who hold the "positions of Chief

- 6 -

Executive Officer, Chief Financial Officer, Chief Operating Officer, Chief Accounting

Officer and Chief Lending Officer." (Pls.' Br. at 21.) That is not correct. In fact, the

Third Circuit made clear in *Suprema* that a defendant's position cannot lead to a

presumption of scienter: "A pleading of scienter sufficient to satisfy Rule 9(b) 'may not

rest on a bare inference that a defendant "must have had" knowledge of the facts' or

'must have known' of the fraud given his or her position in the company." 438 F.3d at

282; *accord In re Alpharma Inc. Sec. Litig.*, 372 F.3d at 149 ("[g]eneralized imputations

of knowledge" do not satisfy the scienter requirement "regardless of the defendants'

positions within the company").

The alleged "red flags" to which plaintiffs point do not overcome these pleading

defects. (*See* Pls.' Br. at 25-28.) As defendants explained, allegations of GAAP

violations are not enough to plead conscious misbehavior or recklessness. (Defs.'

Opening Br. at 24-25 (collecting cases).) This is not changed by plaintiffs' vague

references to "unlawful accounting manipulations" at MBNA. (*E.g.*, Pls.' Br. at 9.)[2] The

same can be said of the allegedly negative market conditions that plaintiffs recite in their

brief. (*Id.* at 27.) Statements about market conditions are no substitute for particularized

scienter allegations—if they were, no Section 10(b) claim could be dismissed as long as

plaintiffs identified market weaknesses in the relevant industry. *See, e.g., Stavros* v.

---

[2] Plaintiffs continue to focus on—and mischaracterize—an accounting adjustment made by MBNA in December 2004. (Pls.' Br. at 9, 27.) They say that an accounting "error" forced MBNA's Assets & Liability Management Committee to "start over" and "change all the financial statements" during the fourth quarter of 2004. (*Id.* at 9.) Aside from the conclusory allegation that this change was made "to better meet" market expectations, plaintiffs do not allege that the error (i) had anything to do with the interest-only strip receivable or (ii) was anything other than that, an error that was corrected. These references are simply a red herring, as are plaintiffs' statements about "journal entries" and a generalized "fear of layoffs." (*See* Pls. Br. at 27 n.18.)

- 7 -

*Exelon Corp.*, 266 F. Supp. 2d 833, 849 (N.D. Ill. 2003) (scienter not pled with requisite particularity where plaintiffs made allegations of "adverse market conditions, economic weakness and declining energy prices to make their case for actual knowledge.").

In sum, plaintiffs bore the burden of alleging facts sufficient to demonstrate scienter as to *each* defendant. 15 U.S.C. § 78u-4(b)(2); *see also MBIA Ins. Corp.* v. *Royal Indem. Co.*, 221 F.R.D. 419, 421 (D. Del. 2004) ("[W]hen alleging fraudulent behavior against a group of defendants, a plaintiff is required to separately plead the fraudulent acts of each defendant to satisfy Rule 9(b)"). They have not done so, and instead rely on generalized allegations and conjecture to plead recklessness. (*See* Pls.' Br. at 21-23.) This kind of pleading is insufficient to carry a securities fraud complaint past a motion to dismiss. *See, e.g., In re Hypercom Corp. Sec. Litig.*, No. CV-05-0455, 2006 WL 726791, at *9 (D. Ariz. Jan. 25, 2006) ("Plaintiffs argue that a defendant's knowledge of a fraud is presumed where it concerns a company's core business . . . . [But] courts have declined to 'presume' scienter in the manner suggested by Plaintiffs.").

B.     The complaint also does not contain sufficiently particularized allegations of motive to give rise to a strong inference of scienter.

1.     Plaintiffs contend that MBNA had motive to commit fraud in order to "maintain superior credit ratings, report fourth quarter EPS (earnings per share) 'a penny ahead of consensus,' [and] secure investors in the open market at an inflated price." (Pls.' Br. at 3, 29.) These "motive" allegations are insufficient to plead that MBNA acted with scienter for two reasons. First, such allegations could be made against virtually any for-profit entity. *In re Alpharma Inc. Sec. Litig.*, 372 F.3d at 152 (rejecting "motive allegations" that "could be made against virtually any for-profit entity"). Second, they

- 8 -

are unaccompanied by facts pled with the requisite particularity. Plaintiffs instead offer only generalized allegations. (Am. Compl. ¶¶ 39-43, 48.) Accordingly, all claims against MBNA should be dismissed for failure to plead scienter.

2.      Plaintiffs' allegations of "massive stock" sales by the individual defendants also are insufficient to plead motive. In their opening brief, defendants established that the individual defendants' transactions in MBNA stock during the Class Period were not unusual in scope or timing. (Defs.' Opening Br. at 15-23.) Defendants supported this argument with an Appendix of data taken from publicly available, authenticated SEC Form 4 filings, on which this Court can rely. *Oran* v. *Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (taking judicial notice of properly authenticated Form 4s filed with SEC).

Rather than address this argument on the merits, plaintiffs contend that defendants have "improperly argue[d] facts not alleged in the Complaint" (Pls. Br. at 3) and that "[a] court may take judicial notice of SEC filings only to the extent that a plaintiff's claims are based on the document" (*id*. at 14 n.6). They further allege that even where they can be considered, SEC filings "may not be admitted for their truth on a motion to dismiss." (*Id*. (citing *In re Merck & Co., Inc. Sec. Derivative & "ERISA" Litig.*, No. 05-1151, 2006 U.S. Dist. LEXIS 2345, at *19 (D.N.J. Jan 20, 2006).) Finally, they claim that it would be "inconsistent with nearly all securities fraud litigation since the passage of the PSLRA" were this Court "to consider a trading history beyond the scope of the ample . . . history provided by [p]laintiffs." (*Id*. at 32.) None of these arguments has merit.

As an initial matter, plaintiffs' reliance on *In re Merck & Co.* is misplaced. In considering defendants' motion to dismiss in that case, the court took judicial notice of (i) newspaper articles, (ii) "science and medical" submissions, and (iii) analyst reports.

- 9 -

*Id.* at \*19.  None of these materials was cited by, or integral to, plaintiffs' complaint.  *Id.*
at \*16.  In contrast, the SEC filings at issue here are integral to plaintiffs' complaint
because plaintiffs assert that defendants' transactions in MBNA stock during the Class
Period were unusual in scope and timing.  (Am. Compl. ¶¶ 100-02.)  Moreover, the
material at issue in *In re Merck & Co.* was relevant only insofar as it showed "inquiry
notice for the purpose of [defendants'] statute of limitations defense."  *Id.* at \*19.  Given
this limited relevance, the court declined to consider the submissions for their truth.  *Id.*
Contrary to plaintiffs' contention, neither the *In re Merck & Co.* court, nor any other
court of which defendants are aware, has categorically held that SEC filings cannot be
relied upon for their truth.

The law is instead clear that courts can rely upon SEC Form 4s when considering
motive allegations based on sales of stock.  *Oran*, 226 F.3d at 289 (relying on Form 4s
where plaintiffs attempted to show motive by alleging that "seven . . . executives sold
over \$40 million of . . . stock at a profit of \$24.98 million" during class period); *accord In
re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 540 (3d Cir. 1999) (relying on Form 4s
attached to defendants' motion to dismiss).  As one court explained:

> The incomplete information in the Complaint renders particularly curious
> plaintiffs' assertion that defendants' use of SEC filings to calculate the
> magnitude of the insider selling amounts to "inappropriate factual argu-
> ment."  Not only am I free to consider such documents on a motion to
> dismiss, but defendants correctly note that dozens of cases dismiss
> complaints on scienter grounds where stock sales were found to be *de
> minimis* or where motive allegations were undermined by increases in total
> holdings.

*In re eSpeed, Inc. Sec. Litig.*, No. 05 Civ. 2091, 2006 WL 880045, at \*14 n.182
(S.D.N.Y. Apr. 3, 2006) (citation and quotation marks omitted).

In assessing the sufficiency of plaintiffs' motive allegation—which is really a legal conclusion—the Court also is free to take into account more than two years of the individual defendants' trading history in MBNA stock. *See, e.g., In re PEC Solutions, Inc. Sec. Litig.*, No. 03-CV-331, 2004 WL 1854202, at *15 (E.D. Va. May 25, 2004) ("in order to survive a motion to dismiss, Plaintiffs must allege, for *each* Defendant, facts regarding overall stock holdings, the percentage of stock sold, how the proceeds compared to their overall compensation, and how these sales compare to their previous trading history"); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2003 WL 21250682, at *13 (S.D.N.Y. May 29, 2003) (on motion to dismiss, holding that executive's sales were not sufficiently unusual when placed in the context of his *entire* trading history). In this case, plaintiffs' two-year snapshot provides a misleading and incomplete account of defendants' trading history.

Plaintiffs argue that certain transactions are less meaningful because they involved securities awarded "at little or no cost." (Pls.' Br. at 3, 31, 33-34.) That is not so. In evaluating the scope and timing of allegedly fraudulent stock transactions for purposes of assessing scienter, courts can rely upon "cashless" stock transactions. For example, the court in *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358 (E.D.N.Y. 2003), explained:

> Plaintiffs attempt to minimize the significance of the "nominally" greater holdings of defendants at the end of the class period by noting that these holdings comprise a substantial number of shares purchased through the exercise of options; these purchases allegedly involved no risk to defendants because the strike price of the options was "considerably lower" than the market price. This argument is unpersuasive, given that defendants' retention of the shares so acquired remains inconsistent with the allegation that defendants harbored information that the Company's financial health was in grave jeopardy.

*Id.* at 383. Here, such "cashless" transactions are particularly significant because they show that defendants actually *increased* their total holdings of MBNA stock during the Class Period, thus undermining plaintiffs' motive allegations.

Plaintiffs' only merit-based attack on the trading histories set out in defendants' Appendix is their claim that motive is adequately alleged because "all Defendants . . . sold their MBNA stock" during the Class Period. (Pls.' Br. at 31.) The same can be said, however, about any number of earlier periods of a similar length. That is precisely why the Court should consider the individual defendants' stock sales over an extended period of time. These trading histories demonstrate, for example, that all individual defendants sold or disposed of MBNA stock during several earlier periods, including January-May 2001 and March-June 2002. (Appendix to Defs. Opening Br.) Those facts belie plaintiffs' assertion that defendants' stock sales during the Class Period were unusual in scope and timing.

3.     Finally, plaintiffs' motive theory makes no sense. In their answering brief, plaintiffs argue for the first time that the individual defendants stood to gain by *retaining* their MBNA stock and thereby positioning themselves to benefit from MBNA's merger with Bank of America. (Pls.' Br. at 35.) This new theory has been cobbled together in response to defendants' showing that every individual defendant increased his holdings of MBNA stock during the Class Period, which undermines any inference of fraudulent intent. *See, e.g.*, *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) ("the Individual Defendants, in almost every instance, increased their [] holdings during the Class Period—a fact wholly inconsistent with fraudulent intent").

- 12 -

Plaintiffs' new theory is completely inconsistent with the scienter allegations in the Amended Complaint: namely, that the individual defendants intentionally *inflated* MBNA's stock price so they could sell their stock. (Am. Compl. ¶¶ 100-02.) Indeed, if plaintiffs' new theory were correct, and the individual defendants stood to gain by retaining their MBNA stock until the Bank of America merger, then the individual defendants' stock sales during the Class Period demonstrate no motive at all. In any event, plaintiffs' new theory appears nowhere in their complaint. Although paragraphs 93 and 97 arguably suggest that MBNA was a potential acquisition target, they do not allege that MBNA or the individual defendants were considering a "potential" acquisition during the Class Period. (*See* Am. Compl. ¶¶ 97, 99.) Accordingly, the Court should ignore this new theory in deciding defendants' motion. *N.A.M.I.* v. *Essex County Bd. of Freeholders*, 91 F. Supp. 2d 781, 787 n.4 (D.N.J. 2000) ("This Court need not consider claims that have not been pleaded in the complaint.").

## III.    Plaintiffs Have Not Stated a Fraud Claim Based on MBNA's Valuation of Its Interest-Only Strip Receivable at the End of the Fourth Quarter of 2004.

Plaintiffs contend that "[p]ursuant to GAAP and SEC Regulations, Defendants were required to write-down MBNA's" interest-only strip receivable to fair value at the end of 2004. (Pls.' Br. at 11.) They then assert that "[i]t was not until 2005 that Defendants belatedly took a massive charge." (*Id.*) These allegations are highly misleading. MBNA's SEC filings establish that MBNA wrote down its interest-only receivable strip by $95.7 million at the end of 2004. (*See* Defs. Opening Br. at 9 n.5.) The Court can take judicial notice of SEC filings in deciding a motion to dismiss. *See In re IT Group Inc.*, No. 04-1268, 2005 WL 3050611, at *2 n.4 (D. Del. Nov. 15, 2005) ("In

- 13 -

reviewing a 12(b) motion to dismiss in a case such as this, the court may consider a company's SEC filings"). To survive this motion, plaintiffs thus must adequately allege that defendants committed securities fraud by not writing down MBNA's interest-only receivable strip by *more than* $95.7 million at the end of the fourth quarter of 2004. They have not done so.

The decision in *In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152 (N.D. Ill. 2004), is directly on point. Plaintiffs there alleged that "defendants attempted to conceal the deterioration of Midway's business [by] failing to timely write down its Capitalized Product Development Costs ('CPDC's')." *Id.* at 1160. CPDC's are "costs associated with the research and development of a video game" once the game "becomes a viable product suitable for mass production." *Id.* Like interest-only strip receivables, CPDC's are subject to an automatic write-down, albeit under slightly different circumstances, namely, "[i]n the event a game previously deemed technologically feasible becomes commercially unviable." *Id.*

Like plaintiffs in this case, the *Midway Games* plaintiffs argued that several of Midway's financial statements violated various accounting standards and "materially misstated Midway's operating results by failing to timely write-down CPDC's." *Id.* at 1170. The court held that these allegations were insufficient to plead fraud with particularity, explicitly relying on the fact that Midway Games, like MBNA, actually wrote down the value of its CPDC's during the relevant time period:

> Plaintiffs allege only that Midway's SEC filings were fraudulent because Midway should have written off more than $ 20 million in CPDC's "by early 2003." . . . [But they] do [not] allege how much of the CPDC's should have been written off. In fact, Midway did write-down CPDC's during the class period, including $ 9 million in March 2003. Plaintiffs

- 14 -

claim that these write-downs were "inadequate," without explaining how much Midway should have written down and when.  Instead, they again simply refer to the company's "inability to produce its game titles in a timely manner."  This is clearly insufficient under Rule 9(b).

*Id.* at 1171.

As in *Midway Games*, plaintiffs' allegations here are insufficient under Rule 9(b). Plaintiffs do not allege how much more MBNA should have written down its interest-only strip receivable at the end of 2004.  They instead simply assert, with the benefit of hindsight, that the 2004 write-downs were inadequate because MBNA subsequently wrote down this asset even more at the end of the first quarter of 2005.  Such allegations are insufficient to state a claim under Section 10(b).

This claim also fails because the timing of MBNA's decision to write down its interest-only strip receivable was a matter of business judgment.  Plaintiffs offer no real opposition to this argument.  In their opening brief, defendants cited *Kreindler* v. *Chem. Waste Mgmt., Inc.*, 877 F. Supp. 1140 (N.D. Ill. 1995), along with several other cases holding that the timing of a write-down is not actionable at least absent some allegation that a defendant affirmatively decided that a write-down was necessary but concealed or delayed the decision in furtherance of some fraud.  (Defs. Opening Br. at 33-36.)

Plaintiffs largely ignore these cases, attempting to distinguish them by contending, in a footnote, that they involved "non-reporting period[s]" or that plaintiffs there had failed to allege that the company had made a "decision to write-down its assets" before it actually did so.  (Pls.' Br. at 38 n.28.)  These are not points of distinction.  At most, plaintiffs allege that MBNA should have, but did not, write down its interest-only strip receivable by some additional amount at the end of the fourth quarter of 2004.  (*E.g.,* Am.

- 15 -

Compl. ¶¶ 63, 68.) They do not adequately allege that defendants decided at the end of

2004 that a further write-down was necessary, much less by some specific amount, but

concealed that decision. Instead, plaintiffs seek to plead fraud by hindsight based on bald

and conclusory allegations. Where the timing of a write-down is at issue, such allega-

tions are insufficient to survive a motion to dismiss. *Denny* v. *Barber*, 576 F.2d 465, 470

(2d Cir. 1978) ("For the most part, plaintiff has simply seized upon disclosures made in

later annual reports and alleged that they should have been made in earlier ones. . . .

[Failure to act with] greater clairvoyance . . . does not constitute fraud.").

## IV.    All Claims Against Defendants John Cochran, Richard Struthers and Charles Krulak Should Be Dismissed.

Because plaintiffs have abandoned any claim based on statements about MBNA's

anticipated restructuring costs (*see supra* pp. 1-2), their claim under Section 10(b) is now

based on, at most, two alleged misstatements: (i) statements about the value of MBNA's

interest-only strip receivable that appeared in MBNA's FY 2004 Form 10-K and

(ii) statements about MBNA's expected FY 2005 earnings that were made during a

January 21, 2005 analyst call and later memorialized in a Form 8-K filed with the SEC.

(Am. Compl. ¶¶ 83-88.) As explained in defendants' opening brief and above, plaintiffs'

Section 10(b) claim fails against *every* defendant for multiple reasons. At the very least,

however, the Court should dismiss the Section 10(b) claim against John Cochran, Richard

Struthers and Charles Krulak because none of these defendants signed the SEC filings in

question or made the challenged statements during the January 21, 2005 analyst call.

A.    Plaintiffs contend that Cochran, Struthers and Krulak can be held liable for

statements in MBNA's FY 2004 Form 10-K because "group allegations can establish that

- 16 -

defendants 'spoke' through corporate statements." (Pls.' Br. at 18.)  In so arguing,

plaintiffs assert that the Third Circuit's decision in *In re Suprema Specialties, Inc. Sec.*

*Litig.*, 438 F.3d 256 (3d Cir. 2006), resurrected the defunct group pleading doctrine.  The

Court should reject this argument.  (*See* Defs.' Opening Br. at 25-28.)

   First, neither *Suprema* nor *In re Rent-Way Sec. Litig.*, 209 F. Supp. 2d 493, 510

(W.D. Pa. 2002) (cited in Pls.' Br. at 18 n.9), endorses the group pleading doctrine.  In

fact, the Third Circuit in *Suprema* explicitly rejected efforts to lump together for

Section 10(b) pleading purposes a group of outside directors, noting that where

"[r]ecklessness is pled against the Outside Directors as a group, based on their position,

without any attempt to link specific individuals to specific instances of reckless conduct,"

the Section 10(b) claim fails for lack of scienter.  438 F.3d at 282 ("'catch-all' or

'blanket' assertions do not satisfy the particularity requirements of Rule 9(b) and the

PLSRA, and must be disregarded").  *Rent-Way* is not to the contrary.  The court there

allowed a claim to proceed against the company's founder and CEO because plaintiffs

had alleged, *inter alia*, that the CEO "was primarily responsible for Rent-Way's

communications with securities analysts," was "actively involved in preparing, reviewing

and authorizing the issuance of the company's" financial statements, and "signed the

annual 10-K reports and the annual shareholder reports for fiscal years 1998 and 1999."

209 F. Supp. 2d at 514.  No similar allegations are made against Cochran, Struthers and

Krulak in this case.

   Second, this Court and others have expressly rejected the notion that corporate

officers can be held liable for statements in a "group-published" document, such as the

Form 10-K on which plaintiffs seek to rely here.  (*See* Defs.' Opening Br. at 26-28

- 17 -

(collecting cases).) This Court's decision in *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 553 (D. Del. 2002), is directly on point. Plaintiffs do not even attempt to distinguish that decision.[3]

B.    Neither can plaintiffs state a claim against Cochran, Struthers and Krulak based on alleged misstatements concerning MBNA's projected FY 2005 earnings. (*See* Defs.' Opening Br. at 6-7.) None of those defendants made any of the challenged statements during the January 21, 2005 analyst call or signed the ensuing Form 8-K. (*Id.* at 25-28.) In their answering brief, plaintiffs assert that "every Defendant" attended MBNA's January 21, 2005 analyst calls, as evidenced by the "improperly annexed" transcript of the call. (Pls.' Br. at 19 n.11.)[4] To begin with, the transcript does not show that "every" defendant was in attendance during the call. Although the transcript states that members of the "executive committee" attended, plaintiffs do not allege that Krulak and Struthers were on that committee or that either of them participated in the call. (Tr. of Jan. 21, 2005 Analyst Call, attached as Ex. C to Feb. 10, 2006 Aff. of Richard C. Pepperman, II ("Pepperman Aff.") at 2.) Under these circumstances, neither defendant

---

[3] Plaintiffs make the additional conclusory assertion that "the Complaint more than sufficiently alleges that . . . Cochran (¶¶ 53, 54), Krulak (¶¶ 53, 54) and Struthers (¶¶ 53, 54, 92) signed SEC filings . . ., actively participated in the preparation of financial statements . . ., or participated in conferences" during which misstatements or omissions were made. (Pls.' Br. at 19.) The cited paragraphs of the Amended Complaint do not support this assertion.

[4] There is no merit to plaintiffs' contention that the transcript submitted with defendants' opening brief is not properly before the Court. Plaintiffs' complaint quotes statements made during the call (Am. Compl. ¶¶ 84-86), and the transcript was properly authenticated by the Affidavit of Richard C. Pepperman, II. *See Adkins* v. *Rumsfeld*, 389 F. Supp. 2d 579, 584 (D. Del. 2005) ("a court may consider 'document[s] integral to or explicitly relied upon in the complaint' without converting a motion to dismiss to a motion for summary judgment." (citation omitted)).

- 18 -

can be liable for any statements made during the call, whether by an "omission" theory or otherwise.

Although the transcript lists Cochran as a "participant," it also reveals that he did not make any statements during the call. Absent some allegation that Cochran knowingly or recklessly failed to *correct* a material misstatement, his presence on the call is not enough to establish Section 10(b) liability. *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 710 (3d Cir. 1996) (to prove violation of Section 10(b), plaintiff must establish, *inter alia*, that defendant made knowing or reckless misrepresentation or omission of material fact). On that basis, plaintiffs' reliance (Pls.' Br. at 19 n.11) on *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 527, 543 (S.D. Ohio 2000), is misplaced. Unlike in *SmarTalk*, plaintiffs here do not allege that Cochran—or Krulak and Struthers—knowingly failed to correct a misstatement made during the call. (*See* Am. Compl. ¶¶ 83-86 (describing alleged misstatements made on call but failing to allege that Cochran knowingly failed to correct them).)

## V.    Plaintiffs' Section 20(a) Claim Should Be Dismissed.

Plaintiffs argue that the individual defendants are "controlling persons" within the meaning of Section 20(a) because they were all "MBNA executives actively involved in the financial disclosure process." (Pls.' Br. at 38-39.) As this Court has previously held, such conclusory allegations, without more, are not enough to plead "control" under Section 20(a). *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d at 561 (allegations of management responsibilities fail to allege "control" with requisite particularity). Plaintiffs similarly argue that Cochran, Struthers and Krulak were "controlling persons" because they had access to the information contained in "the Package." (Pls.' Br. at 38.)

Again, this Court has rejected that argument before, and should do so again. *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d at 562 ("Mere access to information cannot then sustain an allegation of a Section 20(a) violation."). As noted above, plaintiffs do not even attempt to distinguish this Court's decision in *In re Digital Island*, which is fatal to their claim under Section 20(a).

## CONCLUSION

The Amended Complaint should be dismissed in its entirety with prejudice for failure to state a claim upon which relief can be granted, and for failure to plead fraud with the requisite particularity.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Richard H. Morse*

Richard H. Morse (No. 531)
rmorse@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

*Attorneys for Defendants*

Of Counsel:

Richard J. Urowsky
Richard C. Pepperman, II
Ryan C. Williams
Christopher F. Nelson
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

May 26, 2006

- 20 -

## CERTIFICATE OF SERVICE

I, Richard H. Morse, hereby certify that on May 26, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of Court using CM/ECF which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jeffrey S. Goddess, Esquire
> Rosenthal Monhait Gross & Goddess, P.A.
> Mellon Bank Center
> 919 Market Street, Suite 1401
> P. O. Box 1070
> Wilmington, DE 19899
>
> Ralph Nicholas Sianni, Esquire
> Seth D. Rigrodsky, Esquire
> Milberg Weiss Bershad & Schulman LLP
> 919 North Market Street, Suite 411
> Wilmington, DE 19801

I further certify that on May 26, 2006, I also caused copies of the foregoing document to be served by hand on the above-listed counsel of record.

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> _Richard H. Morse_
> Richard H. Morse (I.D. No. 531)
> 17th Floor, Brandywine Building
> 1000 West Street
> P.O. Box 391
> Wilmington, Delaware 19899-0391
> (302) 571-6651
> rmorse@ycst.com
>
> Attorneys for Defendants