IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES M. BAKER, On behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | C. A. No. 05-272 (GMS) |
| v. | ) ) | CLASS ACTION |
| MBNA CORP., BRUCE L. HAMMONDS, KENNETH A. VECCHIONE, RICHARD K. STRUTHERS, CHARLES C. KRULAK, and JOHN R. COCHRAN, III, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM

## I.    INTRODUCTION

This is a securities class action formed from nine punitive securities cases against MBNA Corporation ("MBNA" or "the Company"). The cases were consolidated by the court on October 13, 2005 and Activest Investmentgesellschaft mbH was appointed as lead plaintiff.  On December 12, 2005 the plaintiffs filed a consolidated amended class action complaint (the "Amended Complaint"), seeking to represent a putative class of all persons who purchased or otherwise acquired the publicly traded securities of MBNA during the period of January 20, 2005 through April 20, 2005, inclusive (the "Class Period").  The Amended Complaint alleges that MBNA and MBNA officers Bruce L. Hammonds ("Hammonds"), Kenneth A. Vecchione ("Vecchione"), Richard K. Struthers ("Struthers"), Charles C. Krulak ("Krulak"), John R. Cochran, III ("Cochran") violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and regulations promulgated thereunder by the Securities and Exchange Commission (the "SEC"), including Section 10(b) of the Exchange Act (15 U.S.C. §

78j(b)).[1]

Presently before the court is the defendants' motion to dismiss the amended complaint in its entirety pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the court will grant in part and deny in part the motion. The court will grant the motion to dismiss Count I against Struthers and Cochran. The court will deny the motion in all other respects.

## II.    BACKGROUND

The following summary of the facts is taken from the plaintiffs' amended complaint. The amended complaint alleges that MBNA deceived the plaintiffs by reporting false information regarding its growth in order to artificially inflate its stock, thereby allowing the defendants to participate in insider trading of personal stock. According to the amended complaint, in a succession of announcements and public filings in January 2005, the defendants deceived the market by reporting; (1) "that the true size of the Company's restructuring charge was unexpected," (2) "that MBNA revenues and earnings exceeded analysts' projections," and (3) "that MBNA would undergo significant growth despite a slow growth environment." (D.I. 37 ¶ 2.) According to the amended complaint, this alleged behavior by the defendants "created and sustained the false impression that the Company was sufficiently adapting to pressure on its interest margins for credit card debt." (Id.)

---

[1] The original complaint (D.I. 1) also named Michael G. Rhodes, Lance L. Weaver, and John W. Scheflen as defendants. However, these defendants are not named as parties in the plaintiffs' consolidated amended complaint (D.I. 37).

The plaintiffs further claim that the defendants knew or recklessly disregarded the alleged false reporting, which caused MBNA's fourth quarter and year-ended 2004 reported assets, stockholders' equity, net income, and earnings per share to be artificially inflated.  (Id. ¶ 3.)  The plaintiffs also allege that "[the] defendants knowingly or recklessly failed to disclose or to reflect in their public statements that MBNA's critical assumptions used to value its IO strip receivables related to securitization of its credit card and loan pools did not comport with Generally Accepted Accounting Principles ("GAAP") and other principles of fair reporting." (Id.)

The plaintiffs allege that due to the fact that the defendants manipulated MBNA's 2004 financial statements in violation of GAAP, investors were unaware of the critical assumptions that MBNA used to value its IO strip receivables.  (Id. ¶ 4.)  In other words, because MBNA allegedly misstated its credit card payment rates in its 2004 financial statements, the Company's "IO strip receivables were not truthfully adjusted to reflect known adverse payment rates and trends at MBNA."  (Id.)  For these reasons, the plaintiffs claim that "the Company's public statements touting its growth and profitability . . . were materially overstated."  (Id.)

According to the amended complaint, when MBNA decided to virtually eliminate its 0% Balance Transfer Program and dramatically increase its credit card interest rates in October 2004, it was aware that these changes would lead to higher volumes of payments.  (Id. ¶ 5.)  The plaintiffs claim that MBNA was aware of the impact on the elimination of the 0% Program as early as November 2004.    (Id.)    The plaintiffs thus claim that MBNA's April 2005 characterization of the higher payment volumes as "unexpected" was false.  (Id.)  Specifically,

the plaintiffs claim that because the defendants evaluated the accuracy of the IO strip receivables monthly, they knew when MBNA's credit card payment rates required MBNA to write down income during each reporting period.  (Id. ¶ 6.)

The plaintiffs additionally aver that the defendants announced at "the beginning of the Class Period that they expected annual income growth of 10% in 2005."  (Id. ¶ 7.)  In the weeks following the projection, the plaintiffs allege that the "defendants having insider knowledge of the true undisclosed financial condition of MBNA . . . sold more than one million shares of their personally-held MBNA stock, including 351,409 shares sold by defendant Hammonds on January 27, 2005 for proceeds in excess of $9 million."  (Id.)

The plaintiffs next allege that on April 21, 2005, MBNA was forced to reveal that: (1) it had to take an almost $207 million write-down of its "IO strip receivable;" (2) its first-quarter income was down 93% year-over-year, including the restructuring charge; and (3) it expected full year earnings to come in "significantly below its 10% growth objective."  (Id. ¶ 8.)  The plaintiffs allege that this announcement caused "shares of MBNA [to fall] to a two-year intraday low of $18.50 before closing at $19.28, down $3.83, or 16.6%, on a day most major bank stocks rose."  (Id.)  As a result of this alleged fraudulent scheme, the plaintiffs claim that "the price of MBNA securities [was] artificially inflated during the Class Period, that the individual defendants reaped substantial economic proceeds from their insider stock sales, and that the investors suffered damages when revelation of the alleged 'true facts' caused a decline in the value of their investment."  (Id. ¶ 9.)

Last, the plaintiffs claim that "all the defendants knowingly or recklessly directly participated in the alleged fraudulent acts and misconduct for which damages are sought against each of them and/or are charged with liability as controlling persons." (Id. ¶ 10.) Put another way, the plaintiffs allege that "the financial condition of the Company was materially overstated in its public statements and these defendants knew or recklessly disregarded this alleged fact." (Id.) The amended complaint contains two counts: Count I for violations of Section 10(b) of the Exchange Act and Rule 10b-5 against all the defendants; and Count II for violations of Section 20(a) of the Exchange Act against all of the individual defendants.

## III.   STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz*, 1 F.3d 183 (3d Cir. 1993). Thus, as in the case of a Rule 12(b)(1) motion, the court must accept the factual allegations of the complaint as true. *See Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir. 1997); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). In particular, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 666 (3d Cir. 1988). In performing this task, however, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3rd Cir. 1997). On the other hand, a court should dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See*

*Graves*, 117 F.3d at 726; *Nami*, 82 F.3d at 65 (both citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Additionally, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud, independent of the standard applicable to Rule 12(b)(6) motion. Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "This particularity requirement has been rigorously applied in securities fraud cases." *In re Burlington Coat Factory Sec. Litig.*, 114 F. 3d 1410, 1417 (3d Cir. 1997). Therefore, plaintiffs alleging securities fraud claims must specify "the who, what, when, where, and how [of the alleged fraud]." *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999) (citation omitted). The Third Circuit has noted that "[a]lthough Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *In re Rockefeller Ctr. Properties Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (quoting *In re Nice Systems, Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 577 (D.N.J. 2001)).

When alleging securities fraud, plaintiffs must also comply with the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(b)(1) and (b)(2). The PSLRA requires plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

In cases alleging securities fraud claims, such as Rule 10b-5 claims, the PSLRA requires that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

Moreover, the typical analysis under Rule 12(b)(6) has been modified by the PSLRA. "'[W]hereas under Rule 12(b)(6), we must assume all factual allegations in the complaint are true . . . under the [PSLRA], we disregard 'catch-all' or 'blanket' assertions that do not live up to the particularity requirements of the statute.'" *In re Rockefeller Ctr.*, 311 F.3d at 224 n.19 (quoting *Florida State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 345, 660 (8th Cir. 2001)). The PSLRA requires a "strong inference" that the defendants acted with the required state of mind and, accordingly, alters the normal operation of inferences under Rule 12(b)(6). *In re Advanta Corp.*, 180 F.3d at 530. Failure to meet the PSLRA's pleading requirements will result in dismissal of the complaint. *See id.* at 531.

## IV.    DISCUSSION

### A.    The PSLRA Safe Harbor Provisions

The PSLRA establishes a safe harbor protecting oral or written forward-looking statements from Rule 10b-5 liability. 15 U.S.C. § 78u-5. Specifically, § 78u-5(c)(1)(A) provides, in pertinent part, that:

> [A] person . . . shall not be liable with respect to any forward-looking statement, whether written or oral, if and to the extent that -- (A) the forward-looking statement is -- (I) identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement . . . .

7

15 U.S.C. § 78u-5(c)(A)(I).  A statement is forward-looking under the PSLRA if it is:

> (A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items;
> (B) a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;
> © a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission; . . .

15 U.S.C.A. § 78u-5(i)(1).  "To suffice, the cautionary statements must be substantive and tailored to the specific future projections, estimates or opinions in the prospectus which the plaintiffs challenge."  *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 371-72 (3d Cir. 1993).  The Third Circuit has emphasized that "the language bespeaking caution [must] relate directly to that by which plaintiffs claim to have been misled."  *Kline v. First W. Gov't Sec., Inc.*, 24 F.3d 480, 489 (3d Cir. 1994).  However, if the statement was made with actual knowledge that the statement was false or misleading, the safe harbor does not apply.  *See, e.g.*, *id.* at 486-87.

Here, the defendants claim that MBNA's statements concerning the expected restructuring charge are protected by the safe harbor provisions.  Specifically, the defendants claim that MBNA's statements regarding its restructuring charges were both forward-looking projections of anticipated costs and accompanied by sufficient cautionary language.  (D.I. 41, at 30.)  For example, the defendants reference "MBNA's January 20, 2005 Form 8-K stating that '[t]he restructuring charge[s] [were] expected to total approximately $350 million pre-tax . . . . .'"  (Id.) (citing January 20, 2005 Press Release, Pepperman Aff. Ex. A).

The defendants also allege that MBNA's statements about expected 2005 earnings growth are protected under the safe harbor provisions.  Specifically, the defendants claim that the statement made by MBNA explaining that its "objective [was] to increase earnings per share by 10% in 2005" was a forward-looking statement.  (D.I. 41, at 31.)  The defendants further claim that "the remaining statements in MBNA's January 21, 2005 Form 8-K are assumptions underlying MBNA's plan or projections and are therefore considered forward-looking."  (Id.)

The court finds that the statements regarding MBNA's restructuring charges and the statements concerning expected earnings to the extent both were made in the Company's Form 8-K do not fall under the protection of the safe harbor provisions.  Because the alleged misrepresentations concerning MBNA's restructuring charges were made in the Company's Form 8-K filed with the SEC, the statements are excluded from the protection of the safe harbor provisions as a matter of law.  15 U.S.C. § 78u-5(b)(2)(A); *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 236 (S.D.N.Y. 2006); *In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1171 (N.D. Ill. 2004).  Thus, these statements are actionable under securities law, and the court will deny this aspect of the defendants' motion to dismiss.

### B.    Count I: Section 10(b) Claims

The defendants next contend that the plaintiffs' allegations under Section 10(b) of the Exchange Act fail to meet the heightened pleading requirements of both the PSLRA and Rule 9(b) of the Federal Rule of Civil Procedure.  Pursuant to the PSLRA, when allegations creating a strong inference of scienter are made against a specific defendant under Section 10(b), a motion to dismiss the 10(b) claims against that defendant cannot be sustained.  *See In re Suprema, Inc., Sec. Lit.*, 438 F.3d 256, 276 (3d Cir. 2006) (citing 15 U.S.C. § 78u-4(b)(1)(B)).  Under Rule 9(b),

plaintiffs alleging Section 10(b) claims must also plead "'(1) a specific false representation [or omission] of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the defendant acted upon it to his damage.'"  *Id.* (quoting *In re Rockefeller Ctr. Properties Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)).

For the reasons that follow, the court will grant the motion to dismiss the Section 10(b) claims with respect to Struthers and Cochran, and deny the motion with respect to MBNA, Hammonds, Vecchione, and Krulak.

1.    MBNA

The plaintiffs make a number of specific allegations against MBNA in their amended complaint.  For instance, the plaintiffs allege that MBNA "presented its financial statements during the Class Period in a manner which" violated at least seven provisions of GAAP.  (D.I. 37 ¶ 76; see also id. ¶¶ 63-64, 69, 74.)  The plaintiffs further allege that MBNA ignored a number of "red flags" indicating potential problems with its financial reports, including the fact that many of its employees worked a considerable number of overtime hours in December 2004 to change a number of financial statements (id. ¶ 56.), the presence of a $206.6 million impairment on its IO strip receivables (id. ¶¶ 73-79.), a 44% decrease in the number of new MBNA accounts (id. ¶ 35.), and a number of other factors in its financial environment that led some analysts to warn of an impending downturn in credit card loan growth.  (See id. ¶¶ 31-37.)

The allegations that MBNA ignored these red flags (Id. ¶ 86), coupled with the aforementioned allegations that MBNA violated specific GAAP provisions are sufficient to state a claim under Section 10(b).  *See In re Suprema*, 438 F.3d at 279-280.  In denying a motion to

dismiss a 10(b) claim, the *Suprema* court held:

> We are not suggesting that plaintiffs' Section 10(b) claim will necessarily survive a properly supported summary judgment motion after [the defendant] marshals its evidence. At the pleading stage, however, plaintiffs are entitled to the benefit of all reasonable inferences based on the detailed and specific allegations in their complaints. In the face of the numerous and not insignificant alleged accounting violations, we cannot rule out, as a matter of law, a strong and reasonable inference of [the defendant's] scienter.

*Id.* at 281. The Third Circuit's guidance in *Suprema* and its analysis of the complaint in that case counsel against granting the defendants' motion to dismiss the 10(b) claim against MBNA in this case. Accordingly, the court will allow the plaintiffs' 10(b) claim against MBNA to proceed.

> 2.     The Individual Defendants

The court of appeals held in *In re Suprema* that the plaintiffs created a strong inference of scienter by alleging 1) that unusually high stock sales by two corporate executives provided those executives with motive and opportunity, and 2) strong circumstantial evidence of recklessness or conscious misbehavior on the part of the executives. 438 F.3d at 277. However, the *Suprema* court also noted that "blanket allegations against numerous defendants," such as allegations against defendants "based on their position, without any attempt to link specific individuals to specific instances of reckless conduct," do not meet the requirements of the PSLRA or Rule 9(b). *Id.* at 282.

In their amended complaint, the plaintiffs allege that Hammonds and Vecchione signed and certified a number of the documents that the plaintiffs allege were misleading or fraudulent (See D.I. 37, ¶¶ 87-89.) Furthermore, the plaintiffs allege that Vecchione regularly attended

meetings where management reviewed a number of relevant company financial documents, and that Vecchione came to those meetings "well-prepared with detailed notes" and questions about the financial documents  (Id. ¶¶ 54, 92.)  The plaintiffs also allege that Hammonds made public statements that were materially misleading.  (Id. ¶ 83.)  These specific allegations against explicitly named defendants are sufficient to allow the claims against Vecchione and Hammonds to proceed to the discovery phase.

The plaintiffs make only two allegations that explicitly name any of the remaining defendants.  First, the plaintiffs allege that the defendants sold shares of MBNA common stock in a way that was "unusual in scope and timing."  (Id. ¶ 100.)  Specifically, the plaintiffs allege that Cochran, Struthers, and Krulak sold 8.96%, 12.53%, and 64.02% of their holdings in MBNA common stock during the Class Period.  (Id. ¶ 100c-e.)  Second, the plaintiffs claim that the defendants were on a "huge distribution list" that regularly received "the Package," which consisted of a series of MBNA financial statements and other documents.  (Id. ¶ 53.)

The court in *Suprema* held that a strong inference of scienter was present where the defendants sold "over 30% of [their] holdings" in company stock during the period in question. 438 F.3d at 278.  The *Suprema* court explicitly distinguished earlier cases where the defendants "traded only small percentages of their holdings, with two of the defendants selling seven and five percent, respectively."  *Id.* (distinguishing *In re Advanta*, 180 F.3d at 540.)  While the *Suprema* court did not demarcate a bright line for determining what percentage of stock must be sold to create a strong inference of scienter, its "30 percent" figure serves as a useful guide.  The court, therefore, finds that Krulak's sale of nearly two-thirds of his stock holdings during the Class Period is sufficient to create the requisite inference of scienter.  In contrast, Struthers' and

Cochran's sales of relatively small proportions of their stock, without more, are not sufficient to create such an inference.

The other averments of the amended complaint are insufficient to establish a sufficiently strong inference of scienter with respect to Struthers or Cochran. The plaintiffs' blanket allegations against "the defendants" and "management" do not meet the particularity requirements of Rule 9(b) or the PSLRA. *See Suprema*, 438 F.3d at 282. The allegation that the defendants received "the Package" of financial documents does nothing more than establish that Struthers and Cochran had access to some relevant financial information. Such an inference of access is not sufficient to meet the "strong inference" requirement for pleading scienter under the PSLRA. *Suprema*, 438 F.3d at 282; *see In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 151 (3d Cir. 2004) ("[T]he mere fact that the information was sent to [the company's] headquarters and therefore was available for review by the individual defendants is insufficient to 'giv[e] rise to a strong inference that [defendants] acted with the required state of mind.'"). No other allegations in the complaint specifically mention Struthers or Cochran. Consequently, the court will dismiss the plaintiffs' 10(b) claims against Struthers and Cochran because they fail to meet the requirements of the PSLRA and Rule 9(b).

### C.    Count II: Section 20(a) Claims

Section 20(a) of the Exchange Act imposes joint and several liability upon one who controls a violator of Section 10(b). *Suprema*, 438 F.3d at 284 (citing 15 U.S.C. § 78t(a)). Under Section 20(a), "the plaintiff[s] must prove that one person controlled another person or entity and that the controlled person or entity committed a primary violation of the securities laws." *Id.* (citing *In re Alpharma*, 372 F.3d at 153.) Here, the plaintiffs allege that all of the defendants are

controlling persons of MBNA and, thus, are liable under Section 20(a) for MBNA's breaches of Section 10(b).  (D.I. 37 ¶ 119.)  In support of this claim, the plaintiffs allege that the individual defendants were controlling persons under Section 20(a) due to the individual defendants' "high level positions with the Company, participation in and/or awareness of the Company's operations[,] and/or intimate knowledge of the Company's actual performance."  (Id.)

As explained above, the plaintiffs have sufficiently pled a claim against MBNA for primary breaches of Section 10(b).  The questions of whether MBNA is actually liable under 10(b) and whether certain defendants are "controlling persons" within the meaning of 20(a) are questions of fact that the court is not willing to resolve at the pleadings stage.  *See Klapmeier v. Telecheck Int'l, Inc.*, 315 F. Supp. 1360, 1361 (D. Minn. 1970) (holding that "the issue of 'control' [under Section 20(a)] is a complex fact question . . .");  *Harriman v. E.I. Dupont de Nemours & Co.*, 372 F. Supp. 101, 105 (D. Del. 1974).  As such, court will deny the defendants' motion to dismiss Count II of the amended complaint.

## V.     CONCLUSION

For the aforementioned reasons, the court will grant in part and deny in part the defendants' motion to dismiss.  Specifically, the court will grant the motion to dismiss Count I with respect to Cochran and Struthers, and deny the motion in all other respects.


Dated: July 6, 2007                              /s/ Gregory M. Sleet
                                                 UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAMES M. BAKER, On behalf of himself )
and all others similarly situated, )
                                    )
            Plaintiff,              )        C. A. No. 05-272 (GMS)
                                    )
        v.                          )        CLASS ACTION
                                    )
MBNA CORP., BRUCE L. HAMMONDS, )
KENNETH A. VECCHIONE, RICHARD )
K. STRUTHERS, CHARLES C. KRULAK, )
and JOHN R. COCHRAN, III,            )
                                    )
            Defendants.             )

## ORDER

For the reasons stated in the court's memorandum of this same date, IT IS HEREBY

ORDERED that:

    1.    The defendants' Motion to Dismiss (D.I. 40) is GRANTED in part and DENIED in

part. The motion to dismiss Count I with respect to defendants Cochran and

Struthers is GRANTED. The motion to dismiss is DENIED in all other respects.

Dated: July 6, 2007                       /s/ Gregory M. Sleet
                                          UNITED STATES DISTRICT JUDGE