UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE MBNA CORP. SECURITIES LITIGATION | Case No. 1:05-CV-00272-GMS CONSOLIDATED |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION**

Lead Plaintiff Activest Investmentgesellschaft mbH for account of the PT-Master Fund, by its counsel and on behalf of all plaintiffs ("plaintiffs"), respectfully submits this Response in Opposition to Defendants' Motion For Partial Reconsideration of this Court's July 6, 2007 Memorandum & Order granting in part and denying in part Defendants' Motion to Dismiss.

1.      Defendants seek reconsideration of the Court's ruling that certain of Defendants' statements, filed with the Securities Exchange Commission ("SEC") on Form 8-Ks, are not protected by the safe harbor provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  There are two statements at issue alleged as materially false and misleading in the Consolidated Amended Class Action Complaint ("CAC") that were filed with the SEC on Form 8-Ks.

**The January 20, 2005 Form 8-K**

2.      The statements regarding the restructuring charge that defendants claim are subject to safe harbor protection were set forth in a Form 8-K filed with the SEC on January 20, 2005, that contained MBNA financial statements for the three months and year ended December 31, 2004.  See Declaration of Stuart J. Guber ("Guber Decl."), Exhibit A, filed herewith.

3.      The Form 8-K included the following, in pertinent part, with regard to the restructuring charge:

> The restructuring charge is expected to total approximately $300 million to $350 million pre-tax and result in anticipated pre-tax expense savings of approximately

$150 million in 2005 and $200 million in 2006. Following the end of the voluntary early retirement and severance programs in March 2005, the corporation will undertake a review of its operations and look for opportunities to consolidate some of its facilities. The corporation may incur additional expenses for the disposition of fixed assets related to this consolidation.

\* \* \*

This release includes forward-looking statements and estimates concerning the restructuring charge. Such statements and estimates are subject to risks and uncertainties that may cause the Corporation's actual performance to differ materially from that set forth in such forward-looking statements and estimates. For example, the actual number and identify of people participating in the early retirement and severance programs, and the overall impact of the restructuring on the Corporation's business, could affect the amount of the charge and the actual expense reductions in 2005 and 2006. Other factors that could cause the Corporation's actual financial performance to differ materially from that set forth in the forward-looking statements and estimates contained herein include, but are not limited to, those described in "Important Factors Regarding Forward-Looking Statements" of the Corporation's 2004 Quarterly Report on Form 10-Q for the quarter ended September 30, 2004. The estimates contained in this report represent the current estimates of the Corporation and the Corporation undertakes no obligation to update publicly or revise any such estimates or other forward-looking statements contained in this report.

4.      The Form 8-K also included detailed financial statements purportedly prepared in accordance with Generally Accepted Accounting Principles ("GAAP").[1]      The issue on reconsideration is whether those statements are exempted from safe harbor protection under 15

---

[1]  Defendant's reliance on the form 8-K attached as Exhibit B to D.I. 43 is misplaced. The allegations of the CAC demonstrate that the Form 8-K at issue is the one attached as Exhibit A to the Guber Decl., containing both statements relating to the restructuring charge and MBNA's financial statements. Compare Guber Decl. Exhibits A and B. See also CAC ¶ 80 (allegations relating to 1/20/05 press release announcing detailed financial results for MBNA 4Q: 2004); CAC ¶ 81 (alleging "that same day, MBNA filed with the SEC a Form 8-K for the quarter ended December 31, 2004 . . . repeat[ing] the financial results reported in the Company's press release"); and ¶ 82 (alleging that the statements "appearing in MBNA's fourth quarter 2004 press release and Form 8-K touting the Company's financial results were materially false and misleading . . .").

U.S.C. § 78u-5(b)(2)(A) as a "financial statement prepared in accordance with" GAAP.[2]  As set

forth below, the Court properly concluded that it was exempted.

5.      According to the SEC, the term financial statements means the financial

statements themselves and includes "all notes to the statements and all related schedules." SEC

Reg. S-X § 210.1 01(b) (17 C.F.R. Part 210).[3]  In order for a "financial statement to be prepared

in accordance with" GAAP, disclosure must be adequate to make the financial information

meaningful and therefore not misleading.  SEC Reg. S-X, § 210.4-01 (17 C.F.R. Part 210)

provides, in relevant part:

> The information required with respect to any statement shall be furnished
> as a minimum requirement to which shall be added such further material
> information as is necessary to make the required statements, in the light of the
> circumstances under which they are made, not misleading.
>
> Financial statements filed with the Commission which are not prepared in
> accordance with generally accepted accounting principles will be presumed to be

---

[2]  GAAP constitute "a series of general principles followed by accountants." *United States v. Basin Elec. Power Coop.,* 248 F.3d 781, 786 (8th Cir.2001).  Specifically, GAAP "are the official standards adopted by the American Institute of Certified Public Accountants (the 'AICPA'), a private professional association, through three successor groups it established: the Committee on Accounting Procedure, the Accounting Principles Board (the 'APB'), and the Financial Accounting Standards Board (the 'FASB')." *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 160 n. 4 (2d Cir. 2000). U.S. auditing standards, as set forth by AICPA, emphasize that the concept of "financial statements" is not just numerical, but also descriptive.  *See* AU Section 431 ("The presentation of financial statements in conformity with generally accepted accounting principles includes adequate disclosure of material matters**.** These matters relate to the form, arrangement, and content of the financial statements and their appended notes, including, for example, the terminology used, the amount of detail given, the classification of items in the statements, and the bases of amounts set forth.") and AU Section 9410 ("Information essential for a fair presentation in conformity with generally accepted accounting principles should be set forth in the financial statements (which include related notes)").

[3]  Neither the term "financial statement" nor the phrase "financial statement prepared in accordance with generally accepted accounting principles" is expressly defined in the PSLRA safe harbor provisions or applicable case law.  Defendants' citation to *In re Joelson***,** 427 F.3d 700 (10th Cir.  2005), is not relevant as that decision discusses terminology specific to federal bankruptcy laws, namely sections 523(a)(2)(A) & (B) of the Bankruptcy Code.

misleading or inaccurate, despite footnote of other disclosures, unless the Commission has otherwise provided. This article and other articles of Regulation S-X provide clarification of certain disclosures which must be included in any event, in financial statements filed with the Commission.

6.    Defendants themselves acknowledged that the information regarding the restructuring was material information necessary to make the financial statements not misleading when they filed MBNA's Annual Report as part of the 2004 Form 10-K.  See Guber Decl. Exhibit C at 117.  Indeed, the statement regarding the restructuring charge appears as Note 34 to MBNA's financial statements.  Id.  Defendants' own actions therefore prove that the restructuring charge statement was part of Defendants' financial statements and was properly exempted from safe harbor protection pursuant to 15 U.S.C. § 78u-5(b)(2)(A).[4]

### The January 21, 2005 Form 8-K

7.    The January 21, 2005 Form 8-K relating to MBNA's earnings per share objectives stated, in pertinent part:

> MBNA Corporation announced today that management's objective is to increase earnings per share by 10% in 2005 and by an average of 12% per year over the next several years, excluding the impact of a previously announced restructuring charge of approximately $300 million to $350 million pre-tax that the Corporation will take in the first quarter of 2005.  Management believes earnings growth in 2005 will primarily be driven by improvements in credit quality and reduced expense growth rates.

> *  *  *

> **Cautionary Language**

> This release includes forward-looking statements and estimates concerning MBNA Corporation's financial performance.  Such statements and estimates are subject to risks and uncertainties that may cause the Corporation's actual performance to differ materially from that set forth in such forward-looking statements and estimates.  The estimates contained in this release represent the current estimates of the Corporation and

---

[4] Assuming the statements were not exempted under 15 U.S.C. § 78u-5(b)(2)(A), they were made with actual knowledge of their falsity and therefore not subject to safe harbor protection. See 15 U.S.C. § 78u-5(c)(1)(B)(ii)(II), see also ¶¶ 8-10 below.

the Corporation undertakes no obligation to update publicly or revise any such estimates or other forward-looking statements contained in this release…[5]

8.      Assuming that even if defendants' stated earnings objectives were not exempted from safe harbor protection under 15 U.S.C. § 78u-5(b)(2)(A), those disclosures were made "with actual knowledge . . . that the statement was false or misleading," 15 U.S.C. § 78u-5(c)(1)(B)(ii)(II).  See *In re Bristol-Myers Squibb Sec. Litig.*, No. 00-1990, 2005 U.S. Dist. LEXIS 18488, at * 105 (D.N.J. Aug. 17, 2005) (holding forward-looking statements made with actual knowledge of their falsity are actionable).

9.      Consistent with the actual knowledge standard, the Court found that plaintiffs adequately pled "that MBNA ignored a number of 'red flags' indicating potential problems with its financial reports, including the fact that many of its employees worked a considerable number of overtime hours in December 2004 to change a number of financial statements,…the presence of a $206.6 million impairment on its IO strip receivables,…a 44% decrease in the number of new MBNA accounts,…and a number of other factors in its financial environment that led some analysts to warn of an impending downturn in credit card loan growth …" *Baker v. MBNA Corp.*, slip.op., C.A. No, 05-272, 2007 WL 2009673 at *6 (D.Del. July 6, 2007).

10.      Moreover, the Court also found plaintiffs adequately pled that (i) defendant Hammond and Vecchione signed and certified a number of documents that plaintiffs allege were misleading or fraudulent, (ii) defendant Vecchione, who signed the January 21, 2005 Form 8-K, regularly attended meetings where management reviewed relevant company financial documents; and (iii) defendant Vecchione came to those meetings well prepared with detailed notes and questions about financial documents.  Id. 2007 WL 2009673 at * 7.  These allegations,

---

[5] See Guber Decl., at Exhibit D.

in their totality, adequately plead knowledge of falsity rendering defendants statements in the

January 21, 2005 form 8-K not subject to safe harbor protection.

## **CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny

Defendants' Motion for reconsideration in its entirety.[6]


Dated: August 2, 2007                    */s/ Brian D. Long*_____
                                          Seth D. Rigrodsky (DSBA No. 3147)
                                          Brian D. Long (DSBA No. 4347)
                                          **RIGRODSKY & LONG, P.A.**
                                          919 N. Market Street, Suite 980
                                          Wilmington, DE 19801
                                          (302) 295-5310
                                          (302) 654-7530 (fax)

                                          *Plaintiffs' Local Counsel*

                                          - and -

                                          Stuart J. Guber (admitted pro hac vice)
                                          James M. Evanglista
                                          **MOTLEY RICE LLC**
                                          600 West Peachtree Street, Suite 800
                                          Atlanta, GA 30308
                                          (404) 201-6900
                                          (404) 201-6959 (fax)

                                          *Plaintiffs' Lead Counsel*

---

[6] If any deficiencies are found by the Court, Plaintiffs respectfully request leave to amend, which should be freely granted.  *See*, *e.g.*, *Burlington*, 114 F.3d at 1434.