## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE MBNA CORP. SECURITIES LITIGATION | Case No. 05-00272-GMS CONSOLIDATED |

### DEFENDANTS' ANSWER AND DEFENSES

Defendants, by their undersigned counsel, for their Answer to plaintiffs' Consolidated Amended Class Action Complaint for Violation of the Federal Securities Laws (the "Consolidated Complaint"), deny knowledge or information sufficient to form a belief as to the truth of the allegations of the unnumbered first paragraph of the Consolidated Complaint and state as follows:

1.     Deny the allegations of Paragraph 1, except (a) admit that plaintiffs purport to bring this action on behalf of the putative class described in that paragraph; and (b) admit that plaintiffs assert claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and the SEC regulations promulgated thereunder.

2.     Deny the allegations of Paragraph 2.

3.     Deny the allegations of Paragraph 3.

4.     Deny the allegations of Paragraph 4, except (a) admit that on January 20, 2005 Legg Mason issued a report concerning MBNA; (b) respectfully refer the Court to that report for a complete and accurate description of its contents; and (c) deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning investors' knowledge.

5.    Deny the allegations of Paragraph 5, except (a) admit that MBNA's payment rates increased during the period from January 20, 2005 through April 20, 2005 (the "Class Period"); and (b) respectfully refer the Court to the "TheStreet.com" article referenced therein for a complete and accurate description of its contents.

6.    Deny the allegations of Paragraph 6.

7.    Deny the allegations of Paragraph 7, except (a) admit that MBNA announced on January 21, 2005 that it was management's objective to increase MBNA's earnings per share in 2005 by 10%; (b) respectfully refer the Court to MBNA's report on Form 8-K filed with the SEC on January 21, 2005; (c) admit that Defendant Bruce Hammonds sold MBNA stock on January 27, 2005, as reported in Mr. Hammonds' SEC Form 4 filing dated January 31, 2005; and (d) respectfully refer the Court to that Form 4 filing for a complete and accurate description of those transactions.

8.    Deny the allegations of the first sentence of Paragraph 8, except (a) admit that MBNA issued a press release on April 21, 2005; (b) admit that the press release reported that MBNA's first-quarter 2005 net income was $0.02 per common share compared with $0.40 per common share for the first quarter of 2004; (c) admit that the press release reported that MBNA's first-quarter 2005 earnings reflected the effect of a reduction in the interest-only strip receivable, which resulted in a net loss from securitization activity of $206.6 million; (d) admit that the press release reported that MBNA management believed that MBNA's 2005 earnings per share would be "significantly below its 10% growth objective;" and (e) respectfully refer the Court to that press release for a complete and accurate description of its contents.  Deny the

allegations of the second sentence of Paragraph 8, except (a) admit that the closing price of MBNA common stock on April 20, 2005 was $23.11; and (b) admit that the closing price of MBNA common stock on April 21, 2005 was $19.28.

9.      Deny the allegations of Paragraph 9.

10.     Deny the allegations of Paragraph 10.

11.     Aver that the allegations of the first sentence of Paragraph 11 consist entirely of legal conclusions to which a response is neither required nor appropriate. Admit the allegations of the second sentence of Paragraph 11.

12.     Aver that the allegations of the first sentence of Paragraph 12 consist entirely of a legal conclusion to which a response is neither required nor appropriate. Deny the allegations of the second and third sentences of Paragraph 12, except admit that prior to its merger with Bank of America Corporation ("BAC") in January 2006, MBNA maintained its corporate headquarters and principal executive offices in this District.

13.     Deny the allegations of Paragraph 13, except (a) admit that Defendants used telephones and U.S. mail in the ordinary course of MBNA's business; and (b) admit that during the Class Period, MBNA common stock was listed on the New York Stock Exchange.

14.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 14 and respectfully refer the Court to the filings referenced therein for a complete and accurate description of their contents.

15.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15 and respectfully refer the Court to the filings referenced therein for a complete and accurate description of their contents.

16.    Admit the allegations of Paragraph 16 as of the date of the filing of the Consolidated Complaint, except (a) deny that MBNA was the largest credit card issuer in the United States but aver that MBNA was the largest independent credit card issuer in the United States; and (b) aver that in January 2006, MBNA was merged into BAC.

17.    Admit that Bruce L. Hammonds was MBNA's President and Chief Executive Officer and an MBNA director during the Class Period.

18.    Admit that Kenneth A. Vecchione was Vice Chairman and Chief Financial Officer of MBNA and MBNA America Bank, N.A. during the Class Period.

19.    Admit that Richard Struthers was Vice Chairman and Chief Lending Officer of MBNA during the Class Period and aver that the Court dismissed plaintiffs' Section 10(b) claim against Richard Struthers for failure to state a claim on which relief can be granted.

20.    Admit that John Cochran was Chief Operating Officer of MBNA during the Class Period and aver that the Court dismissed plaintiffs' Section 10(b) claim against John Cochran for failure to state a claim upon which relief can be granted.

21.    Admit that Charles Krulak was Chief Accounting Officer of MBNA during the Class Period.

22.    Admit that plaintiffs refer to Bruce L. Hammonds, Kenneth A. Vecchione, Richard Struthers, John Cochran and Charles Krulak collectively as the "Individual Defendants" in the Consolidated Complaint.

23.    Deny the allegations of Paragraph 23, except admit that plaintiffs purport to bring this action on behalf of the putative class described in that paragraph.

24.    Deny the allegations of Paragraph 24, except admit that MBNA's common stock was traded on the New York Stock Exchange during the Class Period.

25.    Deny the allegations of Paragraph 25.

26.    Deny the allegations of Paragraph 26, except deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning plaintiffs' counsel and plaintiffs' interests.

27.    Deny the allegations of Paragraph 27.

28.    Deny the allegations of Paragraph 28.

29.    Deny the allegations of Paragraph 29, except (a) admit that during the Class Period, MBNA was the largest independent credit card issuer in the United States; (b) respectfully refer the Court to MBNA's Form 10-K filings for the years 1991 through 2004 for a description of MBNA's financial performance during those years; and (c) deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning Chase, Citigroup and all other financial services companies.

30.    Deny the allegations of Paragraph 30, except (a) admit that during the Class Period, MBNA made a variety of loans to consumers and small businesses,

including through the issuance of consumer credit cards, consumer loans, home equity loans, business credit cards and other business lending products, as reported in MBNA's Form 10-K filing with the SEC dated March 15, 2005; (b) admit that one of MBNA's goals in offering home equity loans was to diversify its loan portfolio; and (c) respectfully refer the Court to MBNA's Form 10-K filings with the SEC during the Class Period for a description of MBNA's home equity lending business.

31.    Deny the allegations of Paragraph 31, except (a) admit that consumer credit growth slowed in 2004 and in the first quarter of 2005, as reported in MBNA's Form 10-Q filing with the SEC dated May 10, 2005; (b) admit that MBNA's net interest margins in the first quarter of 2005 were lower than its net interest margins in the first quarter of 2004, as reported in MBNA's Form 10-Q filing with the SEC dated May 10, 2005 and MBNA's Form 10-Q filing with the SEC dated May 10, 2004; and (c) aver that MBNA's first quarter 2005 performance was adversely affected by various factors, including unexpectedly high payment volumes.

32.    Deny the allegations of Paragraph 32, except (a) admit that the credit card industry was competitive during the Class Period; (b) admit that MBNA's asset growth and new domestic credit card accounts were lower in 2004 than they had been in 2003, as reported in MBNA's Form 10-K filing with the SEC dated March 15, 2005; and (c) respectfully refer the Court to the analyst report cited in Paragraph 32 for a complete and accurate description of its contents.

33.    Deny the allegations of Paragraph 33, except (a) admit that during the Class Period MBNA both lost and gained customers for a variety of reasons; (b) admit

that MBNA's payment rates increased during the Class Period, as reported in MBNA's Form 10-Q filing with the SEC dated May 10, 2005; (c) deny knowledge or information sufficient to form a belief as to the truth of the allegation concerning what consumers view as "sensible alternatives"; and (d) respectfully refer the Court to the analyst reports cited therein for a complete and accurate description of their contents.

34.    Deny the allegations of Paragraph 34, except (a) aver that the FDIC's web site reports that MBNA America Delaware Bank, N.A. had "1-4 family residential" net loans outstanding of $100,255,000 as of September 30, 2004 and $255,286,000 as of December 31, 2004; and (b) aver that the total size of MBNA's credit card loan portfolio was $10,020,034,000 as of September 30, 2004, and was $12,468,200,000 as of December 31, 2004, as reported, respectively, in MBNA's Form 10-Q filing with the SEC dated November 9, 2004, and MBNA's Form 10-K filing with the SEC dated March 15, 2005.

35.    Deny the allegations of Paragraph 35, except (a) admit that MBNA's January 20, 2005 Fourth Quarter 2004 Business Presentation to investors reported new accounts for domestic credit card loans for the three months ending December 31, 2004 of 1,005,000 and new accounts for domestic credit card loans for the three months ending December 31, 2003 of 1,780,000; (b) admit that the same presentation reported new accounts for domestic credit card loans for the twelve months ending December 31, 2004, of 5,485,000 and new accounts for domestic credit card loans for the twelve months ending December 31, 2003, of 6,830,000; and (c) respectfully refer the Court to that presentation for a complete and accurate description of its contents.

36.    Deny the allegations of Paragraph 36, except (a) aver that MBNA's yield on average interest-bearing assets was 8.55% in 2004 as compared with 11.5% in 2001, as reported, respectively, in MBNA's Form 10-K filing with the SEC, dated March 15, 2005 and MBNA's Form 10-K filing with the SEC, dated March 22, 2002; (b) aver that MBNA's net interest margin in the fourth quarter of 2004, as reported in MBNA's Form 10-K filing dated March 15, 2005, was 5.33% and that MBNA's net interest margin in the first quarter of 2001, as reported in MBNA's Form 10-Q filing dated May 15, 2001, was 4.33%; and (c) respectfully refer the Court to the analyst report cited in this paragraph for a complete and accurate description of its contents.

37.    Deny the allegations of Paragraph 37.

38.    Deny the allegations of Paragraph 38, except (a) admit that MBNA used securitization as one source to meet its funding needs; and (b) respectfully refer the Court to MBNA's Form 10-Q filing dated November 9, 2004 for a description of the total amounts of MBNA's securitized loans, managed loans and credit card loans outstanding as of September 30, 2004.

39.    Deny the allegations of Paragraph 39 and respectfully refer the Court to MBNA's Form 10-K filing dated March 15, 2005 for a description of MBNA's credit card securitization process.

40.    Deny the allegations of Paragraph 40, except (a) admit that MBNA retained an interest-only strip receivable; (b) respectfully refer the Court to MBNA's Form 10-K filing dated March 15, 2005 for a description of that receivable and MBNA's

credit card securitization process; and (c) respectfully refer the Court to the handbook cited in this paragraph for a complete and accurate description of its contents.

41.     Deny the allegations of Paragraph 41, except (a) admit that MBNA's Form 10-K filing dated March 15, 2005 contains the quoted text; and (b) respectfully refer the Court to that filing for a complete and accurate description of its contents.

42.     Deny the allegations of Paragraph 42, except (a) admit that MBNA's Form 10-K filing dated March 15, 2005 contains a portion of the text quoted in that paragraph; and (b) respectfully refer the Court to that filing for a complete and accurate description of its contents.

43.     Deny the allegations of Paragraph 43, except (a) deny knowledge or information sufficient to form a belief as to the accuracy or source of the alleged quote; (b) aver that MBNA's Form 10-K filing dated March 15, 2005 describes the quarterly re-evaluation of, and accounting for, the interest-only strip receivable; and (c) respectfully refer the Court to that filing for a complete and accurate description of its contents.

44.     Deny the allegations of Paragraph 44.

45.     Deny the allegations of Paragraph 45, except admit that MBNA's accounting for the interest-only strip receivable was based in part on certain assumptions and estimates made in accordance with applicable accounting principles, regulations and rules.

46.     Deny the allegations of Paragraph 46, except deny knowledge or information sufficient to form a belief as to what plaintiffs were purportedly told by the "former Manager in the MBNA Securitization Department" referred to in this paragraph.

47.     Deny the allegations of Paragraph 47, except deny knowledge or information sufficient to form a belief as to what plaintiffs were purportedly told by the "former MBNA employee" referred to in this paragraph.

48.     Deny the allegations of Paragraph 48.

49.     Deny the allegations of Paragraph 49, except deny knowledge or information sufficient to form a belief as to what plaintiffs were purportedly told by the "former MBNA financial analyst" referred to in this paragraph.

50.     Deny the allegations of Paragraph 50, except (a) deny knowledge or information sufficient to form a belief as to what plaintiffs were purportedly told by the "former MBNA financial analyst" referred to in this paragraph; and (b) respectfully refer the Court to the applicable accounting principles, regulations and rules for a complete and accurate statement of their contents.

51.     Deny the allegations of Paragraph 51, except deny knowledge or information sufficient to form a belief as to what plaintiffs were purportedly told by the "former MBNA financial analyst" referred to in this paragraph.

52.     Deny the allegations of Paragraph 52, except deny knowledge or information sufficient to form a belief as to what plaintiffs were purportedly told by the "former MBNA financial analyst" referred to in this paragraph.

53.    Deny the allegations of Paragraph 53, except deny knowledge or information sufficient to form a belief as to what plaintiffs were purportedly told by the "former MBNA financial analyst" and "former MBNA employee" referred to in this paragraph.

54.    Deny the allegations of Paragraph 54, except deny knowledge or information sufficient to form a belief as to what plaintiffs were purportedly told by the "former MBNA financial analyst" and the "former MBNA employee" referred to in this paragraph.

55.    Deny the allegations of Paragraph 55, except deny knowledge or information sufficient to form a belief as to what plaintiffs were purportedly told by the "former MBNA financial analyst" referred to in this paragraph.

56.    Deny the allegations of Paragraph 56, except deny knowledge or information sufficient to form a belief as to what plaintiffs were purportedly told by the "former MBNA financial analyst" referred to in this paragraph.

57.    Deny the allegations of Paragraph 57, except deny knowledge or information sufficient to form a belief as to what plaintiffs were purportedly told by the "aforementioned analyst" referred to in this paragraph.

58.    Deny the allegations of Paragraph 58.

59.    Deny the allegations of Paragraph 59, except (a) admit that the April 21, 2005 press release reported that MBNA's first-quarter 2005 net income was $0.02 per common share compared with $0.40 per common share for the first quarter of 2004;

-11-

(b) admit that the April 21, 2005 press release reported that MBNA's net income in the first quarter of 2005 included a restructuring charge of $767.6 million pre-tax and that, without the restructuring charge, net income was $0.40 per common share; (c) admit that the April 21, 2005 press release reported that MBNA's first-quarter 2005 earnings reflected a net loss from securitization activity of $206.6 million; (d) respectfully refer the Court to the April 21, 2005 press release for a complete and accurate description of its contents; and (e) respectfully refer the Court to Thompson Financial for a complete and accurate description of the survey referred to in this paragraph.

60.      Deny the allegations of Paragraph 60, except (a) admit that the closing price of MBNA common stock on April 20, 2005 was $23.11 and that the closing price of MBNA common stock on April 21, 2005 was $19.28; and (b) admit that MBNA's first quarter of 2005 earnings reflected the revaluation of the interest-only strip receivable, which resulted in a net loss from securitization activity of $206.6 million, as reported in MBNA's Form 10-Q filing with the SEC dated May 10, 2005.

61.      Deny the allegations of Paragraph 61 and respectfully refer the Court to the article cited therein for a complete and accurate description of its contents.

62.      Deny the allegations of Paragraph 62 and respectfully refer the Court to the documents cited therein for a complete and accurate description of their contents.

63.      Deny the allegations of Paragraph 63.

64.      Deny the allegations of Paragraph 64, except (a) aver that the first four sentences consist entirely of legal conclusions to which a response is neither required nor

appropriate; (b) admit that the fifth sentence quotes from Statement of Accounting Standards ("SAS") No. 1 § 110.03; and (c) respectfully refer the Court to applicable SEC and accounting principles, regulations and rules for a complete and accurate statement of their contents.

65.    Deny the allegations of Paragraph 65 and respectfully refer the Court to MBNA's Form 10-K dated March 15, 2005 for a complete and accurate description of its contents.

66.    Deny the allegations of Paragraph 66, except (a) admit that the Office of the Comptroller of the Currency Bulletin 99-15, dated April 5, 1999, contains the quoted text; and (b) respectfully refer the Court to that document for a complete and accurate description of its contents.

67.    Deny the allegations of Paragraph 67 and respectfully refer the Court to MBNA's Form 10-K dated March 15, 2005 for a complete and accurate description of its contents.

68.    Deny the allegations of Paragraph 68 and respectfully refer the Court to the documents cited in that paragraph for a complete and accurate description of their contents.

69.    Deny the allegations of Paragraph 69 and footnote 1 and respectfully refer the Court to applicable accounting principles, regulations and rules for a complete and accurate statement of their contents.

70.     Deny the allegations of Paragraph 70, except (a) admit that Statement of Financial Accounting Standards No. 5 ¶ 8 contains the quoted text; and (b) respectfully refer the Court to applicable accounting principles, regulations and rules for a complete and accurate statement of their contents.

71.     Deny the allegations of Paragraph 71, except (a) deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning what the SEC considers important or the reasons it promulgated Regulation S-X; (b) admit that 17 C.F.R. § 210.10-01 contains the quoted text; and (c) respectfully refer the Court to that regulation for a complete and accurate description of its contents.

72.     Admit that FASB Statement of Concepts No. 5 ¶ 87 contains the quoted text and respectfully refer the Court to that pronouncement for a complete and accurate description of its contents.

73.     Deny the allegations of Paragraph 73 and respectfully refer the Court to MBNA's April 21, 2005 press release for a complete and accurate description of its contents.

74.     Deny the allegations of Paragraph 74.

75.     Deny the allegations of Paragraph 75, except (a) admit that SAB No. 99 contains the quoted text; (b) respectfully refer the Court to that pronouncement for a complete and accurate description of its contents; (c) admit that MBNA's January 20, 2005 press release contains the quoted text; and (d) respectfully refer the Court to that press release for a complete and accurate description of its contents.

76.     Deny the allegations of Paragraph 76 and respectfully refer the Court to the cited provisions of GAAP for a complete and accurate statement of their contents.

77.     Aver that the allegations of Paragraph 77 consist entirely of legal conclusions to which a response is neither required nor appropriate and respectfully refer the Court to the SEC forms and regulations cited therein for a complete and accurate description of their contents.

78.     Aver that the allegations of Paragraph 78 consist entirely of legal conclusions to which a response is neither required nor appropriate and respectfully refer the Court to the SEC Interpretive Release cited therein for a complete and accurate description of its contents.

79.     Aver that the allegations of Paragraph 79 consist entirely of legal conclusions to which a response is neither required nor appropriate.

80.     Admit the allegations of Paragraph 80 accurately quote text in MBNA's January 20, 2005 press release and respectfully refer the Court to that press release for a complete and accurate description of its contents.

81.     Admit the allegations of Paragraph 81 and respectfully refer the Court to the Form 8-K filing referenced therein for a complete and accurate description of its contents.

82.     Deny the allegations of Paragraph 82.

83.     Deny the allegations of Paragraph 83, except (a) admit that MBNA hosted a conference call for analysts on January 21, 2005; and (b) respectfully refer the Court to

the transcript of that conference call for a complete and accurate description of its contents.

84.    Admit the allegations of Paragraph 84 and respectfully refer the Court to the Form 8-K filing referenced therein for a complete and accurate description of its contents.

85.    Deny the allegations of Paragraph 85 and respectfully refer the Court to the transcript of the January 21, 2005 conference call with analysts for a complete and accurate description of its contents.

86.    Deny the allegations of Paragraph 86.

87.    Deny the allegations of Paragraph 87, except (a) admit that MBNA filed its Form 10-K with the SEC on March 15, 2005; (b) respectfully refer the Court to that filing for a complete and accurate description of its contents; and (c) admit that MBNA's Form 10-K dated March 15, 2005 was signed by Bruce L. Hammonds and Kenneth A. Vecchione.

88.    Deny the allegations of Paragraph 88.

89.    Admit the allegations of Paragraph 89 accurately quote certifications signed by Bruce L. Hammonds and Kenneth A. Vecchione in connection with MBNA's Form 10-K dated March 15, 2005 and respectfully refer the Court to those certifications and MBNA's Form 10-K filing for a complete and accurate description of their contents.

90.    Deny the allegations of Paragraph 90, except (a) admit that each of the Defendants owned MBNA stock and held management or board positions with MBNA

during the Class Period; and (b) aver that the characterization of Defendants as "controlling persons" represents a legal conclusion to which a response is neither required nor appropriate.

91.    Deny the allegations of Paragraph 91.

92.    Deny the allegations of Paragraph 92.

93.    Deny the allegations of Paragraph 93.

94.    Deny the allegations of Paragraph 94.

95.    Deny the allegations of Paragraph 95, except deny knowledge or information sufficient to form a belief as to what plaintiffs were purportedly told by the "former MBNA financial analyst" referred to in this paragraph.

96.    Deny the allegations of Paragraph 96, except deny knowledge or information sufficient to form a belief as to what plaintiffs were purportedly told by the "former MBNA internet architect" referred to in this paragraph.

97.    Deny the allegations of Paragraph 97, except deny knowledge or information sufficient to form a belief as to what plaintiffs were purportedly told by the "former MBNA internet architect" referred to in this paragraph.

98.    Deny the allegations of Paragraph 98, except admit that, at times during the Class Period, the Individual Defendants were privy to MBNA's confidential financial information.

99.    Deny the allegations of Paragraph 99, except admit that the Individual Defendants and others held and sold shares of MBNA stock.

100.    Deny the allegations of Paragraph 100 and respectfully refer the Court to the SEC Form 4 filings of Bruce L. Hammonds, Kenneth A. Vecchione, Richard Struthers, John Cochran and Charles Krulak for a description of these individuals' MBNA stock sales from January 2001 through March 2005.

101.    Deny the allegations of Paragraph 101.

102.    Deny the allegations of Paragraph 102.

103.    Deny the allegations of Paragraph 103, except (a) admit that the allegations accurately quote *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1339 (S.D. Fla. 1999) and 15 U.S.C. § 78u-5(b)(2)(A); and (b) respectfully refer the Court to that opinion and statute for a complete and accurate description of their contents.

104.    Deny the allegations of Paragraph 104, except deny knowledge or information sufficient to form a belief as to what plaintiffs intend to rely upon.

105.    Deny the allegations of Paragraph 105, except (a) admit that MBNA's March 31, 2005 SEC Form 10-Q reflected 1,267,661,327 shares of common stock outstanding and respectfully refer the Court to that filing for a complete and accurate description of its contents; (b) admit that during the Class Period, MBNA's shares were listed on the New York Stock Exchange; (c) admit that during the Class Period, MBNA made certain filings with the SEC, including filings on SEC Forms 10-K, 10-Q and 8-K; (d) deny knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 105(d) and 105(e); and (e) admit that during the Class Period,

MBNA conveyed information to the public in various ways, including through the issuance of press releases.

106.   Deny the allegations of Paragraph 106.

107.   In answer to the allegations of Paragraph 107, incorporate and restate their answers to Paragraphs 1 through 106 of the Consolidated Complaint as if fully set forth herein.

108.   Deny the allegations of Paragraph 108.

109.   Deny the allegations of Paragraph 109.

110.   Deny the allegations of Paragraph 110 and respectfully refer the Court to the applicable SEC regulations for a complete and accurate statement of their contents.

111.   Deny the allegations of Paragraph 111.

112.   Deny the allegations of Paragraph 112.

113.   Deny the allegations of Paragraph 113.

114.   Deny the allegations of Paragraph 114, except deny knowledge or information sufficient to form a belief as to the truth of the allegation concerning acquisitions of MBNA stock by plaintiffs and other members of the putative class.

115.   Deny the allegations of Paragraph 115, except deny knowledge or information sufficient to form a belief as to the truth of the allegation concerning the beliefs and hypothetical actions of plaintiffs and other members of the putative class.

116.    Deny the allegations of Paragraph 116 and further aver that the allegations of that paragraph consist entirely of legal assertions.

117.    Deny the allegations of Paragraph 117.

118.    In answer to the allegations of Paragraph 118, incorporate and restate their answers to Paragraphs 1 through 117 of the Consolidated Complaint as if fully set forth herein.

119.    Deny the allegations of Paragraph 119.

120.    Deny the allegations of Paragraph 120.

121.    Deny the allegations of Paragraph 121.

122.    Deny all of the allegations of the Consolidated Complaint not specifically admitted above.

## DEFENSES

Defendants state the following defenses:

### FIRST DEFENSE

The Consolidated Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Plaintiffs' and the other members of the putative classes' claims are barred, in whole or in part, by the safe harbor provisions of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-5.

<u>THIRD DEFENSE</u>

Plaintiffs' and the other members of the putative classes' claims are barred for failure to join one or more indispensable parties.

<u>FOURTH DEFENSE</u>

Plaintiffs' and the other members of the putative classes' claims are barred, in whole or in part, by release, *res judicata* or issue preclusion.

<u>FIFTH DEFENSE</u>

The relief sought in the Consolidated Complaint is barred, in whole or in part, by laches, waiver, estoppel and/or unclean hands.

<u>SIXTH DEFENSE</u>

Plaintiffs and the other members of the putative class do not have standing.

<u>SEVENTH DEFENSE</u>

Plaintiffs and other members of the putative claims have not suffered loss or injury in fact.

<u>EIGHTH DEFENSE</u>

Defendants complied with all applicable laws, regulations and rules, did not commit any manipulative or deceptive acts, and at all times acted without scienter or any intention to defraud.

## NINTH DEFENSE

Any damages for which the plaintiffs and other members of the putative class seek to recover were in fact caused by actions or omissions of the plaintiffs, members of the putative class and/or third parties.

## TENTH DEFENSE

Plaintiffs' and the other members of the putative classes' claims are barred, in whole or in part, by the relevant statutes of limitation.

## ELEVENTH DEFENSE

Plaintiffs and other members of the putative class are not entitled to any recovery or remedy to the extent that they (or persons or entities acting on their behalf) knew, or in the exercise of reasonable diligence or care could have known, the facts concerning the alleged untruths, misstatements, omissions, devices, schemes, artifices, acts, practices or courses of business alleged in the Consolidated Complaint.

## TWELFTH DEFENSE

None of the alleged misrepresentations (by way of alleged misstatement or omission) or conduct was materially manipulative or deceptive in view of (*inter alia*) the total mix of information available to plaintiffs and other members of the putative class.

## THIRTEENTH DEFENSE

Plaintiffs have failed to meet their burden of pleading loss causation, and cannot demonstrate any link between the alleged misrepresentations and the drop in MBNA's stock price.

## FOURTEENTH DEFENSE

Any injury allegedly sustained by plaintiffs or by any putative class member was not directly or proximately caused by any conduct or act of Defendants or by any person or entity whose acts may be attributed to Defendants for any reason, including theories of vicarious and secondary liability.

## FIFTEENTH DEFENSE

This action is not properly maintainable as a class action.

## SIXTEENTH DEFENSE

Plaintiffs' claims and/or the claims of any other members of the putative class that plaintiffs purport to represent are barred, in whole or in part, to the extent that the damages sought exceed those permitted under the Securities Exchange Act of 1934, the Private Securities Litigation Reform Act of 1995, common law, or any other applicable statute, rule or regulation.

## SEVENTEENTH DEFENSE

The individual Defendants cannot be liable as a "controlling person" under Section 20(a) of the Securities Exchange Act of 1934 because, among other things, there is no primary securities law violation and the individual Defendants are not culpable participants in any underlying fraud.

## EIGHTEENTH DEFENSE

Defendants specifically give notice that they intend to rely upon such other defenses as may become available by law or pursuant to statute, or as may be

discovered during discovery in this case, and hereby reserve the right to amend their

Answer and assert such defenses.

YOUNG CONAWAY STARGATT & TAYLOR, LLP


___/s/ Richard H. Morse_____
Richard H. Morse (No. 531)
rmorse@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

*Attorneys for Defendants*

*Of Counsel*:
Richard J. Urowsky
Richard C. Pepperman, II
Stacey R. Friedman
Ryan C. Williams
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000


August 6, 2007

## CERTIFICATE OF SERVICE

I, Tammy L. Mercer, hereby certify that on August 6, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of Court using CM/ECF which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jeffrey S. Goddess, Esquire
> Rosenthal Monhait Gross & Goddess, P.A.
> Mellon Bank Center
> 919 Market Street, Suite 1401
> P. O. Box 1070
> Wilmington, DE 19899
>
> Brian D. Long, Esquire
> Rigrodsky & Long, P.A.
> 919 North Market Street, Suite 980
> Wilmington, DE 19801
>
> Ralph Nicholas Sianni, Esquire
> Grant & Eisenhofer, P.A.
> Chase Manhattan Centre
> 1201 North Market Street
> Wilmington, DE 19801

I further certify that on August 6, 2007, I also caused copies of the foregoing document to be served by hand on the above-listed counsel of record

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> /s/ Tammy L. Mercer (I.D. No. 4957)
> _____
> Tammy L. Mercer (I.D. No. 4957)
> 17th Floor, Brandywine Building
> 1000 West Street
> P.O. Box 391
> Wilmington, Delaware 19899-0391
> (302) 571-6651
> tmercer@ycst.com
>
> Attorneys for Defendants