UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| IN RE MBNA CORP. SECURITIES LITIGATION | Case No. 1:05-CV-00272-GMS CONSOLIDATED |
|---|---|

**OPENING BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE CONSOLIDATED AMENDED COMPLAINT PURSUANT TO RULE 15(a)**

Dated: August 1, 2008

Seth D. Rigrodsky (#3147)
sdr@rigrodskylong.com
Brian D. Long (#4347)
bdl@rigrodskylong.com
**RIGRODSKY & LONG, P.A.**
919 North Market Street, Suite 980
Wilmington, DE 19801
(302) 295-5310

***Plaintiffs' Liaison Counsel***

**MOTLEY RICE LLC**
William H. Narwold (admitted *pro hac vice*)
bnarwold@motleyrice.com
Robert T. Haefele (admitted *pro hac vice*)
rhaefele@motleyrice.com
William E. Applegate, IV (admitted *pro hac vice*)
wapplegate@motleyrice.com
Meghan S.B. Oliver (admitted *pro hac vice*)
moliver@motleyrice.com
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9450 (fax)

***Plaintiffs' Lead Counsel***

**TABLE OF CONTENTS**

Table of Authorities....iii

Nature and Stage of Proceedings....1

Summary of Argument....2

Statement of Facts....3

Argument....5

I. Rule 15(a) Requires that Leave to Amend be "Freely Given"....5

II. None of the Limited Circumstances Justifying a Denial of Leave to Amend Exists....6

A. Granting Plaintiffs Leave to Amend Will Not Unduly Prejudice Defendants....6

B. Plaintiffs Have Not Unduly Delayed in Seeking to Amend....8

C. The Proposed Amendments Address the Deficiencies Identified by the Court, and Will Not Be Futile....9

III. Documentary and Testamentary Evidence that Cochran and Struthers Knew that the Statements Made During the January 21, 2005 Investor Day were False and Misleading....10

A. November 22, 2004 Presentation entitled "2005 Plan Review" with Handwritten Notes, MBNA 0049225-55, Exhibit B to Oliver Affidavit..10

B. July 16, 2004 NIBT Update, MBNA 0337750-58, Exhibit C to Oliver Affidavit....10

C. September 9, 2004 Financial Update, MBNA 0051110-19, Exhibit D to Oliver Affidavit....11

D. October 4, 2004 Third Quarter 2004 Financial Review, MBNA 0050993-1005, Exhibit E to Oliver Affidavit....11

E. November 29, 2004 Financial Update, MBNA 0050909-12, Exhibit F to Oliver Affidavit....11

F. April 21, 2005 Cover Memorandum from Ken Vecchione to Bruce Hammonds, John Cochran, Lance Waver, Ric Struthers forwarding

        Memorandum from T. Wren to K. Vecchione regarding Payment Rate/Mortgage Refi Analysis MBNA 0344414-18, Exhibit G to Oliver Affidavit..........12

G. April 26, 2005 2004-2007 Strategic Plan Review, MBNA 0116779-818, Exhibit H to Oliver Affidavit..........12

H. January 10, 2005 MBNA Compensation and Stock Option Committee Materials, MBNA 0300840-68, Exhibit I to Oliver Affidavit..........12

Conclusion..........13

## TABLE OF AUTHORITIES

**Federal Cases**

*ACA Fin. Guaranty Corp. v. Advest, Inc.*, 512 F.3d 46, 56 (1st Cir. 2008)-------------------- 5, 6, 8

*Adams v. Gould Inc.,* 739 F.2d 858, 864 (3d Cir. 1984)---------------------------------------- *passim*

*Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006)------------------------------------------ 2, 6

*Belizan v. Hershon,* 434 F.3d 579, 583-84 (D.C. Cir. 2006)------------------------------------------ 5

*California Public Em'ees Retirement Sys. v. Chubb Corp.*, 394 F.3d 126, 163-65 (3d Cir. 2004) 8

*Cureton v. Nat'l Coll. Athletic Ass'n,* 252 F.3d 267, 273 (3d Cir. 2001) -------------------------- 3, 8

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) -----------------2,5,6

*In re Bristol-Myers Squibb Sec. Litig.*, 228 F.R.D. 221, 228 (D.N.J. 2005)------------------- 2, 7, 9

*In re Digital Island Sec. Litig.*, No. Civ. A. 02-57-GMS, 2002 WL 31667863 (D. Del. Nov. 25, 2002) ---------------------------------------------------------------------------- 8

*In re Hayes Lemmerz Int'l v. Cucuz,* 271 F. Supp. 2d 1007, 1019 (E.D. Mich. 2003) ----------- 6, 7

*In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1281-82 (N.D. Okla. 2007)------------------- 2, 7

*Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)------------------------------------------ 5, 8

*Payne v. Deluca*, No. 2:02-CV-1927, 2006 WL 3590014 * *14 (W.D. Pa. Dec. 11, 2006) ------------------------------------------------------------------------ 8, 9

*Smithkline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 116082 *6 (N.D. Ill. Jan. 24, 2000) ---------------------------------------------------------------------------- 8

*Werner v. Werner,* 267 F.3d 288, 297 (3d Cir. 2001)-------------------------------------------- 2, 5

*Winer Family Trust v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007) ---------------------------------- 6, 9

**Federal Statutes**

15 U.S.C. § 78j(b) ------------------------------------------------------------------------------- 1

**Federal Rules**

Federal Rule of Civil Procedure 15(a)---------------------------------------------------------- 1, 5

**Federal Regulations**

17 C.F.R. § 240.10b-5 ---------------------------------------------------------------------------------------- 1

Lead Plaintiff Société Général Securities Services Kapitalangegesellschaft mbH ("Société Générale") for account of the PT-Master Fund, by its counsel and on behalf of all plaintiffs, hereby respectfully submits this Opening Brief in Support of its Motion for Leave to Amend the Consolidated Amended Complaint Pursuant to Rule 15(a).

## NATURE AND STAGE OF PROCEEDINGS

This is a class action brought under the federal securities laws of the United States. The Consolidated Amended Complaint ("Complaint") was filed on December 12, 2005. D.I. 37. The Complaint alleged violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5 (collectively, "Section 10(b)"). Defendants moved to dismiss, D.I. 40, and on July 6, 2007, the Court denied the motion as to defendants MBNA Corp., Hammonds, Vecchione and Krulak, and granted it as to defendants Cochran and Struthers, D.I. 60. The Court held that plaintiffs' allegations "are insufficient to establish a sufficiently strong inference of scienter with respect to Struthers or Cochran," and further explained that, "[t]he plaintiffs' blanket allegations against 'the defendants' and 'management' do not meet the particularity requirements of Rule 9(b) or the PSLRA." D.I. 60 at 13.

Plaintiffs served discovery requests beginning on August 28, 2008, D.I. 72, and defendants began their rolling production of documents on October 23, 2007. Depositions commenced on January 31, 2008, and continued until July 2, 2008. Plaintiffs now move to amend the Complaint pursuant to Federal Rule of Civil Procedure 15(a).

## SUMMARY OF ARGUMENT

Plaintiffs seek to amend the Complaint to cure what the court found to be insufficient allegations of scienter against Cochran and Struthers. Plaintiffs seek only to bolster previous allegations, not to introduce new and distinct theories.

1. Rule 15(a) provides that the court "should freely give leave" to amend "when justice so requires." This philosophy of allowing liberal leave to amend has been unaltered by the PSLRA or the courts. *See e.g.*, *Werner v. Werner*, 267 F.3d 288, 297 (3d Cir. 2001). In fact, the stringent pleading standards of the PSLRA virtually require that plaintiffs have sufficient opportunity later to amend to correct any deficiencies in the complaint based on newly acquired evidence.
2. There are limited circumstances in which leave to amend should be denied: undue prejudice to the nonmoving party, undue delay, bad faith or dilatory motive on the part of the movant, previous unsuccessful attempts to cure deficiencies in the pleadings, and futility of amendment. *Eminence Capital*, 316 F.3d at 1051-52. *See also, Adams*, 739 F.2d at 864. Because none of those circumstances is present here, plaintiffs should be granted leave to amend the Complaint.
3. In the Third Circuit, the possibility of undue prejudice to the nonmoving party is the "touchstone" of the Rule 15(a) analysis. *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). The nonmoving party must show more than mere prejudice, *In re Bristol-Myers Squibb Sec. Litig.*, 228 F.R.D. 221, 228 (D.N.J. 2005), and bare assertions of undue prejudice will not suffice, *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1281-82 (N.D. Okla. 2007). Permitting plaintiffs to amend

would not prejudice defendants, whose counsel has been actively involved in the litigation, and who have themselves produced documents and been deposed.

4. A court may deny leave to amend if the moving party has unduly delayed in seeking to amend, but mere delay does not warrant denial of leave to amend. *Cureton v. Nat'l Coll. Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Plaintiffs have acted promptly and in good faith in seeking to amend. This is not a case where plaintiffs have engaged in gamesmanship and deliberately delayed before seeking to amend, nor is it a case where an unjustifiable length of time has passed prior to the filing of this Motion.

5. Finally, though a court may deny leave to amend on grounds of futility, that is not the case here. The documentary and testamentary evidence uncovered during discovery enable plaintiffs to sufficiently bolster their allegations of scienter against Cochran and Struthers so as to state a claim sufficient to withstand the heightened pleading standard of the PSLRA.

Accordingly, plaintiffs should be granted leave to file the Proposed Amended Complaint attached as Exhibit A to the Affidavit of Meghan S.B. Oliver ("Oliver Affidavit")[1].

## STATEMENT OF FACTS

In this securities class action, plaintiffs contend that in January 2005 and the months thereafter, defendants knowingly misstated MBNA's 2004 financial results and condition, and that on January 20, 2005 gave false earnings guidance for 2005 and subsequent years. Specifically, on January 20, 2005, defendants issued a press release on January 20, 2005, the first day of the Class Period, in which they reported MBNA's financial results for the fourth quarter

1 Plaintiffs have made minor changes, such as the correction of typographical errors and removal of redundancies, in addition to the changes relating to the allegations against Cochran and Struthers.

of 2004, and that net income had increased 15% year over year. That same day, MBNA filed a Form 8-K which repeated the results detailed in the press release. Senior executives hosted MBNA's first-ever Investor Day the following day on January 21, 2005. During that call, defendants Hammonds and Vecchione reiterated the 2004 financial results and issued earnings guidance of 10% EPS growth for 2005 and 12% in subsequent years. MBNA also filed a Form 8-K that day, reiterating the earnings guidance issued during the call. Executives reiterated this earnings guidance in presentations to Smith Barney Citigroup on January 27, 2005 and to Credit Suisse First Boston on February 9, 2005.

Defendants' misconduct came to light on April 21, 2005, when MBNA was forced to report that its earnings per share would be "significantly below" its 10% target for 2005. It also announced that its first-quarter earnings fell 93%, year-over-year to $0.02 a share, before a restructuring charge, and that earnings were adversely affected by a $206.6 million write-down of the Company's IO strip receivable.

Defendants moved to dismiss this action claiming that Plaintiffs had failed to state a cause of action. As discussed above, the Court granted the motion as to defendants Cochran and Struthers. D.I. 60 at 13. Discovery commenced shortly thereafter and defendants produced, on a rolling basis, just over 600,000 pages of documents, including some from former defendants Cochran's and Struthers's files. The parties have taken a total of 23 depositions in this case, including depositions of Cochran and Struthers.

During discovery, which has recently concluded, Plaintiffs uncovered evidence that former defendants Richard K. Struthers and John R. Cochran knew that statements made by defendants Hammonds and Vecchione during the January 21, 2005 Analyst Call in which

Cochran and Struthers participated were false and misleading, yet they remained silent and did nothing to correct those statements.

## ARGUMENT

### I. Rule 15(a) Requires that Leave to Amend Be "Freely Given"

Federal Rule of Civil Procedure 15(a) provides, "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." A motion to amend is within the discretion of the district court, but this discretion is limited by the "liberal amendment philosophy" of Rule 15(a). *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984).

The Third Circuit has rejected a narrower reading of Rule 15(a) in the context of the PSLRA, and has held that even in private securities litigation, liberal leave to amend should be granted. *Werner*, 267 F.3d at 297 ("We will not add to the strict discovery restrictions in the Private Securities Litigation Reform Act ("PSLRA") by narrowly construing Rule 15 in this case, even at this late stage in the litigation."). Other circuits have recognized the same principle. *ACA Fin. Guaranty Corp. v. Advest, Inc.*, 512 F.3d 46, 56 (1st Cir. 2008) ("To read the PSLRA to constrict Rule 15(a) would disturb the legislative balance struck by the Act."); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (holding that even in the context of the PSLRA, there "exists a *presumption* under Rule 15(a) in favor of granting leave to amend") (emphasis in original); *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). *See also Belizan v. Hershon*, 434 F.3d 579, 583-84 (D.C. Cir. 2006) (holding that the PSLRA does not modify Rule 15(a)).

As the *Eminence Capital* court recognized, "In this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error." 316 F.3d at

1052. "A blanket rule that the PSLRA modifies Rule 15(a) would tip the scales too far, compromising plaintiffs' ability to have meritorious claims presented in court." *ACA Fin.*, 512 F.3d at 56. Other courts have approved of amendment in the exact situation presented here, where plaintiffs seek to amend to add more specific factual allegations against previously dismissed or newly added individual defendants. For example, the Third Circuit envisioned a situation in which a securities fraud case proceeds past the pleadings stage against a corporation and discovery reveals evidence against individuals. *Winer Family Trust v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007). In that situation, the court stated that the plaintiff may seek to amend to assert claims against individual defendants. *Id.* At least one other court considering the same situation has drawn the same conclusion. *In re Hayes Lemmerz Int'l v. Cucuz*, 271 F. Supp. 2d 1007, 1019 (E.D. Mich. 2003) (stating in dicta that though it was dismissing the third party auditor, it was doing so without prejudice and plaintiffs could subsequently amend to reassert claims against that third party auditor).

## II. None of the Limited Circumstances Justifying a Denial of Leave to Amend Exists

Courts have recognized that even in the context of the PSLRA, there are limited circumstances in which leave to amend should be denied: undue prejudice to the nonmoving party, undue delay, bad faith or dilatory motive on the part of the movant, previous unsuccessful attempts to cure deficiencies in the pleadings, and futility of amendment. *Eminence Capital*, 316 F.3d at 1051-52. *See also, Adams*, 739 F.2d at 864. Because none of those circumstances is present here, plaintiffs should be granted leave to amend the Complaint.

### *A. Granting Plaintiffs Leave to Amend Will Not Unduly Prejudice Defendants*

The Third Circuit considers the possibility of undue prejudice to the nonmoving party the "touchstone" of the Rule 15(a) inquiry. *Arthur*, 434 F.3d at 204. The nonmoving party must

show more than mere prejudice. *In re Bristol-Myers*, 228 F.R.D. at 228. It must show an "unfair disadvantage or deprivation" or "serious impairment of the nonmovant's ability to present its case." *Id.* "Bare, conclusory" statements of substantial prejudice are insufficient. *In re Williams Sec. Litig.*, 496 F. Supp. 2d at 1281-82. Also, the inconvenience inherent in defending a lawsuit does not constitute "undue prejudice". *In re Hayes Lemmerz Int'l, Inc. v. Cucuz*, 271 F. Supp. 2d 1007, 1019 n.9 (E.D. Mich. 2003) ("Similarly, here, KPMG will be inconvenienced if they are brought back into the lawsuit, but that inconvenience is outweighed by the putative class members' right to recover under federal securities laws for knowing and/or reckless conduct.")

Defendants will not suffer undue prejudice if plaintiffs amend their Complaint. Plaintiffs seek only to bolster previous allegations with additional facts, not to add new and distinct theories to their Complaint. The allegations against both Cochran and Struthers, and the facts underlying those allegations, are similar to and overlap with those against Hammonds, Vecchione and Krulak. All five were present at the January 21, 2005 Investor Day when false statements were made. All five individuals were members of the Executive Committee, attended many of the same meetings and received many of the same briefings throughout 2004 and 2005.

Additionally, both Cochran and Struthers continue to be represented by the same counsel who represent MBNA and Defendants Hammonds, Vecchione and Krulak, and who have been deeply involved in the litigation since it began. They are intimately familiar with plaintiffs' theories, as well as the evidence in this case. Both Cochran and Struthers were deposed in this case, and produced documents from their files in response to plaintiffs' Requests for Production. No new discovery will be required to defend the claims against Cochran and Struthers. Both parties have had ample opportunity to develop factual evidence in their favor, and Defendants will suffer no "impairment" of their ability to present their case.

This is also not a situation where plaintiffs are seeking a third or fourth bite at the proverbial apple. To the contrary, this is the first time plaintiffs have sought leave of the Court to amend their Complaint, a fact which counsels in favor of allowing the proposed amendments. *Cf. California Public Em'ees Retirement Sys. v. Chubb Corp.*, 394 F.3d 126, 163-65 (3d Cir. 2004) (denying leave to amend a third time where plaintiffs added no facts that would cure the pleading deficiencies of the second amended complaint). Defendants will suffer no prejudice if the Court allows plaintiffs to amend – for the first time – their Complaint.

*B. Plaintiffs Have Not Unduly Delayed in Seeking to Amend*

A court may deny leave to amend where the moving party has unduly delayed in seeking to amend. *Cureton*, 252 F.3d at 273. The "mere passage of time," though, does not mandate denial of a motion to amend. *Id. See also*, *Adams*, 739 F.2d at 868; *Morse*, 290 F.3d at 800; *Smithkline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 116082 *6 (N.D. Ill. Jan. 24, 2000). Instead, the court must focus on a party's motives for not amending earlier, and whether the delay prejudices the nonmoving party or places an unwarranted burden on the court. *Adams*, 739 F.2d at 868.

A court may refuse leave to amend when the moving party has engaged in deliberate delay tactics. In one case, the court relied on the plaintiffs' gamesmanship in denying their motion to amend, and scolded plaintiffs for "waiting in the wings for a year and a half" until the Court ruled on the motion to dismiss. *ACA Fin.*, 512 F.3d at 57. *See also*, *In re Digital Island Sec. Litig.*, No. Civ. A. 02-57-GMS, 2002 WL 31667863 (D. Del. Nov. 25, 2002); *Payne v. Deluca*, No. 2:02-CV-1927, 2006 WL 3590014 * *14 (W.D. Pa. Dec. 11, 2006). Plaintiffs have engaged in no such bad-faith tactics here. The new evidence on which plaintiffs rely was not available to them prior to discovery.

Courts also consider the length of the delay and whether that delay prejudiced the nonmoving party. For example, one district court refused to permit plaintiff's "eleventh hour amendment" brought after defendants had filed for summary judgment and after a final pretrial conference had begun, finding that the amendment would have compelled defendants to engage in further discovery at that late stage in the proceedings. *In re Bristol-Myers*, 228 F.R.D. at 229. The case at bar bears no resemblance to that fact pattern. Summary judgment briefing is months away, expert discovery is about half complete, and the last deposition occurred just a few weeks ago.

C. *The Proposed Amendments Address the Deficiencies Identified by the Court, and Will Not Be Futile*

In determining the futility of further amendment, the court must "tak[e] all pleaded allegations as true and view[] them in a light most favorable to the plaintiff." *Winer Family Trust*, 503 F.3d at 331; *Payne*, 2006 WL 3590014 at *16. Plaintiffs have uncovered new evidence to support allegations that Cochran and Struthers had the requisite scienter. Plaintiffs do not seek merely to regurgitate or rephrase the same allegations that the Court previously dismissed as insufficient. Instead, plaintiffs have developed new facts that plaintiffs will use to bolster their scienter allegations against former defendants Cochran and Struthers. These new facts allow plaintiffs to state claims against Cochran and Struthers with sufficient particularity to comply with the heightened pleading standard of the PSLRA.

The documents listed in Section III, *infra*, contain evidence that Cochran and Struthers knew that the statements made during the Analyst Call on January 21, 2005 by defendants Hammonds and Vecchione were false and misleading. Both Cochran and Struthers participated in the call and did not correct the misstatements.

## III. Documentary and Testamentary Evidence that Cochran and Struthers Knew that the Statements Made During the January 21, 2005 Investor Day were False and Misleading

Plaintiffs seek to amend the Complaint to bolster the allegations of scienter against former defendants Cochran and Struthers, and in so doing, rely on the documents described below.

### *A. November 22, 2004 Presentation entitled "2005 Plan Review" with Handwritten Notes, MBNA 0049225-55, Exhibit B to Oliver Affidavit.*

The handwriting on this document belongs to Robert Lamantia, the Director of Corporate and Strategic Planning ("C&SP") at MBNA. Lamantia Dep. 214: 9–14. He testified that he reviewed the document with the Executive Team, including Cochran ("JC") and Struthers ("RKS") on Monday, November 22. According to this document and testimony by Mr. Lamantia, based on the plans that the business lines (e.g., U.S. Credit Card, Consumer Finance) had submitted, EPS growth in 2005 would be negative 5%, a full 15 percentage points below the guidance the Company issued at the January 21st Investor Day. Lamantia Dep. 218:19 – 220:1. Even worse, the C&SP sensitivity forecasted negative 14% EPS growth for 2005, 24 percentage points below the Company's January 21, 2005 EPS guidance.

### *B. July 16, 2004 NIBT Update, MBNA 0337750-58, Exhibit C to Oliver Affidavit.*

The U.S. Credit Card was the core of MBNA's business. Negative trends in loan growth, attrition, net interest income, and payment rates throughout 2004 and continuing into 2005 made MBNA's earnings guidance in early 2005 unrealistic and impossible to meet. These negative trends also put increasing strain on the IO strip, forcing MBNA to take a write-down at the end of the first quarter, 2005. This document, which outlines the discussion at a NIBT/Expense Challenge Meeting that Cochran and Struthers attended, shows that as early as July 2004, U.S. Card loan growth was substantially below the 2004 Plan. This document also forecasts U.S.

Card net income before taxes ("NIBT") growth as being well below plan for the second half of 2004.

C. *September 9, 2004 Financial Update, MBNA 0051110-19, Exhibit D to Oliver Affidavit.*

This document, which Cochran and Struthers discussed with other members of senior management, shows that developed loan growth[2] for the U.S. Credit Card was much lower than it had been in 2003, and that a significant gap between MBNA's targeted NIBT and actual NIBT for the third quarter of 2004 had developed. The document also includes a table of the "NIBT Shortfall as presented to JRC 9/3/04".

D. *October 4, 2004 Third Quarter 2004 Financial Review, MBNA 0050993-1005, Exhibit E to Oliver Affidavit.*

This document, which was presented to Cochran and Struthers, shows that a gap existed between MBNA's current financials and its financial targets for 2004. Specifically, it shows that final third quarter ending loans, average outstandings, net interest income, expenses and earnings per share were all below the June forecast. It also states that the U.S. Card was experiencing increasing payment rates as a result of "strategic business decision to pull back from 0% APR and a higher mix of rewards customers." These negative trends, of which Cochran and Struthers were aware several months prior to the earnings guidance, made it impossible for MBNA to meet the earnings guidance issued at the January 21, 2005 Investor Day.

E. *November 29, 2004 Financial Update, MBNA 0050909-12, Exhibit F*

This document, which was presented to Cochran and Struthers, shows continuing negative trends in loan growth and U.S. Card performance, which persisted into 2005 and made it impossible to meet the earnings guidance issued on January 25, 2005.

---

2 Developed loan growth is organically grown loan growth, as opposed to growth attained through the acquisition of other companies or loan portfolios.

  F. *April 21, 2005 Cover Memorandum from Ken Vecchione to Bruce Hammonds, John Cochran, Lance Weaver, Ric Struthers forwarding Memorandum from T. Wren to K. Vecchione regarding Payment Rate/Mortgage Refi Analysis MBNA 0344414-18, Exhibit G to Oliver Affidavit.*

MBNA made a strategic decision in 2004 to increase the percentage of cards in its portfolio that were rewards cards. This memorandum confirms that it was well-known within the industry that rewards cards had much higher payment rates than nonrewards cards. Executives within MBNA, including Cochran and Struthers knew in 2004 that MBNA's shift to rewards cards would cause higher payment rates, which led to the I/O strip write-down in 2005.

  G. *April 26, 2005 2004-2007 Strategic Plan Review, MBNA 0116779-818, Exhibit H to Oliver Affidavit.*

This presentation confirms that the negative trends observed by senior management, including Cochran and Struthers, throughout the latter half of 2004 caused the problems that forced MBNA to write down its I/O strip on April 21, 2005 and made MBNA unable to meet its January 21, 2005 earnings guidance:

> [E]xternal factors significantly impacted MBNA, but internal decisions in the face of the environment impacted MBNA's ability to grow. Since 2001, earnings growth has come from sources other than loan growth. Actions in 2004 significantly limited the company's ability to grow in 2005...2004 financial projections fell short of the strategic plan. Current projections of 2005 show the gap widening; most of the NIBT gap is USCC related....

The document also confirms that MBNA reduced its marketing spend in 2004, which allowed MBNA to meet its 2004 earnings target, but had a "significant impact on 2005 earnings".

  H. *January 10, 2005 MBNA Compensation and Stock Option Committee Materials, MBNA 0300840-68, Exhibit I to Oliver Affidavit.*

This document compares the financial benchmarks included in the 2004 Compensation Plan, set by the Compensation Committee of the Board of Directors, to actual 2004 financial results. This document outlines the financial incentives that senior management had to engage in

accounting and balance sheet manipulations to meet certain financial benchmarks at the end of 2004.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court grant plaintiffs leave to file the Amended Complaint attached as Exhibit A to Oliver Affidavit.

Dated: August 1, 2008

Respectfully submitted,

/s/ *Brian D. Long*
Seth D. Rigrodsky (#3147)
sdr@rigrodskylong.com
Brian D. Long (#4347)
bdl@rigrodskylong.com
**RIGRODSKY & LONG, P.A.**
919 North Market Street, Suite 980
Wilmington, DE 19801
(302) 295-5310

***Plaintiffs' Liaison Counsel***

**MOTLEY RICE LLC**
William H. Narwold (admitted *pro hac vice*)
Robert T. Haefele (admitted *pro hac vice*)
William E. Applegate, IV (admitted *pro hac vice*)
Meghan S.B. Oliver (admitted *pro hac vice*)
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9450 (fax)

***Plaintiffs' Lead Counsel***