UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE MBNA CORP.<br>SECURITIES LITIGATION | Case No. 1:05-CV-00272-GMS<br>CONSOLIDATED |

# REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE CONSOLIDATED AMENDED COMPLAINT PURSUANT TO RULE 15(a)

Dated: August 28, 2008

Seth D. Rigrodsky (#3147)
sdr@rigrodskylong.com
Brian D. Long (#4347)
bdl@rigrodskylong.com
**RIGRODSKY & LONG, P.A.**
919 North Market Street, Suite 980
Wilmington, DE 19801
(302) 295-5310

*Plaintiffs' Liaison Counsel*

**MOTLEY RICE LLC**

William H. Narwold (admitted *pro hac vice*)
bnarwold@motleyrice.com
Robert T. Haefele (admitted *pro hac vice*)
rhaefele@motleyrice.com
William E. Applegate, IV (admitted *pro hac vice*)
wapplegate@motleyrice.com
Meghan S.B. Oliver (admitted *pro hac vice*)
moliver@motleyrice.com

28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9450 (fax)

*Plaintiffs' Lead Counsel*

## **TABLE OF CONTENTS**

Table of Authorities ............................................................................................................................ ii

SUMMARY OF THE ARGUMENT ................................................................................................1

ARGUMENT .....................................................................................................................................2

    I.    Plaintiffs Satisfy the "Good Cause" Requirement of Rule 16 ............................................2

        A.    Plaintiffs Did Not Have Access to the Information

              Underlying the New Allegations ..............................................................................3

        B.    The Time Within Which Plaintiffs Sought Leave to Amend

              Was Reasonable .........................................................................................................3

    II.    Defendants Fail to Establish that Any of the Limited Circumstances Justifying a Denial of Leave to Amend Exists ............................................................................................................5

        A.    Amendment of the Complaint Would Not Be Futile .................................................5

        B.    Plaintiffs Did Not Unduly Delay in Seeking to Amend ............................................9

        C.    Defendants Will Not Be Prejudiced by the Amendments ........................................9

CONCLUSION ................................................................................................................................10

# **TABLE OF AUTHORITIES**

Federal Cases

*Arthur v. Maersk, Inc.*, 434 F.3d 196 (3d Cir. 2006)..................................................................4

*Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249 (5th Cir. 2005).....................................................8

*Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695 (E.D. Pa. 2007)................................2

*Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d 484 (D. Del. 2003).........................4

*Fisher v. Offerman & Co.*, No. 95 Civ. 2566, 1996 WL 563141 (S.D.N.Y. Oct. 2, 1996) ............7

*In re Aetna Inc. Sec. Litig.*, 34 F. Supp. 2d 935 (E.D. Pa. 1999)................................................6

*In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137 (3d Cir. 2004).....................................................6

*In re Bristol-Myers Squibb Sec. Litig.*, 228 F.R.D. 221 (D.N.J. 2005).......................................9

*In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574 (D.N.J. 2001) .................................6

*In re Hayes Lemmerz Int'l, Inc. v. Cucuz*, 271 F. Supp. 2d 1007 (E.D. Mich. 2003) ...............10

*In re Paincare Holdings Sec. Litig.*, 541 F. Supp. 2d 1283 (M.D. Fla. 2008)............................6

*In re Rent-Way Sec. Litig.*, 209 F. Supp. 2d 493 (W.D. Pa. 2002).............................................8

*In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 527 (S.D. Ohio 2000)................8

*In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006).............................6, 8

*In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195 (N.D. Okla. 2007) .........................................9

*Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, No. 06-30908, 2008 WL 28947983 (5th Cir. Jul. 29, 2008).............................................................................7

*Keene v. Sears Roebuck & Co.*, No. 05-828, 2007 WL 77324 (D.N.J. Jan. 8, 2007) ................5

*Palladin Partners v. Gaon*, No. 05-CV-3305, 2006 WL 2460650 (D.N.J. Aug. 22, 2006).........6

*Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, C.A. No. 05-349, 2007 WL 1670387 (D. Del. June 7, 2007) ...............................................................................................................2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499 (2007).........................................8

*Thoman v. Philips Med. Sys.*, Civ. No. 04-3698, 2007 WL 203943 (D.N.J. Jan. 24, 2007).......5

*Venetec Int'l v. Nexus Med.*, 541 F. Supp. 2d 612 (D. Del. 2008)......................................................2, 4

*Werner v. Werner*, 267 F.3d 288 (3d Cir. 2001) ................................................................................5

<u>Federal Rules</u>
Fed. R. Civ. P. 16…………………………………………………………………………..1, 2, 3

Fed. R. Civ. P. 15(a) ........................................................................................................................3

Lead Plaintiff Société Générale Securities Services Kapitalangegesellschaft mbH for account of the PT-Master Fund ("Société Générale" or "Lead Plaintiff"), by its counsel and on behalf of all plaintiffs, hereby respectfully submits this Reply in Support of its Motion for Leave to Amend the Consolidated Amended Complaint Pursuant to Rule 15(a).

## SUMMARY OF THE ARGUMENT

1. Plaintiffs satisfy the "good cause" requirement of Rule 16(b)(4), which governs the modification of scheduling orders, including the Order which set a deadline of October 5, 2007 for amendment of the Complaint (D.I. 62). Though plaintiffs did not address Rule 16 in their Opening Brief, the Court may consider under Rule 16 the reasons plaintiffs enumerated in their Rule 15 argument.

2. Plaintiffs have shown "good cause" for amending their complaint, as required by Rule 16, because they only obtained the information on which the amendments depend during discovery, well after the scheduling order deadline. Plaintiffs acted reasonably and promptly in seeking to amend, satisfying the "good cause" requirement of Rule 16.

3. Plaintiffs' Motion for Leave to Amend should be granted because defendants fail to show any of the limited circumstances that would justify denial of leave to amend. Plaintiffs' new allegations compel a strong inference that Cochran and Struthers acted with scienter. Plaintiffs uncovered evidence during discovery which shows that these individuals regularly received, reviewed and discussed at regular meetings a number of specific financial documents. Though defendants also claim that the new allegation about the negative impact even a small decrease in net income would have had on the Individual Defendants' compensation for 2004 is irrelevant, the executive compensation plan supports a strong inference of scienter when considered in conjunction with the other allegations of scienter.

4. Plaintiffs filed the Motion to Amend as soon as practicable. Defendants claim, though, that plaintiffs have engaged in gamesmanship by timing the filing of their motion to coincide with other deadlines.

The simple timing of a motion to coincide with other deadlines is not the sort of the conduct courts have condemned as "gamesmanship".

5. Defendants are not prejudiced if the Court allows plaintiffs to Amend the Complaint. Defendants make one unsupported statement claiming they will be prejudiced, providing no explanation or legal support for their position. Defendants have not shown – as they must – that "an unfair disadvantage or deprivation will result" if the amendment is allowed.

## ARGUMENT

### I. Plaintiffs Satisfy the "Good Cause" Requirement of Rule 16

Defendants insist that Rule 16(b)(4) "governs motions to amend brought after the deadline in a scheduling order for making such a motion has passed."[1] Defs.' Opp'n (D.I. 134) ("Opp'n") at 6. This Court has held that even where a party seeking leave to amend has not "distinctly" addressed the Rule 16 standard, courts "often evaluate whether a movant has shown good cause by considering the movant's articulated reasons under the Rule 15 standard." *Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, C.A. No. 05-349, 2007 WL 1670387, at *1 (D. Del. June 7, 2007). An examination of plaintiffs' reasons under Rule 15 confirms that plaintiffs meet the Rule 16 "good cause" standard in addition to the requirements of Rule 15.

Rule 16 "requires the movant to demonstrate that, despite diligence, the proposed claims could not have been reasonably sought in a timely manner." *Venetec Int'l v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 618 (D. Del. 2008). As already established, plaintiffs moved to amend as soon as was practicable, and in so doing acted reasonably and diligently.

---

[1] Courts have concluded that when a party seeks to amend a pleading after the deadline set in a scheduling order, the inquiry is two-pronged and should include a Rule 15 analysis as well as a Rule 16 analysis. *See, e.g., Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 701 (E.D. Pa. 2007) (noting that a court must consider Rule 16(b) "*before* the trial court can consider, under Rule 15(a), the party's motion to amend its pleading.") (emphasis added); *Thoman v. Philips Med. Sys.*, Civ. No. 04-3698, 2007 WL 203943, at *10 (D.N.J. Jan. 24, 2007) ("The good cause requirement

2

    A.    *Plaintiffs Did Not Have Access to the Information Underlying the New Allegations*

Defendants overstate the extent to which the information relied upon in the Proposed Amended Complaint (D.I. 128-5) ("PAC") was available to plaintiffs prior to the scheduling order deadline. Opp'n at 8. Prior to the scheduling order's deadline for amendments, plaintiffs had access to only a single piece of information relied upon in a single newly added allegation: that Cochran and Struthers participated in "Investor Day" on January 21, 2005. *See* PAC at ¶ 88. This new allegation is a simple clarification of the following allegation included in the Consolidated Amended Complaint ("Complaint"): "On January 21, 2005, MBNA hosted their first ever "investor day" wherein management reaffirmed that the Company's earnings per share guidance was $2.26 in 2005 with a 10% growth rate year-over-year followed by a 12% growth rate thereafter." Complaint at ¶ 85. Plaintiffs attribute no new conduct to Cochran and Struthers, but simply specify that among the members of "management" on the call were Vecchione, Krulak, Cochran and Struthers, addressing the Court's concern about "blanket allegations." Mem. Op. at 13 (D.I. 60). In fact, the Court noted in its Opinion dismissing Cochran and Struthers the paucity of allegations specifically naming those two individuals. *Id.* at 13. Plaintiffs have addressed that concern by adding several paragraphs, including paragraph 85, that name both individuals. PAC ¶¶ 56, 57, 88, 103. Plaintiffs had no information regarding the other new allegations prior to the amendment deadline, a point which defendants do not contest.

    B.    *Plaintiffs Sought Leave to Amend Within a Reasonable Time*

Defendants argue under both the "good cause" standard of Rule 16 and the "undue delay" standard of Rule 15 that plaintiffs had the information relied upon in the PAC "months before they filed this motion." Opp'n at 8. Plaintiffs moved to amend a mere two and a half months after Struthers's deposition on May 13 and three months after Cochran's deposition on April 29. Between Struthers's deposition and

---

must be read in conjunction with the directive of Fed. R. Civ. P. 15(a), that leave to amend be 'freely given' such that both standards are met before amendment is allowed.").

3

the motion to amend, the parties were engaged in a busy discovery schedule, including taking a number of depositions, the last of which occurred on July 2, 2008. Defendants cite no authority to support their contention that the two and a half months between these key depositions and plaintiffs' motion constituted "undue delay." *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) ("[O]nly one appellate court uncovered in our research has approved of denial of leave to amend based on a delay of less than one year.").

As if recognizing the weakness of their argument about the length of time between these key depositions and plaintiffs' Motion, defendants emphasize instead the fact that plaintiffs "made no mention of a possible need to amend their complaint" when the Scheduling Order was amended in January and June. Opp'n at 4, 7-8, 12. This is a red herring. Plaintiffs did not have much of the information supporting the new allegations until after the Scheduling Order was amended in January. The June Amended Scheduling Order was also entered prior to the close of fact discovery. In an effort to avoid wasting judicial resources and defendants' time with frivolous amendments, plaintiffs did not rush to amend, but rather fully analyzed the possibility of seeking to amend the complaint, the likely amendments and their evidentiary support before submitting their Motion. *See Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 489 (D. Del. 2003) (recognizing that though certain facts may have been available earlier, movant "was prudent and possibly required to confirm the factual allegations through discovery").

The cases on which defendants rely for their argument that plaintiffs unreasonably delayed in seeking to amend and therefore cannot show good cause should be distinguished. Opp'n at 8. In *Venetec* the plaintiff could have uncovered the information on which it relied prior to the cutoff for amendments if it had acted with diligence. 541 F. Supp. 2d at 622. Here plaintiffs could not have discovered the internal documents on which the new allegations rely prior to the deadline for amendments. The deadline passed

4

on October 5, 2007, and defendants' production, which lasted over six months, did not begin until October 23, 2007.

In *Thoman* the plaintiff made an error in drafting the original complaint and offered no explanation for his delay in seeking to amend. *Thoman v. Philips Med. Sys.*, Civ. No. 04-3698, 2007 WL 203943, at *10 (D.N.J. Jan. 24, 2007). Plaintiffs have explained that the information on which the amendments depend was not available until well into discovery, which only recently ended, and therefore have satisfied the "good cause" standard of Rule 16.

In *Keene v. Sears Roebuck & Co.* the plaintiff waited until after summary judgment and after the Final Joint Pretrial Order to move to amend even though the new claims were based on the same information on which the plaintiff relied in making the original claims. *Keene*, No. 05-828, 2007 WL 77324, at *3 (D.N.J. Jan. 8, 2007). The court found no "undue delay or bad faith on the part of the Plaintiff in filing th[e] motion to amend," but held that plaintiff had provided "no satisfactory explanation for his delay," and thus had "failed to show good cause." *Id.* at *9. Plaintiffs' explanation for the delay – that they did not acquire the information that forms the basis of the new allegations until recently – satisfies the "good cause requirement."

## II. Defendants Fail to Establish that Any of the Limited Circumstances Justifying a Denial of Leave to Amend Exists

### A. Amendment of the Complaint Would Not Be Futile

Defendants mischaracterize the new allegations contained in the PAC while arguing that plaintiffs still do not adequately allege scienter. Only defendants' inaccurate and incomplete descriptions of the new allegations and their misconstrual of case law could possibly support a finding of futility. A complete reading of the new allegations and case law compels the conclusion that amendment would not be futile.[2]

---

[2] Defendants argue in a footnote that the documents cited in plaintiffs' Opening Brief should not be considered. In deciding an appeal from a denial of a Rule 15(a) motion to amend, the Third Circuit considered "a number of non-record documents" in relation to the motion to amend. *Werner v. Werner*, 267 F.3d 288, 296 n.5 (3d Cir. 2001).

5

Inexplicably, defendants describe "several of the new allegations [as] say[ing] only that Cochran and Struthers had access to financial information and attended meetings at which such information was discussed." *Id.* at 11. This is an inaccurate description of the new allegations. The new allegations go beyond the simple "access to financial information" argument on which defendants focus in their brief and on which the Court relied in dismissing Cochran and Struthers. For example, plaintiffs allege in the PAC that Cochran and Struthers "received and discussed" certain "Financial Updates [that] outlined declines for the U.S. Credit Card in almost every key business metric, including loans, loan growth, NIBT and net income growth…" and that "[t]hese negative business trends would make it impossible for MBNA to meet its earnings guidance issued in 2005…." PAC ¶ 56. These are sufficient allegations of scienter.

This is distinct from *Suprema* and *Alpharma* where the Third Circuit held the allegations of scienter to be insufficient because the plaintiffs had only alleged that the defendants had "access" to relevant information. *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 282 (3d Cir. 2006); *In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 151 (3d Cir. 2004). Not only do plaintiffs specify and describe the business records to which Cochran and Struthers had access, PAC ¶¶55-57, but they also allege that Cochran and Struthers "received and discussed" those records, PAC ¶ 56.[3] Plaintiffs have alleged more

---

Consideration of Exhibits B through I of the Oliver Affidavit (D.I. 131-3, 131-4, 131-5, 131-6, 131-7) and Exhibit A of the Affidavit of Robert T. Haefele dated August 5, 2008 ("Haefele Affidavit") (D.I. 133-2) is proper.

[3] Though the Court need not consider it to resolve the issue of futility, the core operations doctrine also applies. "Where fraud involves a company's core business, knowledge or recklessness can be inferred from a defendant's position in the company and related exposure and access to information revealing the fraud." *Palladin Partners v. Gaon*, No. 05-CV-3305, 2006 WL 2460650, at *12 (D.N.J. Aug. 22, 2006). *See also In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 599 (D.N.J. 2001) (holding that when the disclosures involve the company's core business, knowledge may be imputed to individual defendants); *In re Aetna Inc. Sec. Litig.*, 34 F. Supp. 2d 935, 952-53 (E.D. Pa. 1999) (same). *See also, Alpharma*, 372 F.3d at 151-52 (implicitly recognizing the core products doctrine, but holding that it did not apply where the business at issue constituted "only slightly more than one half of one percent of the company's total revenue in 1999"). Plaintiffs have alleged that the improper conduct pertained to securitization and the U.S. Credit Card business, a business Plaintiffs describe as the Company's "core credit card business". PAC ¶¶ 32, 37. Plaintiffs allege that "80% of managed loans and 90% of domestic credit card loans [were] securitized as of September 30, 2004," PAC ¶ 38, and that "MBNA was dependent upon securitizations as its chief source of liquidity," PAC ¶ 48. It defies logic to claim that Cochran and Struthers were unaware that MBNA's "core" U.S. Credit Card business had deteriorated to such an extent that 10% earnings in 2005 would be impossible, or that a write-down of MBNA's IO strip would be necessary in light of MBNA's securitization problems. *Cf. In re Paincare Holdings Sec. Litig.*, 541 F. Supp. 2d 1283 at 1293 (M.D. Fla. 2008) ("The Company's implicit assertion that a Company can ignore the elephant in the room, as long as no one *told* them it was there does not negate recklessness.")

6

than mere access, and have therefore sufficiently alleged that Cochran and Struthers had the requisite scienter.

Defendants also skip past the substantial detail added to the allegations against Cochran and Struthers, including the names and detailed descriptions of specific documents. *See, e.g.*, ¶ 55 (describing "Financial Updates," "Solves" included within those documents and identifying balance sheet manipulations – marketing expense cuts – made); ¶ 56 (describing discussions at "NIBT Meetings"); ¶ 57 (providing "Third Quarter 2004 Financial Review" as example of document showing increasing payment rates in 2004); ¶ 103 (alleging ramifications of poor financial performance on executive bonuses). All of these new details bolster the allegations of scienter against Cochran and Struthers.

Not once do defendants acknowledge paragraphs 58 and 59 of the PAC. Paragraph 59 details that in late November 2004 multiple departments were forecasting negative EPS growth for 2005, including one which forecasted growth a full 24 percentage points lower than the 10% prediction shared with analysts at Investor Day on January 21. PAC at ¶ 59. Paragraph 58 describes an internal memorandum that "confirm[ed], it had been widely known within the industry that rewards cards experience higher payment rates than nonrewards cards" and that in 2004 MBNA had deliberately increased the percentage of its portfolio that were rewards cards. PAC at ¶ 58. These added details also strengthen the existing allegations against defendants.

Defendants also wrongly claim that the proposed paragraph 103 is "irrelevant" and insufficient to allege scienter. Opp'n at 11. First, the bonus issue is not irrelevant, because like insider trading, compensation plans can be evidence of motive. *Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, No. 06-30908, 2008 WL 28947983, at *13 (5th Cir. Jul. 29, 2008). *Cf. Fisher v. Offerman & Co.*, No. 95 Civ. 2566, 1996 WL 563141, at *7 (S.D.N.Y. Oct. 2, 1996) (referring to fees as "not *alone* sufficient to sustain a strong inference of fraudulent intent). Second, the incentive caused by the

7

compensation plan is one of many allegations establishing scienter on the part of Cochran and Struthers – not the only one. As the Supreme Court has held, "[T]he court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2511 (2007). *See also*, *In re Rent-Way Sec. Litig.*, 209 F. Supp. 2d 493, 511 (W.D. Pa. 2002) ("[W]hen considered in their totality as they must be, Plaintiffs' factual allegations … support a strong inference of scienter…."); *Paincare*, 541 F. Supp. 2d at 1292-93 (recognizing that the courts consider all allegations "cumulatively" and listing bonuses tied to Company earnings as one allegation supporting a finding of scienter). Plaintiffs' allegations, collectively and including the allegations of incentive-based compensation, lead to a strong inference of scienter.

Defendants also claim that the newly added allegation about Cochran's and Struthers's presence on the January 21, 2005 Investor Day call is insufficient as a "blanket allegation." Opp'n at 12. Paragraph 103 in the PAC is not the sort of "blanket allegation" to which the Court referred in its Opinion, nor that described in the Third Circuit decision relied upon by the Court. *Suprema*, 438 F.3d at 282. The Third Circuit held that allegations "without any attempt to link specific individuals to specific instances of reckless conduct…do not satisfy the particularity requirements of Rule 9(b) and the PSLRA…." *Id.* Plaintiffs "link specific individuals to specific instances of reckless conduct" by alleging that Cochran and Struthers remained silent on the call, failing to correct Hammonds's and Vecchione's false and misleading statements. PAC ¶ 88. This conduct is actionable and alleged with sufficient specificity. *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 262-63 (5th Cir. 2005) (quoting *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 527, 543 (S.D. Ohio 2000). "[A] high ranking company official cannot sit quietly at a conference with analysts, knowing that another official is making false statements and hope to escape liability for those statements. If nothing else, the former official is at fault for a material omission in failing to correct such statements in that context." *Id.*

B.  *Plaintiffs Did Not Unduly Delay in Seeking to Amend*

For the most part, plaintiffs addressed this issue above in the discussion of Rule 16's "good cause" standard, but defendants' accusations of "gamesmanship" merit response. Opp'n at 12. Plaintiffs' conduct does not approach that which occurred in *ACA Fin. Guaranty Corp.* After diligent review of the evidence, preparation of the PAC and the Motion, plaintiffs contacted defendants on Friday, July 25 – a full week before plaintiffs filed. The parties agreed to meet and confer about the amendment the morning of July 28. The morning of July 28, counsel agreed to meet and confer later in the day because defendants had only received a copy of the PAC that morning. Over two days later, having heard nothing, plaintiffs emailed defendants the morning of July 31, prompting defendants to confirm that they would not consent to the amendment. Had defendants been prepared to meet and confer on July 28 as planned, plaintiffs would have filed the motion days earlier, and defendants' opposition would have been due over a week before their expert reports and response to plaintiffs' privilege challenge.[4] Plaintiffs assure the Court that defendants' deadlines had no bearing on the timing of the Motion.

C.  *Defendants Will Not Be Prejudiced by the Amendments*

Defendants' only explanation of the prejudice they would suffer if the Court grants plaintiffs leave to amend is that, "it would divert some of defendants' resources from the case they have addressed throughout discovery." Opp'n at 13. This unsupported claim of having to "divert some of defendants' resources" is insufficient to establish the level of undue prejudice required by Rule 15. *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1281-82 (N.D. Okla. 2007); *In re Bristol-Myers Squibb Sec. Litig.*, 228 F.R.D. 221, 228 (D.N.J. 2005). More to the point, the inconvenience inherent in defending a lawsuit, which seems

---

[4] Defendants knew about the other deadlines to which they refer weeks earlier. They knew that their expert reports would be due on August 21 as early as June 24, 2008, when the Court entered the parties' joint stipulation, and received plaintiffs' expert reports on July 15. Defendants also knew on July 11 that the response to plaintiffs' privilege log challenges would be due that week. (D.I. 125).

9

to be all that defendants claim, is not adequate prejudice under Rule 15. *In re Hayes Lemmerz Int'l, Inc. v. Cucuz*, 271 F. Supp. 2d 1007, 1019 n. 9 (E.D. Mich. 2003).

Defendants do not address plaintiffs' argument that plaintiffs have not added new theories. They also fail to address the argument that the same counsel represents Cochran and Struthers as represents the other defendants, and that Cochran and Struthers were deposed and produced documents. Defendants' showing is insufficient to establish the degree of undue prejudice required by Rule 15.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court grant plaintiffs leave to file the Proposed Amended Complaint attached as Exhibit A to the Oliver Affidavit.

Dated: August 28, 2008

Respectfully submitted,

/s/ Brian D. Long
Seth D. Rigrodsky (#3147)
sdr@rigrodskylong.com
Brian D. Long (#4347)
bdl@rigrodskylong.com
**RIGRODSKY & LONG, P.A.**
919 North Market Street, Suite 980
Wilmington, DE 19801
(302) 295-5310

*Plaintiffs' Liaison Counsel*

**MOTLEY RICE LLC**
William H. Narwold (admitted *pro hac vice*)
Robert T. Haefele (admitted *pro hac vice*)
William E. Applegate, IV (admitted *pro hac vice*)
Meghan S.B. Oliver (admitted *pro hac vice*)
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9450 (fax)

*Plaintiffs' Lead Counsel*