UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

IN RE MBNA CORP.
SECURITIES LITIGATION

Case No. 1:05-CV-00272-GMS
CONSOLIDATED

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS UNOPPOSED MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND FINAL CLASS CERTIFICATION

Dated: September 29, 2009

Seth D. Rigrodsky (#3147)
sdr@rigrodskylong.com
Brian D. Long (#4347)
bdl@rigrodskylong.com
**RIGRODSKY & LONG, P.A.**
919 North Market Street, Suite 980
Wilmington, DE 19801
(302) 295-5310

*Plaintiff's Liaison Counsel*

**MOTLEY RICE LLC**

William H. Narwold (admitted *pro hac vice*)
bnarwold@motleyrice.com
Robert T. Haefele (admitted *pro hac vice*)
rhaefele@motleyrice.com
William E. Applegate, IV (admitted *pro hac vice*)
wapplegate@motleyrice.com
Meghan S.B. Oliver (admitted *pro hac vice*)
moliver@motleyrice.com

28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9450 (fax)

*Plaintiff's Lead Counsel*

## <u>TABLE OF CONTENTS</u>

NATURE AND STAGE OF THE PROCEEDINGS ................................................................ 1

SUMMARY OF THE ARGUMENT .................................................................................... 1

ARGUMENT ...................................................................................................................... 1

    I.     The Proposed Settlement Is Fair, Reasonable and Adequate, and Should Be
          Approved ................................................................................................................... 1

         A.     The Settlement Is Presumptively Fair ............................................................ 1

         B.     The Settlement Satisfies the *Girsh* Factors for Approval as Fair, Reasonable
             and Adequate ................................................................................................. 2

             1.     Continued Pursuit of this Action Would be Complex, Expensive and
                   Prolonged ......................................................................................... 3

             2.     The Reaction of Class Members Supports Approval of the Settlement ..... 4

             3.     The Stage of the Proceedings and the Amount of Discovery Completed
                   Supports Approval of the Settlement ............................................... 4

             4.     Lead Plaintiff Faces Risks Establishing Liability ....................................... 5

             5.     Lead Plaintiff Faces Risks Establishing Damages ..................................... 6

             6.     Lead Plaintiff Faces Risks of Maintaining the Class Action Through
                   Trial .................................................................................................. 7

             7.     The Ability of Defendants to Withstand a Greater Judgment ..................... 7

             8.     The Range of Reasonableness of the Settlement in Light of the Best
                   Possible Recovery and All the Attendant Risks of Litigation Supports
                   Approval of the Settlement ............................................................... 8

          C.     The Notice to the Class Satisfied Due Process and the Requirements of
             Rule 23 ......................................................................................................... 9

          D.     The Plan of Allocation Is Fair and Reasonable and Should Be Approved ..... 10

    II.     Final Certification of the Settlement Class Is Proper .............................................. 11

         A.     Rule 23(a) (1): The Members of the Class Are So Numerous That Joinder
             Is Impracticable ............................................................................................ 12

          B.     Rule 23(a) (2): There Are Questions of Law and Fact Common to the
             Class ............................................................................................................. 13

          C.     Rule 23(a) (3): Lead Plaintiff's Claims Are Typical of the Claims of the
             Class ............................................................................................................. 14

          D.     Rule 23(a) (4): Lead Plaintiff Will Fairly and Adequately Protect the
             Interests of the Members of the Class .......................................................... 15

    III.    The Proposed Class and Class Representative Satisfy the Requirements of Rule
          23(b)(3) ................................................................................................................. 16

          A.     Common Questions of Law and Fact Predominate Over Any Individual
             Issues ........................................................................................................... 16

          B.     The Fraud on the Market Doctrine Eliminates the Need to Resolve
             Questions of Individual Reliance .................................................................. 17

          C.     A Class Action Is the Superior Means of Adjudicating This Dispute ............ 18

CONCLUSION .................................................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*In re Aetna Inc. Sec. Litig.*,
    No. CIV. A. MDL 1219, 2001 WL 20928 (E.D. Pa. 2001) ...................................... 5

*In re AT&T Corp. Sec. Litig.*,
    Civ. No. 00-5364, 2005 U.S. Dist LEXIS 46144 (D.N.J. Apr. 25, 2005) ................ 3

*Amchem v. Windsor,*
    521 U.S. 591 (1997) ..................................................................................... 15, 16, 19

*Basic, Inc. v. Levinson*,
    485 U.S. 224 (1988)........................................................................................... 6, 17

*Beck v. Maximum, Inc.*,
    457 F.3d 291 (3d Cir. 2006)..................................................................................... 15

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) ...................................................................... 17, 18

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981)..................................................................................................... 2

*In re Cell Pathways, Inc. Sec. Litig.*,
    No. 01-CV-1189, 2002 WL 31528573 (E.D. Pa. Sept. 23, 2002). ........................ 4, 7

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).......................................................................... passim

*In re Chiang v. Veneman*,
    385 F.3d 256 (3d Cir. 2004).......................................................................... 13, 14

*In re Cigna Corp. Sec. Litig.*,
    No. 02-8088, 2006 WL 2433779 (E.D. Pa. Aug. 18, 2006) .................................... 12

*In re Community Bank of N. Va.*,
    418 F.3d 277 (3d Cir. 2005)........................................................................... 16, 19

*In re Computron Software, Inc. Sec. Litig.*,
    6 F. Supp. 2d 313 (D.N.J. 1998) .............................................................................. 4

*In re Corel Corp. Inc. Sec. Litig.*,
    206 F.R.D. 533 (E.D. Pa. 2002)............................................................................. 13

*In re Data Access Sys. Sec. Litig.*,
   103 F.R.D. 130 (D.N.J. 1984) ............................................................................... 16

*In re Datatec Sys., Inc. Sec. Litig.*,
   No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ........................ 4

*Deutschman v. Beneficial Corp.*,
   132 F.R.D. 359 (D. Del. 1990) ........................................................................ 13, 15

*Dura Pharmaceuticals v. Broudo*,
   544 U.S. 336 (2005) ............................................................................................... 11

*In re DVI Inc. Secs. Litig.*,
   249 F.R.D. 196 (E.D. Pa. 2008) ............................................................................ 18

*Eisenberg v. Gagnon*,
   766 F.2d 770 (3d Cir. 1985) .................................................................................. 12

*Erie County Retirees Ass'n*,
   192 F. Supp. 2d 369 (3d. Cir. 2002) ....................................................................... 9

*Fox v. Equimark Corp.*,
   Civ. A. No. 90-1504, 1994 WL 560994 (W.D. Pa. July 18, 1994) ........................ 14

*Freeman v. Laventhol & Horwath*,
   915 F.2d 193 (6th Cir. 1990) ................................................................................ 18

*Girsh v. New Am. Fund, Inc.*,
   521 F.2d 153 (3d Cir. 1975) ........................................................................... passim

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) .............................................................................. passim

*In re Honeywell Int'l Inc.*,
   211 F.R.D. 255 (D.N.J. 2002) ......................................................................... 13, 18

*Hoxworth v. Blinder, Robinson & Co.*,
   980 F.2d 912 (3d Cir. 1992) ........................................................................... 14, 15

*In re Ikon Office Solutions Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ..................................................................... 3, 5, 7

*Johnston v. HBO*,
   265 F.3d 178 (D. Del. 2001) ........................................................................... 12, 15

*Kahan v. Rosenstiel*,
    424 F.2d 161 (3d Cir. 1970)..................................................................... 12

*Kanter v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ........................................................................ 13

*La. Mun. Police Employees Ret. Sys. v. Dunphy*,
    No. 03-CV-4372, 2008 WL 700181 (D.N.J. Mar. 13, 2008)................... 17

*In re Mercedes-Benz Antitrust Litig.*,
    213 F.R.D. 180 (D.N.J. 2003) ................................................................. 17

*In re Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)................................................................................. 10

*Neuberger v. Shapiro*,
    No. Civ. A. 97-7947, 1998 WL 826980 (E.D. Pa. Nov. 25, 1998)......... 17

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) .................................................................... 14

*Nichols v. Smithkline Beecham Corp.*,
    Civil Action No. 00-6222, 2005 WL 950616 (E.D. Pa. Apr.22, 2005) ............ 2, 4, 6

*O'Keefe v. Mercedes-Benz USA, LLC*,
    214 F.R.D. 266 (E.D. Pa. 2003)................................................................ 8

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000)..................................................................... 17

*Peil v. Speiser*,
    806 F.2d 1154 (3d Cir. 1986)................................................................... 17

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    No. 3:03-MDL-1556, 2007 WL 4150666  (M.D. Pa. Nov. 19, 2007).................... 17

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998)........................................................ 16, 18, 19

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    177 F.R.D. 216 (D.N.J. 1997)................................................................. 10

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997) ......................................................... 9, 10

iv

*In re Ravisent Techs., Inc. Sec. Litig.*,
   No. Civ.A.00-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ............................. 8

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003) .............................................................. passim

*In re Safety Components, Inc. Sec. Litig.*,
   166 F. Supp. 2d 72 (D.N.J. 2001) ............................................................................ 7

*In re Suprema Specialties Sec. Litig.*,
   No. 02-168 (WGW), 2008 WL 1217980 (D.N.J. Mar. 31, 2008) ...................... 3, 17

*In re Tyson Foods, Inc. Sec. Litig.*,
   No. Civ. 01-425, 2003 WL 22316548 (D. Del. Oct. 6, 2003) ................................. 12

*In re Vicuron Pharms., Inc. Sec. Litig.*,
   233 F.R.D. 421 (E.D. Pa. 2006) ............................................................................... 19

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) ..................................................................................... 12

*Weiss v. York Hosp.*, 745 F.2d 786 (3d Cir. 1984) ............................................................ 15


**Statutes**

15 U.S.C. § 78 u-t (a) (7) ..................................................................................................... 10

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................... passim
Fed R. Civ. P. 23 (a) ..................................................................................................... passim
Fed. R. Civ. P. 23(a) (1) ......................................................................................... 1, 12, 13
Fed. R. Civ. P. 23(a) (2) ..................................................................................................... 13
Fed. R. Civ. P. 23(a) (3) ................................................................................................ 14, 15
Fed. R. Civ. P. 23(a) (4) ................................................................................................ 15, 16
Fed. R. Civ. P. 23(b). .......................................................................................................... 12
Fed. R. Civ. P. 23 (b) (3) ............................................................................................. passim
Fed. R. Civ. P. 23(c) (2) ............................................................................................. 1, 9, 10
Fed. R. Civ. P. 23 (e) .................................................................................................... 1, 9

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs' Counsel respectfully refers the Court to the Narwold Declaration (defined below) for a detailed description of the history of the Action.   Declaration of William H. Narwold in Support of (1) Certification of Settlement Class, (2) Final Approval of Settlement and Plan of Allocation, and (3) Award of Attorneys' Fees and Expenses ("Narwold Declaration") attached as Ex. 1.  This memorandum focuses on the applicable legal standards for approval of a proposed class action settlement under Rule 23(e) and demonstrates that the settlement should be approved.

## SUMMARY OF THE ARGUMENT

1.   The proposed settlement and plan of allocation are fair, adequate and reasonable, and an application of the nine *Girsh* factors supports approval of both.

2.   The notice previously approved by the Court and provided to the Settlement Class Members satisfied the requirements of constitutional due process, Federal Rule of Civil Procedure 23(c)(2) and (e), and the PSLRA.

3.   The Settlement Class which the Court preliminarily certified on June 5, 2009, should be finally certified.  The proposed Settlement Class meets all the requirements of the Federal Rule of Civil Procedure 23(a) and (b)(3).

## ARGUMENT

**I.     The Proposed Settlement Is Fair, Reasonable and Adequate, and Should Be Approved**

**A.     The Settlement Is Presumptively Fair**

Courts favor settlement of disputed claims, particularly in the class action context.  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).  In class actions, a presumption of fairness applies to a proposed settlement if a court

finds that: "(1) the negotiations occurred at arms length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 n.18 (3d Cir. 2001). The settlement here satisfies all of these criteria. The parties negotiated at arms-length to reach an agreement; the parties had completed fact and expert discovery by the time they agreed to settle the case; both plaintiffs' counsel and defense counsel are experienced in complex class actions and securities fraud litigation; and not a single member of the class objected to the settlement. Thus, a presumption of fairness properly attaches to the proposed settlement. *Nichols v. Smithkline Beecham Corp.*, Civil Action No. 00-6222, 2005 WL 950616, at *36-37 (E.D. Pa. Apr. 22, 2005).

> **B.      The Settlement Satisfies the *Girsh* Factors for Approval as Fair, Reasonable and Adequate**

Although a court must "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished," *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001) (internal citation omitted), a court does not decide the merits or resolve unsettled legal questions when reviewing the proposed settlement. *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). To guide district courts in their analysis, the Third Circuit has articulated the following non-exhaustive list of nine factors, known as the "*Girsh* factors:"

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. New Am. Fund, Inc.*, 521 F.2d 153, 157 (3d Cir. 1975). An examination of the *Girsh* factors supports approval of the proposed settlement, which is fair, adequate and reasonable.

> **1.      Continued Pursuit of this Action Would be Complex, Expensive and Prolonged**

Courts within the Third Circuit regularly recognize the inherent complexity of securities fraud class actions, "[S]ecurities class actions are by their nature convoluted and complex." *In re AT&T Corp. Sec. Litig.*, Civ. No. 00-5364, 2005 U.S. Dist LEXIS 46144, at *8 (D.N.J. Apr. 25, 2005); *see also In re Suprema Specialties Sec. Litig.*, No. 02-168 (WGW), 20082 WL 1217980, at *32 (D.N.J. Mar. 31, 2008); *In re Ikon Office Solutions Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). As evidenced by the extensive filings relating to class certification and summary judgment, this Action presents numerous complex and uncertain issues of fact and law, which create significant obstacles to proving liability and damages.

"This factor captures 'the probable costs, in both time and money, of continued litigation.'" *Girsch* at 233 (quoting *GM Trucks*, 55 F.3d at 812). Here, even though discovery had been completed and motions for class certification and summary judgment were pending, the litigation could have continued for years before being resolved. Even assuming that the Court certified a class and denied Defendants' Motion for Summary Judgment, trying this case and litigating any post-trial motions and appeals would take a significant amount of time. Plaintiff's success at the end of such extended litigation is far from guaranteed. The process would delay any recovery by the Class, and would be extremely expensive. *See In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828  at *8-9 (D.N.J. Nov. 28, 2007); *Nichols*, 2005 WL 950616, at *39-40. A settlement at this point, however, provides a present recovery to the class, without the risk and delay of continued, complex, expensive litigation and trial. *In re Computron Software, Inc. Sec. Litig.*, 6 F. Supp. 2d 313, 317 (D.N.J. 1998); *GM Trucks*, 55 F.3d

at 806.  Due to the complexity of the case and the potential lengthy duration of the litigation, this factor weighs in favor of approval.

### 2. The Reaction of Class Members Supports Approval of the Settlement

Through examination of the second factor, "courts look to the number and vociferousness of the objectors."  *GM Trucks*, 55 F.3d at 812.  The absence of significant objections to a proposed class settlement is strong evidence that the settlement is fair and reasonable.  *Cendant*, 264 F.3d at 235.

Here, 177,000 notices were mailed, a summary notice was published in *Investor's Business Daily* on June 30, 2009 and a summary notice was transmitted over the National Circuit of *Business Wire* on June 30, 2009.  The notice informed Class Members of their right to object to the proposed settlement and made clear that objections must be made by September 22, 2009.  None of the class members objected to the settlement.  This is additional evidence that the settlement is fair, adequate and reasonable, and supports approval of the proposed settlement.  *Cendant*, 264 F.3d at 234; *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 502 (W.D. Pa. 2003); *In re Cell Pathways, Inc. Sec. Litig.*, No. 01-CV-1189, 2002 WL 31528573, at *9 (E.D. Pa. Sept. 23, 2002).

### 3. The Stage of the Proceedings and the Amount of Discovery Completed Supports Approval of the Settlement

This factor "captures the degree of case development that class counsel have accomplished prior to settlement.  Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *GM Trucks*, 55 F.3d at 813.

Plaintiff's Counsel have actively litigated this case for more than three years.  During that time, counsel have gained an understanding of the merits of their claims, as well as the strengths

of the defenses asserted by Defendants.   As discussed in greater detail in the Narwold

Declaration, Plaintiff's Counsel (1) analyzed Plaintiff's claims under the applicable law; (ii)

briefed Defendants' Motion to Dismiss, Defendants' Motion for Summary Judgment and

Plaintiff's Motion for Class Certification; (iii) reviewed and analyzed over 600,000 pages of

documents produced by Defendants and third parties, including UBS, Ernst & Young and

Wachovia; (iv) deposed 22 fact witnesses, including all originally named Individual Defendants;

(v) completed expert discovery; and (vi) engaged in mediation and settlement negotiations.   At

the time this case settled, the parties were preparing for trial, which was set to begin on May 4,

2009.   The Court's schedule required Lead Plaintiff to provide to Defendants a trial exhibit list, a

trial witness list, designations of deposition testimony to be used at trial, a list of issues of fact

and law to be litigated, and a draft Final Pretrial Order, including proposed jury instructions,

proposed voir dire and a proposed verdict form by February 21, just over a week after the case

settled.   As a result, Plaintiff's Counsel had already completed a significant amount of trial

preparation at the time of settlement.   In cases with a similar procedural posture, courts have

found that this factor weighs in favor of approval.   *See, e.g.*, *In re Ikon Office Solutions, Inc. Sec.

Litig.*, 194 F.R.D. 166, 180-81 (E.D. Pa. 2000); *In re Aetna Inc. Sec. Litig.*, No. CIV. A. MDL

1219, 2001 WL 20928, at *7 (E.D. Pa. 2001).   Courts have concluded that this factor weighs in

favor of approval even in cases where parties have not litigated a case to this advanced stage.

*See, e.g.*, *Cendant*, 264 F.3d at 236; *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 502 (W.D.

Pa. 2003).   This factor supports approval of the proposed settlement.

### 4.   Lead Plaintiff Faces Risks Establishing Liability

This factor "examine[s] what the potential rewards (or downside) of litigation might have

been had class counsel decided to litigate the claims rather than settle them."   *GM Trucks*, 55

F.3d at 814.   To prevail on its claims, Plaintiff must have established that Defendants were

responsible for material misstatements or omissions of fact concerning MBNA, its interest-only strip receivable and/or its earnings guidance; that Defendants knowingly or recklessly misstated or omitted the alleged material facts; that the Class justifiably relied upon the Defendants' misrepresentations;[1] and that the Class suffered damages as a result of Defendants' misconduct.

Plaintiff's Counsel firmly believe that Plaintiff's claims against Defendants have considerable merit, and that Class Representative would ultimately prevail in any trial against Defendants.   However, because this is a complex case involving the conduct of multiple defendants and complicated issues of fact and law, and defendants have vigorously disputed any liability at every stage of this litigation, the risk of an adverse finding against the Settlement Class is also significant.   For these reasons, this factor also counsels in favor of approval of the proposed settlement.

### 5.    Lead Plaintiff Faces Risks Establishing Damages

As with the risk of establishing liability, "this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time." *Nichols*, 2005WL 950616, at *47.   Several courts have recognized that the risk of establishing damages is significant in cases where juries will be presented with competing expert opinions on complex valuation models and class-wide damages. *See e.g.*, *Rent-Way*, 30 F. Supp. 2d at 506; *Cell Pathways*, 2002 WL 31528573, at *6; *Ikon*, 194 F.R.D. at 183.   In this case, issues related to damages have been hotly contested, with a large disparity between the damages estimates of the parties' experts.   Indeed, in this case, defendants' expert would have testified that Plaintiff had not demonstrated that it or the class was entitled to any damages.   It is impossible to predict, regardless of the strength of plaintiffs' position, whether a jury would believe the plaintiffs'

---

[1]      Under the fraud-on-the-market theory, however, a rebuttable presumption of reliance would apply. *See Basic Inc. v. Levinson*, 485 U.S. 224, 241-50 (1988).

expert or defendants' expert.  "The settlement avoids this uncertainty."  *In re Ikon*, 194 F.R.D. at 183.  This factor also weighs in favor of approval.

### 6. Lead Plaintiff Faces Risks of Maintaining the Class Action Through Trial

According to the Third Circuit, because a court may always decertify or modify a class, the risk of decertification always weighs in favor of settlement, making this factor somewhat "toothless."  *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 91 (D.N.J. 2001) (citing *In re Prudential Ins. Co. Am. Sales Practice Litigation Agent Actions*, 148 F.3d 283, 321 (3d Cir. 1998).  In this case, however, the risk of no class was particularly acute, because Plaintiff's Motion for Class Certification was disputed and pending at the time of settlement. Defendants primarily argued that Plaintiffs could not establish predominance because they could not establish a "cohesive theory of liability, loss causation and damages" for the class.  Def. Answering Br. Opp. Pl.'s Mot. Class Certification at 10-14.  They also argued that Lead Plaintiff and Lead Counsel were inadequate.  *Id.* at 14-19.  Although Plaintiff believes its case for class certification is strong, the Court may have disagreed and denied certification.  Given the uncertainty associated with the pending class certification motion, as well as the possibility that the class could have been later modified or decertified even if it had been certified, this factor supports approval of the proposed settlement.

### 7. The Ability of Defendants to Withstand a Greater Judgment

This factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the Settlement."  *Cendant*, 264 F.3d at 240.  One court has cautioned, that "[p]lacing undue emphasis on this factor when the defendant is financially stable may lead to the disapproval of appropriate, fair and reasonable settlements."  *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 301 (E.D. Pa. 2003).

Although Bank of America Corporation, which acquired MBNA, is currently capable of paying a judgment, at the time of settlement, there was significant concern about Bank of America's financial stability, and indeed, rumors of nationalization.  *See* Narwold Decl. at ¶ 37; Exs. 4A, 4B and 4C to Narwold Decl.  Even if Bank of America had not been nationalized, these concerns gave rise to reasonable uncertainty at the time of settlement negotiations about its ability to pay a judgment.  Accordingly, this factor also supports approval of the proposed settlement.

### 8. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and All the Attendant Risks of Litigation Supports Approval of the Settlement

These final two factors "consider how the settlement compares to the best and worst case scenarios," and "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case."  *In re Ravisent Techs., Inc. Sec. Litig.*, No. Civ.A.00-1014, 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005).  The inquiry should not be a simple mathematical equation, but instead should consider whether the recovery "represent[s] a material percentage recovery to plaintiff in light of all the risks considered under *Girsh*."  *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 263 (D.N.J. 2000).  "As is true in any case, the proposed Settlement 'represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution.'"  *In re Rent-Way*, 305 F. Supp. 2d 491, 509 (quoting *Erie County Retirees Ass'n*, 192 F. Supp. 2d at 377).

Although the amount of the settlement is a small percentage of the total damages sought by Plaintiff in this case, Plaintiff's Counsel believes that an immediate recovery of $25 million in cash, plus interest, provides a very good recovery for the Settlement Class Members based on the strengths and weaknesses of the claims, the evidence developed through discovery and the amount of damages that might be proven at trial.  Defendants' damages expert, Lassaad Turki,

attacked the conclusions and methods of Frank Torchio, Plaintiff's damages expert, and contended that, at most, $0.15 of the per share decline could be attributed to MBNA's "hypothetical write-down and the withdrawal of earnings guidance." *See* Report of Lassaad Turki at ¶ 76. Depending on the length of the class period, aggregate damages using a per share decline of $0.15 range from $5.75 million to $28.5 million. In light of this, and that Defendants have not conceded liability in the case, a present recovery of $25 million represents a good recovery for Settlement Class Members. *See In re Cendant*, 109 F. Supp. 2d 235 ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. The percentage recovery, rather must represent a material percentage recovery to plaintiff in light of all the risks considered under *Girsh*.").

    **C.**    **The Notice to the Class Satisfied Due Process and the Requirements of Rule 23**

Notice of the proposed settlement of a class action in which a class has not previously been certified must satisfy the requirements of Rule 23(c)(2), as well as the "less stringent requirements of Rule 23(e)." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 526 (D.N.J. 1997). Rule 23(c)(2) requires the "best notice practicable," Fed. R. Civ. P. 23(c)(2), while Rule 23(e) requires notice that is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Prudential*, 962 F. Supp. at 527 (quoting *In re Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)). The generally accepted method of providing notice to Settlement Class Members is by direct mail and publication in newspapers. *See generally In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231-34 (D.N.J. 1997).

In this case, notice was sent by mail to all identifiable Settlement Class Members at their last known address, a Summary Notice was transmitted over *Business Wire* and published in *Investors Business Daily* for those Settlement Class Members whose addresses could not be identified. *See, e.g.*, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 234 (D.N.J. 1997) ("Supplementing individual notice with publication notice represents an appropriate balance between protecting class members and making class actions workable.") (internal quotation omitted).

Substantively, the notice satisfies Rule 23: it describes the action and defines the Settlement Class; it describes the claims, defenses and issues on which the parties disagree; it notifies Settlement Class Members of their rights to appear, object, and opt-out; and it clearly explains the binding nature of the settlement. *See* Ex. A to the Affidavit of Eric Schachter, Esq. Consistent with the PSLRA, the Notice also provide the relevant statements of recovery, potential outcomes of the case, fees and expenses sought, attorney information, and the reasons for the Settlement. *See* 15 U.S.C. § 78u-t (a)(7). The notice in this case included all of the required information, and satisfied the requirements of due process, Rule 23 and the PSLRA.

### D.  The Plan of Allocation Is Fair and Reasonable and Should Be Approved

Like the settlement as a whole, a plan of allocation of settlement proceeds in a Rule 23 class action must be "fair, reasonable and adequate." *Cendant*, 109 F. Supp. 2d at 264. Generally, plans of allocation that "reimburse class members based on the type and extent of their injuries" are reasonable. *Rent-Way*, 305 F. Supp. 2d at 512. The plan of allocation here recognizes differing losses suffered by the Settlement Class Members depending on the dates on which they purchased and sold MBNA stock and the price at which they may have sold the shares. Any purported Settlement Class Member who sold prior to the close of the class period is not entitled to any recovery under the Plan of Allocation.

The Plan of Allocation, fully described in the Notice, was formulated by Plaintiff's Counsel, in consultation with Plaintiff's damages expert. It reflects facts regarding the alleged artificial inflation caused by Defendants' misrepresentations and omissions during the Class Period and the subsequent decline in the trading prices of MBNA's common stock. Each authorized claimant will receive a *pro rata* share of the "Net Settlement Fund," *i.e.*, the settlement consideration minus certain court-approved fees and expenses, to Class Members who submit acceptable Proofs of Claim. The Plan is consistent with the methods of calculating damages under the PSLRA and conforms with the United States Supreme Court's decision in *Dura*, 544 U.S. 336, Plaintiff's Counsel received no objection to the Plan, from Settlement Class Members or institutional investors. *See Cendant*, 264 F.3d at 234 (observing that no institutional investors objected). Because the Plan is fair and reasonable, Plaintiff's Counsel respectfully submit that it should be approved by the Court.

## II.    Final Certification of the Settlement Class Is Proper

To obtain certification of a settlement class, plaintiffs must satisfy the requirements of Rule 23 (a) and Rule 23(b)(3). *Johnston v. HBO Film Mgmt.,* 265 F.3d 178, 185 (3d Cir. 2001). Under Rule 23(a), the court may certify a class only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(3) requires that plaintiffs establish that "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).

"Class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, 'since the effectiveness of the securities laws may depend in large measure on the application of the class action device.'" *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) (*quoting Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir. 1970)); *In re Tyson Foods, Inc. Sec. Litig.*, No. Civ. 01-425, 2003 WL 22316548, at *3 (D. Del. Oct. 6, 2003) ("A securities fraud action, based upon false and misleading statements to the market, is a prototypical class action claim.").

### A.      Rule 23(a) (1): The Members of the Class Are So Numerous That Joinder Is Impracticable

In order to meet Rule 23(a)'s numerosity requirement, plaintiffs must allege only that joinder is impracticable, not impossible. *In re Cigna Corp. Sec. Litig.*, No. 02-8088, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006) (recognizing that a plaintiff need only prove impracticability, not impossibility). Generally, an alleged class of greater than 40 individuals satisfies the numerosity requirement. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Additionally, "courts have recognized a presumption that 'the numerosity requirement is satisfied when a class action involves a nationally traded security.'" *In re Cigna*, 2006 WL 2433779, at *2 (internal citation omitted). *See also In re Honeywell Int'l Inc.*, 211 F.R.D. 255, 260 (D.N.J. 2002) (finding it "safe to conclude" that investors were too numerous to be joined where defendant corporation was a "large and prominent publicly held company" and where SEC filings confirmed shareholders numbered in the thousands). Courts should also consider the geographical diversity of the alleged class. In cases where the class is geographically dispersed, joinder may be impracticable, satisfying the Rule 23(a) numerosity requirement.

MBNA common stock was traded on the New York Stock Exchange, and as of March 1, 2005, there were 1,277,671,875 shares of MBNA Common Stock outstanding. With over one

billion shares then outstanding, and tens of thousands (if not more) of investors, the class

indisputably satisfies the Rule 23(a) (1) numerosity requirement.  *See, e.g.*, *In re Cigna*, 2006

WL 2433779, at *2.

  **B.**  **Rule 23(a) (2): There Are Questions of Law and Fact Common to the Class**

  Rule 23(a) requires that there be "questions of law or fact common to the class." Fed. R.

Civ. P. 23(a).  The commonality requirement is "easily met" and requires only a single common

question of law or fact. *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *see*

*also In re Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004) (describing commonality

standard as "not a high bar").  The standard is even easier to meet in securities cases where

courts have applied the requirement permissively.  *Deutschman v. Beneficial Corp.*, 132 F.R.D.

359, 372 (D. Del. 1990); *In re Corel*, 206 F.R.D. 533, 541 (E.D. Pa. 2002) ("[S]ecurities fraud

cases often present a 'paradigmatic common question of law or fact' of whether a company

omitted material information or made misrepresentations that inflated the price of its stock.").

  Lead Plaintiff alleges that Defendants engaged in a uniform scheme to defraud investors.

Compl. at ¶¶ 2-10.  Thus, the following questions of law and fact, which relate to that uniform

scheme, are common to the class: (1) whether Defendants' acts violated the federal securities

laws; (2) whether MBNA's publicly disseminated releases and statements during the Class

Period omitted and/or misrepresented material facts and whether Defendants breached any duty

to convey material facts or to correct material facts previously disseminated; (3) whether

Defendants participated in and pursued the alleged fraudulent scheme or course of business;

(4) whether Defendants acted willfully, with knowledge or recklessly, in omitting and/or

misrepresenting material facts; (5) whether the market prices of MBNA's securities during the

Class Period were artificially inflated due to the material nondisclosures and/or

misrepresentations complained of herein; and (6) whether the members of the Class sustained

damages when revelations of the true facts caused a decline in the value of their investments.

Defendants' alleged uniform course of conduct presents a "paradigmatic common question of

law or fact," enabling Lead Plaintiff to easily satisfy the Rule 23(a) commonality requirement.

*Chiang*, 385 F.3d at 266; *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 924 (3d Cir.

1992); *see also Fox v. Equimark Corp.*, Civ. A. No. 90-1504, 1994 WL 560994, at *3 (W.D. Pa.

July 18, 1994) ("The alleged existence of a conspiracy or course of conduct to artificially inflate

the price of securities or to maintain an inflated market value of the security is sufficient to

satisfy the commonality requirement.").

### C.      Rule 23(a) (3): Lead Plaintiff's Claims Are Typical of the Claims of the Class

The Third Circuit has set a low threshold for establishing typicality.  *Newton v. Merrill

Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001).  Factual differences will

not render a representative's claim atypical if it arises from the same course of conduct as the

claims of the other class members and if it is based on the same legal theory.  *Hoxworth*, 980

F.2d at 923; *Deutschman*, 132 F.R.D. at 373 ("The court's focus should be not upon the merits,

but upon 'whether the overall scenario is sufficiently similar or 'typical' to ensure that the

plaintiff will represent the claims of the class during the course of this litigation.'" (internal

citation omitted)).  The claims of all members of the proposed class, including Lead Plaintiff,

arise out of the same alleged uniform course of conduct—that Defendants failed to disclose the

true financial condition of the company and take a timely write-down of MBNA's interest-only

strip receivable, and made false and misleading statements throughout the Class Period.  Such a

showing satisfies Rule 23(a) (3)'s typicality requirement.

**D.      Rule 23(a) (4): Lead Plaintiff Will Fairly and Adequately Protect the Interests of the Members of the Class**

Class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a) (4).  In determining the adequacy of a class representative courts consider whether the representative's interests conflict with those of the class and whether the class attorney is capable of representing the class. *Johnston*, 265 F.3d at 185; *Weiss v. York Hosp.*, 745 F.2d 786, 811 (3d Cir. 1984).  The Supreme Court and the Third Circuit have observed that the "typicality and adequacy inquiries often 'tend[] to merge' because both look to potential conflicts and to 'whether' the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Beck v. Maximum, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (*quoting Amchem Prods.*, 521 U.S. at 626 n. 20).

Lead Plaintiff satisfies both prongs of the adequacy requirement.  There are no conflicts of interest between Société Générale and the absent class members, and nothing that prevented Société Générale from vigorously prosecuting this action on behalf of the putative class and nothing that will prevent Société Générale from protecting the interests of the class in the settlement.  Further, Lead Counsel (Motley Rice LLC) and Liaison Counsel (Rigrodsky & Long, P.A.) are experienced class action attorneys, and Motley Rice LLC has served as lead counsel in numerous securities fraud cases across the nation.[2]  Both firms are well-qualified, experienced in securities and class-action litigation, and able to conduct this litigation.  *See* Ex. 2 to Declaration of William H. Narwold in Support of Plaintiff's Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses; and Exhibit 3 to Affidavit of Brian D. Long in Support of Joint Petition for Attorneys' Fees and Disbursements Filed on Behalf of Rigrodsky & Long, P.A.

---

[2] In its Order dated October 30, 2006, (D.I. 53), the Court approved Motley Rice LLC and Rigrodsky & Long, P.A. as Lead and Liaison Counsel respectively.

Given the lack of conflict with the proposed class and retention of competent counsel, Société Générale satisfies the adequacy requirement of Rule 23(a) (4).

### III.  The Proposed Class and Class Representative Satisfy the Requirements of Rule 23(b)(3)

#### A.  Common Questions of Law and Fact Predominate Over Any Individual Issues

The predominance requirement ensures that the class is sufficiently cohesive to warrant adjudication by representation. *In re Community Bank of N. Va.*, 418 F.3d 277, 309 (3d Cir. 2005). Although the predominance requirement is more stringent than the commonality requirement, it is easily satisfied in securities fraud cases. *Amchem Prods.*, 521 U.S. at 625 (*citing* Fed. R. Civ. P. 23 advisory committee notes); *Prudential*, 148 F.3d at 314 (same). Individual questions that may arise during litigation do not preclude a finding of predominance. *Prudential*, 148 F.3d at 314-15; *In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 142 (D.N.J. 1984).

Because of the number and import of the common questions in this litigation, Lead Plaintiff has satisfied the predominance requirement. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, No. 3:03-MDL-1556, 2007 WL 4150666, at *12 (M.D. Pa. Nov. 19, 2007) (*quoting In re Mercedes-Benz*, 213 F.R.D. 180, 183 (D.N.J. 2003)). The liability issues set forth in more detail above, *supra* at 18-19, are susceptible to class-wide proof because "[e]videntiary issues as to misrepresentations and materiality will be substantially identical for all class members." *Neuberger v. Shapiro*, No. Civ. A. 97-7947, 1998 WL 826980, at *5 (E.D. Pa. Nov. 25, 1998).

**B.     The Fraud on the Market Doctrine Eliminates the Need to Resolve Questions of Individual Reliance**

Individual questions of reliance do not predominate because Plaintiff relies upon the fraud-on-the-market doctrine. *Basic, Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988). Under the fraud-on-the-market doctrine, plaintiffs who purchase securities in an "open and developed market" or "efficient market" do not need to prove direct reliance on Defendants' misrepresentations. *Id*.; *Peil v. Speiser*, 806 F.2d 1154, 1161 (3d Cir. 1986). *See also Cammer v. Bloom*, 711 F. Supp. 1264, 1286 (D.N.J. 1989) ("An efficient market, one which rapidly reflects new information in price, is both open and well developed."). In this Circuit, plaintiffs are not required to make an evidentiary showing on issues such as loss causation when establishing reliance through the fraud-on-the-market doctrine. *Suprema Specialties*, 2007 WL 1217980, at *7 (D.N.J 2008); *see also La. Mun. Police Employees Ret. Sys. v. Dunphy*, No. 03-CV-4372, 2008 WL 700181, at *7 (D.N.J. Mar. 13, 2008) ("The Third Circuit has not taken such measures to 'tighten the requirements for plaintiffs seeking a presumption of reliance' similar to the Fifth Circuit."). Courts routinely hold that securities traded on the New York Stock Exchange trade in an efficient market. *See, e.g.*, *Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2000) (offering New York Stock Exchange as example of "open and developed securities market"); *Freeman v. Laventhol & Horwath*, 915 F.2d 193, 199 (6th Cir. 1990) (recognizing that securities traded on NYSE are well-suited for application of fraud-on-the-market theory).

Plaintiff has sufficiently alleged and easily satisfy the four relevant factors for showing an efficient market as set forth in the widely cited decision in *Cammer v. Bloom*[3]: (1) a large weekly trading volume; (2) the existence of a significant number of analyst reports; (3) the

---

[3] The third *Cammer* factor, the existence of market makers in the security, is not relevant to the analysis of whether MBNA common stock traded in an efficient market because market makers are only used for securities traded on the NASDAQ or in the over-the-counter market. *See In re DVI Inc. Secs. Litig.*, 249 F.R.D. 196, 210 (E.D. Pa. 2008).

eligibility of the company to file an S-3 registration statement; and (4) a history of immediate

movement of the stock price caused by unexpected corporate events or financial releases.  711 F.

Supp. at 1286-87.

### C.    A Class Action Is the Superior Means of Adjudicating This Dispute

In addition to requiring that common questions predominate, Rule 23(b)(3) also requires

a finding that "a class action is superior to other available methods for the fair and efficient

adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  This superiority requirement "asks

the court to balance, in terms of fairness and efficiency, the merits of a class action against those

of 'alternative available methods' of adjudication."  *In re Prudential*, 148 F.3d at 316 (internal

citations omitted).  As one court recognized, "it would be a rare case that satisfied all the

requirements of Rule 23(a), and the predominance requirement of Rule 23(b)(3), and in which

nevertheless a class action was not deemed 'superior to other available methods for the fair and

efficient adjudication of the controversy' under the second prong of Rule 23(b)(3)."  *Honeywell*,

211 F.R.D. at 267.

Rule 23(b) (3) includes the following factors to guide the court's inquiry:

> (A)    the class members' interest in individually controlling the prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b) (3).  When compared with the cost of litigation, the small size of most of

MBNA shareholders' recoveries provides little incentive for individual shareholders to bring

their own claims—a fact that makes class actions particularly appropriate for securities fraud

litigation. *See In re Prudential* 148 F.3d at 316; *In re Warfarin Sodium*, 212 F.R.D. at 251.

Even if class members were to bring individual actions, "[s]imultaneous or seriatim litigation

arising out of [Defendants'] conduct during the class period…would be needlessly duplicative

and an inefficient use of judicial resources." *In re Vicuron Pharms., Inc. Sec. Litig.*, 233 F.R.D.

421, 429 (E.D. Pa. 2006).  Second, the only related securities fraud litigation of which Plaintiff is

aware has been consolidated with the present litigation. *See* Narwold Decl. at ¶ 10.  Third, the

District of Delaware is a logical jurisdiction in which to concentrate all litigation because it was

MBNA's principal place of business and is home to many of the witnesses in this case.  Finally,

with regard to the fourth factor, "a district court need not inquire whether the case, if tried, would

present intractable management problems … for the proposal is that there be no trial." *In re*

*Community Bank*, 418 F. 3d at 309 (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620

(1997).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the

settlement, and certify the Settlement Class.


Dated: September 29, 2009

| | |
|---|---|
| /s/ Brian D. Long | MOTLEY RICE LLC |
| Seth D. Rigrodsky (#3147) | William H. Narwold (admitted pro hac vice) |
| sdr@rigrodskylong.com | Robert T. Haefele (admitted pro hac vice) |
| Brian D. Long (#4347) | William E. Applegate, IV (admitted pro hac vice) |
| bdl@rigrodskylong.com | Meghan S. B. Oliver (admitted pro hac vice) |
| RIGRODSKY & LONG, P.A. | 28 Bridgeside Boulevard |
| 919 North Market Street, Suite 980 | Mt. Pleasant, SC  29464 |
| Wilmington, DE 19801 | (843) 216-9000 |
| (302) 295-5310 | (843) 216-9450 |
| | |
| *Plaintiff's Liaison Counsel* | *Plaintiff's Lead Counsel* |